1  BRENDAN DOLAN, State Bar No. 126732
   MORGAN, LEWIS & BOCKIUS LLP
2  One Market Street
   San Francisco, CA 94105
3  Tel: 415.442.1000
   Fax: 415.442.1001
4
   CLIFFORD D. SETHNESS, State Bar No. 212975
5  MORGAN, LEWIS & BOCKIUS LLP
   300 South Grand Avenue
6  Twenty-Second Floor
   Los Angeles, CA 90071-3132
7  Telephone:  213.612.2500
   Fax:        213.612.2554
8
   *Attorneys for Plaintiffs*
9  PACIFIC MARITIME ASSOCIATION and
   APM TERMINALS PACIFIC, LTD.
10
                    UNITED STATES DISTRICT COURT
11
                    NORTHERN DISTRICT OF CALIFORNIA
12



| | |
|---|---|
| PACIFIC MARITIME ASSOCIATION, a California corporation; APM TERMINALS PACIFIC, LTD., a California corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, an unincorporated labor organization; INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCAL 10, an unincorporated labor organization,<br><br>Defendants. | Case No. C07-04618<br><br>**COMPLAINT FOR CONFIRMATION OF ARBITRATION AWARDS, BREACH OF CONTRACT, TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTION** |

Plaintiffs PACIFIC MARITIME ASSOCIATION and APM TERMINALS PACIFIC, LTD., for their Complaint against defendants herein, allege as follows:

### JURISDICTION

1. This is an action to enjoin breach of a collective bargaining agreement and enforce a final and binding arbitration award issued pursuant to a collectively-bargained grievance and arbitration machinery. This action arises under Section 301 of the Labor Management Relations

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COMPLAINT FOR BREACH OF CONTRACT

Act of 1947, as amended (29 U.S.C. § 185). Jurisdiction is conferred upon this Court by the provisions of that section.

2. Plaintiff PACIFIC MARITIME ASSOCIATION (hereinafter "PMA") is, and at all times mentioned herein was, a non-profit corporation organized and existing under and by virtue of the laws of the State of California. PMA maintains its principal office at 555 Market Street, San Francisco, California.

3. PMA is a multiemployer collective bargaining association whose members include stevedoring, terminal, and shipping companies that employ dockworkers, such as longshore workers, in the San Francisco Bay Area and throughout the United States Pacific Coast. PMA represents these employers in their collective bargaining relations with the employee labor organizations representing dockworkers in the negotiation of collective bargaining agreements and the administration and enforcement of the provisions thereof. PMA and its members are, and at all times mentioned herein were, employers in an industry affecting commerce, as defined in Section 501 of the Labor Management Relations Act of 1947 (29 U.S.C. § 142) and Section 2 of the National Labor Relations Act (29 U.S.C. § 152) and within the meaning of Section 301 of the Labor Management Relations Act (29 U.S.C. § 185).

4. Plaintiff APM TERMINALS PACIFIC, LTD. ("APMT") is an operator of container terminals in several locations including a terminal in the Port of Oakland. APMT is a member of the PMA and is represented by PMA for collective bargaining purposes.

5. Defendant INTERNATIONAL LONGSHORE AND WAREHOUSE UNION (hereinafter "ILWU") is an unincorporated association commonly known as a labor union and maintains its principal offices in San Francisco, California. ILWU is, and at all times mentioned herein was, the duly certified collective bargaining representative for dockworkers employed by members of PMA on the Pacific Coast. ILWU, on behalf of itself and each of its longshore locals in California, Oregon and Washington, including defendant INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCAL NO. 10 (hereinafter "Local 10"), negotiates and enters into the collective bargaining agreements described below with PMA, covering terms and conditions of employment of dockworkers employed by PMA members on the Pacific Coast.

ILWU is, and at all times mentioned herein was, a labor organization representing employees in an industry affecting commerce, as defined in Section 501 of the Labor Management Relations Act (29 U.S.C. § 142) and Section 2 of the National Labor Relations Act (29 U.S.C. § 152) and within the meaning of Section 301 of the Labor Management Relations Act (29 U.S.C. § 185).

6. Defendant Local 10 is an unincorporated association commonly known and referred to as a labor union and maintains its principal offices in San Francisco, California. Defendant Local 10 is a local of ILWU and is, and at all times mentioned herein has been, a representative of longshore workers employed by members of PMA in the San Francisco Bay Area Ports of San Francisco and Oakland. As such, Local 10 is, and at all times mentioned herein was, a labor organization representing employees in an industry affecting commerce, as defined in Section 501 of the Labor Management Relations Act (29 U.S.C. § 142) and Section 2 of the National Labor Relations Act (29 U.S.C. § 152) and within the meaning of Section 301 of the Labor Management Relations Act (29 U.S.C § 185).

**FACTUAL BACKGROUND**

7. ILWU and defendant Local 10, acting by and through their respective officers, designated members, and agents, are the sole and exclusive collective bargaining agents for the longshore workers employed by members of PMA in the San Francisco Bay Area, and have held themselves out as possessing, and they do possess, the requisite legal authority to become and remain parties to a binding contract with PMA for and on behalf of these longshore workers, including the longshore workers whose conduct gives rise to the instant action.

8. ILWU, on behalf of its longshore locals in California, Oregon and Washington, including defendant Local 10, and all employees performing work thereunder, and PMA on behalf of its members, entered into the PACIFIC COAST LONGSHORE CONTRACT DOCUMENT 2002-2008, effective as of July 1, 2002 (hereinafter the "PCLCD"). The PCLCD covers longshore workers employed by PMA members in the San Francisco Bay Area. The PCLCD is, and at all times mentioned herein was, in full force and effect. Defendant Local 10 has copies of the PCLCD. Copies of pertinent provisions thereof are attached as exhibits to the Declaration of Richard Marzano, filed herewith; for this reason copies are not attached hereto.

9.  Section 11 of the PCLCD, entitled "NO STRIKES, LOCKOUTS AND WORK STOPPAGES," provides in part as follows:

> "11.1 There shall be no strike, lockout or work stoppage for the life of this Agreement."
>
> "11.2 The Union or the Employers, as the case may be, shall be required to secure observance of this Agreement."
>
> "11.43 Application of Contract Grievance Machinery."
>
> "11.431 The grievance machinery, pending investigation and adjudication of on the job disputes, requires that work shall be performed in accordance with specific provisions of the Agreement, or if the matter is not covered by the Agreement, work shall be continued as directed by the employer."

Exceptions to Section 11.431 (not relevant here) arise only where longshoremen in good faith believe that to continue to work pending resolution of the dispute (1) immediately endangers health and safety or (2) imposes an onerous workload.

10.  Section 17 of the PCLCD, entitled "JOINT LABOR RELATIONS COMMITTEES, ADMINISTRATION OF AGREEMENT AND GRIEVANCE PROCEDURES," provides a mandatory procedure for the presentation, adjustment and settlement of grievances, with binding arbitration as the final step, and states in part as follows:

> "17.15. The grievance procedure of this Agreement shall be the exclusive remedy with respect to any disputes arising between the Union or any person working under this Agreement or both, on the one hand, and the Association or any employer acting under this Agreement or both, on the other hand, and no other remedies shall be utilized by any person with respect to any dispute involving this Agreement until the grievance procedure has been exhausted."
>
> "17.16. Pending investigation and adjudication of such disputes work shall continue and be performed as provided in Section 11 ."
>
> "17.24. In the event that the Employer and Union members of any Joint Port Labor Relations Committee shall fail to agree upon any question before it, such question shall immediately be referred at the request of either party to the Area Arbitrator for hearing and decision, and the decision of the Area Arbitrator shall be final and conclusive except as otherwise provided in Section 17.26 [relating to appeals].
>
> "17.57. All decisions of Arbitrators shall be observed and/or implemented. No decision of an Area Arbitrator, interim or final, can be appealed unless it is observed and/or implemented."

11.  Defendant Local 10, and its officers and members, and all persons working under the PCLCD, are under a duty to abide by the above-mentioned no strike and grievance and

arbitration provisions of the PCLCD.

## COUNT ONE

12. For many years, the employers at the Oakland Port have agreed to pay certain foremen a generous pay guarantee, pursuant to the maximum allowable under the PCWBFA. Under that agreement, those foremen have received pay for a certain minimum number of hours regardless of how many hours the foreman actually worked during the payroll period. This has given those foremen the benefit of pay for up to 84 hours per week without the obligation to work anywhere near 84 hours. Several foreman received an 84 hour work pay guarantee yet worked only 48 – 70 hours of work.

13. On August 9, 2007, APMT informed its steady foremen that, going forward, pay guarantee calculations would be based on pay for hours worked and an individual's availability to work when APMT so requested. For example, a foreman who normally worked on a vessel would be required to cover yard/gate operations when the regular yard foremen took a day off, and if the vessel foremen refused to cover the yard shift, those hours would be deducted from the weekly pay guarantee. Prior to this change, APMT would allow the vessel foreman to go home, with no loss in pay, and an extra foreman from the dispatch hall would be ordered to cover the yard foreman's shift.

14. That same day, PMA referred this issue to the Northern California Area Arbitrator, Terry Lane. The Arbitrator took testimony and evidence from both sides, including APMT's production reports that showed a 43% decrease in productivity on the first shift of August 18, 2007, as compared to a five-week average for similar vessel service. On August 20, 2007, Arbitrator Lane issued a written decision (NCAA-034-2007), ruling that "ILWU Local 10 officials and members are in violation of Section 11.1 by engaging in a slowdown tantamount to a work stoppage" and that "Local 10, its officials and members, shall cease the slowdown and the Union shall advise its members to work as directed in accordance with Section 11.31."

15. On August 22, 2007, PMA sought another ruling from Arbitrator Lane that Local 10 was continuing its work slowdown in violation of Section 11.1. At the arbitration hearing, APMT presented evidence that productivity during the first shift on the vessel *Sealand Enterprise*

1  on August 22, 2007 was down 23.9% as compared to a five-week average for similar vessel
2  service. On August 23, 2007, Arbitrator Lane issued another written decision (NCAA-036-2007),
3  ruling that "ILWU Local 10 longshoremen at the APM Terminals did engage in a slowdown
4  tantamount to a work stoppage in violation of Section 11.1 on August 22, 2007 on the Sealand
5  Enterprise." The Arbitrator's ruling further stated that "ILWU Local 10 has not implemented
6  Decision NCAA-034-2007. ILWU Local 10 officials shall instruct the longshoremen at the APM
7  Terminals to cease and desist from violating Section 11.1 and to implement Arbitration Decisions
8  in accordance with Section 17.57." The ruling concluded that, because the local grievance
9  machinery had failed to end the work slowdown, the matter was referred to the Coast Labor
10 Relations Committee ("CLRC"), the next step in the contractual grievance-arbitration process.

11         16.    On September 1, 2007, the CLRC reached disagreement on NCAA-036-2007 and
12 the matter was automatically referred to Coast Arbitrator John Kagel, the final step in the
13 grievance-arbitration process. The Coast Arbitrator conducted a telephonic hearing on September
14 4, 2007, in which representatives from PMA, APMT, and the ILWU participated. The Coast
15 Arbitrator issued a written decision the same day confirming NCAA-036-2007 and stating that
16 "ILWU Local 10 longshoremen at the APM Terminals shall forthwith cease and desist from
17 engaging in slowdowns at that location" and "ILWU Local 10 officials shall continue to instruct
18 the longshoremen at the APM Terminal to cease and desist from violating Section 11.1 and to
19 implement arbitration decisions in accordance with Section 17.57." True and correct copies of
20 Coast Award C-06-2007 and Area Arbitration Awards NCAA-034-2007 and NCAA-036-2007
21 are attached hereto as **Exhibit A**.

22         17.    Local 10 has not complied with the Area Arbitrator's awards or with the Coast
23 Arbitrator's award. These awards confirm that Local 10's work slowdown is tantamount to a
24 "work stoppage" in violation of the PCLCD.

25         18.    The illegal work stoppage described above has taken place and will take place at
26 the instigation and with the encouragement of defendant Local 10 and its officers. Such conduct
27 on the part of defendant Local 10 has been carried on with the deliberate purpose and design of
28 damaging and disrupting the businesses of APMT, a PMA member, in full recognition and

disregard of the fact that it violates the no-strike and grievance and arbitration provisions of the PCLCD and arbitration awards rendered thereunder.

19. As a result of the above-described work stoppage, APMT will be unable, and reasonably believes that it will continue to be unable, to load or unload cargo in accordance with the PCLCD at the usual rate of productivity. These disruptive activities of Local 10 and its officers and members will result in delays and additional expenses with respect to the cargo operations and movement of APMT vessels and in losses to the APMT, the shipowners, and the shipping public.

20. The unlawful conduct of defendant Local 10 and the consequences thereof will be repeated and continued unless Local 10, its officers and members, and all persons acting in concert with them are restrained and enjoined from continuing to violate the PCLCD and arbitration awards, from continuing to engage in the illegal work stoppage, and from encouraging, instigating, or assisting employees of PMA members to engage in or continue the work-stoppage, all to the great detriment of and irreparable injury to APMT and other PMA members and the public that such PMA members serve.

21. PMA and APMT have no adequate remedy at law because the delays incident to obtaining relief by way of an action for damages would result in serious and irreparable damage to APMT's business before such relief could be obtained, and an attempt to sue defendants in a civil action at law would not prevent a continuation of the illegal acts and conduct. Adequate relief can be afforded by this Court only through this Court's exercise of its equitable jurisdiction.

22. The granting of a temporary restraining order and injunction, as prayed for herein, will not work any hardship on the defendants, but denial of the temporary restraining order and preliminary injunction will cause irreparable damage to plaintiffs.

23. Unless a temporary restraining order shall be issued immediately, a substantial and irreparable injury to the interests of PMA and APMT will be unavoidable.

WHEREFORE, plaintiffs pray for judgment against defendants, as follows:

1. That the Court enter an order confirming and enforcing Area Arbitration Awards NCAA-034-2007 and NCAA-036-2007 and Coast Arbitration Award C-06-2007.

2. That Local 10 and its officers, agents, employees, representatives, and members, and all companies, persons, and associations of persons acting in concert or participation Local 10, be permanently enjoined and restrained:

   (a) From failing to comply with the above-referenced Arbitration Awards;

   (b) From failing to enforce and implement the above-referenced Awards holding Local 10's work stoppage to violate the PCLCD; and

   (c) From directly or indirectly engaging in any combination, agreement, arrangement or conspiracy to do the acts, or any of them, so enjoined.

3. That Local 10 and its officers, agents, employees, representatives, and members, and all companies, persons, and associations of persons acting in concert or participation Local 10, be permanently enjoined and restrained from continuing, doing, or attempting to do, or permitting or causing to be continued or done, directly or indirectly, by any means, method, or device whatsoever, any of the acts or things prohibited by Paragraph 2 above.

4. That Local 10 and its officers, agents, and representatives, shall immediately inform all members of Local 10 that they must immediately cease their work slowdown and that they must work at the normal, safe pace of production.

5. That the Court issue an order directing defendants to show cause, at a time and place specified in such order, why a Preliminary Injunction should not be made and entered herein enjoining and restraining it and others as provided in Paragraphs 2, 3, and 4 above during the pendency of this action.

6. That the Court issue a temporary restraining order restraining defendants and others as provided in Paragraphs 2, 3, and 4 above, pending a hearing on plaintiffs' application for a Preliminary Injunction.

7. That upon the hearing on said order to show cause, a Preliminary Injunction be granted to plaintiffs restraining and enjoining defendants and others as provided in Paragraphs 2, 3, and 4 above during the pendency of this action.

8. That upon trial of this action, judgment be had against defendants, and that by such

judgment it and others be permanently enjoined and restrained as provided in Paragraphs 2, 3, and 4 above.

9. For all damages sustained by plaintiffs as a result of Local 10's illegal work slowdown.

10. For plaintiffs' costs of suit incurred herein, including reasonable attorneys' fees; and

11. For such other relief as the Court may deem just and proper.

Dated: September 6, 2007

MORGAN, LEWIS & BOCKIUS LLP
BRENDAN DOLAN
CLIFFORD D. SETHNESS

By _____
Brendan Dolan
Clifford D. Sethness
Attorneys for Plaintiffs
PACIFIC MARITIME ASSOCIATION
and APM TERMINALS PACIFIC, LTD.

1-LA/955993.1