

1   BRENDAN DOLAN, State Bar No. 126732
    MORGAN, LEWIS & BOCKIUS LLP
2   One Market Street
    San Francisco, CA 94105
3   Tel: 415.442.1000
    Fax: 415.442.1001
4
5   CLIFFORD D. SETHNESS, State Bar No. 212975
    MORGAN, LEWIS & BOCKIUS LLP
6   300 South Grand Avenue
    Twenty-Second Floor
7   Los Angeles, CA 90071-3132
    Telephone:    213.612.2500
8   Fax:          213.612.2554

9   *Attorneys for Plaintiffs*
    PACIFIC MARITIME ASSOCIATION and
10  APM TERMINALS PACIFIC, LTD.

11              UNITED STATES DISTRICT COURT

12           NORTHERN DISTRICT OF CALIFORNIA

13

14  PACIFIC MARITIME ASSOCIATION, a        Case No.  C07-04618
    California corporation; APM
15  TERMINALS PACIFIC, LTD., a             **MEMORANDUM OF POINTS AND**
    California corporation,                **AUTHORITIES IN SUPPORT OF**
16                                         **PLAINTIFF'S APPLICATION FOR**
                        Plaintiffs,        **ORDER CONFIRMING ARBITRATION**
17                                         **AWARDS, FOR ISSUANCE OF A**
                  v.                       **TEMPORARY RESTRAINING ORDER**
18                                         **AND ORDER TO SHOW CAUSE RE**
    INTERNATIONAL LONGSHORE AND            **PRELIMINARY INJUNCTION**
19  WAREHOUSE UNION, an
    unincorporated labor organization;
20  INTERNATIONAL LONGSHORE AND
    WAREHOUSE UNION, LOCAL 10, an
21  unincorporated labor organization,

22                      Defendants.

23

24

25

26

27

28

ORIGINAL

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....................................................................................................1

II. STATEMENT OF FACTS .....................................................................................2

    A.    The Parties .....................................................................................................2

    B.    The Collective Bargaining Agreement ........................................................2

    C.    The Illegal Work Stoppage and Delays .......................................................3

III. ANALYSIS: THE ARBITRATION AWARDS SHOULD BE CONFIRMED AT ONCE, AND AN INJUNCTION SHOULD ISSUE TO ENFORCE THE AWARD ........6

    A.    The Arbitrators' Awards Are Final and Binding Interpretations of the CBA and Are Entitled to Confirmation ..........................................................6

    B.    Enforcement of the Area Arbitrator's Awards Requires Issuance of a TRO Mandating Compliance ........................................................................8

IV. AN INJUNCTION IS APPROPRIATE BECAUSE AN ILLEGAL WORK STOPPAGE IS PROBABLE AND THE BALANCE OF EQUITIES STRONGLY FAVORS PMA AND THE EMPLOYERS ....................................................................12

V. THE DEFENDANTS ARE RESPONSIBLE FOR THE ILLEGAL WORK STOPPAGE BECAUSE THEY HAVE CONDONED AND ENCOURAGED SUCH ACTION ..........................................................................................................16

VI. CONCLUSION ....................................................................................................17

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MEMORANDUM OF POINTS AND
AUTHORITIES ()

1
2
3                         **TABLE OF AUTHORITIES**
4                            **FEDERAL CASES**
5                                                              <u>**Page(s)**</u>

6   *Aguirre v. Chula Vista Sanitary Service,*
        542 F.2d 779 (9th Cir. 1976) ..................................................................13
7
    *Allied Marketing Group, Inc. v. CDL Marketing, Inc.,*
8       878 F.2d 806 (5th Cir. 1989) ..................................................................15

9   *Alyeska Pipeline Serv. Co. v. International Brotherhood of Teamsters, Chauffeurs,*
        *Warehousemen and Helpers of America,*
10      557 F.2d 1263 (9th Cir. 1979) ....................................................1, 6, 8, 9, 12

11  *Arcamuzi v. Continental Airlines, Inc.,*
        819 F.2d 935 (9th Cir. 1987) ..................................................................12
12
    *Avco Corp. v. Local Union #787,*
13      *UAW,* 459 F.2d 968 (3d Cir. 1972)..........................................................11

14  *Boys Markets, Inc. v. Retail Clerks Union, Local 770,*
        398 U.S. 235, 90 S. Ct. 1583, 26 L. Ed. 2d 199 (1970)....................................8, 11, 14
15
    *Bricklayers, Masons, Marble and Tile Setters, Protective and Benevolent Union*
16      *No. 7 v. Lueder Construction Co.,*
        346 F. Supp. 558 (D. Neb. 1972)..........................................................10, 11
17
    *Buffalo Forge Co. v. United Steelworkers,*
18      428 U.S. 397, 96 S. Ct. 3141, 49 L. Ed. 2d 1022 (1976)..........................................8, 9

19  *Campbell "66" Express, Inc. v. Rundel,*
        597 F.2d 125 (8th Cir. 1977) ..................................................................13
20
    *Celotex Corp. v. Oil, Chemical & Atomic Workers International Union,*
21      516 F.2d 242 (3d Cir. 1975) ..................................................................13

22  *Chalk v. U.S. District Court,*
        840 F.2d 701 (9th Cir. 1988) ..................................................................15
23
    *Chief Freight Lines Co. v. Local Union No. 886,*
24      514 F.2d 572 (10th Cir. 1975) ..................................................................13

25  *Complete Automobile Transit, Inc. v. Reis,*
        451 U.S. 401, 101 S. Ct. 1836, 68 L. Ed. 2d 248 (1981)..........................................16
26
    *Consolidation Coal Co. v. Local 1702 UMW,*
27      709 F.2d 882 (4th Cir. 1983) ..................................................................16
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

                                        i

**Page(s)**

*Donovan Construction Co. v. Construction Prod. & Maintenance Laborers Union,*
    533 F.2d 481 (9th Cir. 1976) ..............................................................................................13, 14

*General Building Contractors Association v. Local Union 642, International*
    *Union of Operating Engineers,*
    371 F. Supp. 1130 (E.D. Pa. 1974) .............................................................................13

*Gresham v. Chambers,*
    501 F.2d 687 (2d Cir. 1974) ......................................................................................13

*International Longshoremen's & Warehousemen's Union, Local 34 v. Cargill,*
    *Inc.,*
    357 F. Supp. 608 (N.D. Cal. 1973) .................................................................8, 10, 11

*New York Telephone Co. v. Communications Workers,*
    445 F.2d 39 (2d Cir. 1971) .........................................................................................13

*Otis Elevator v. Local 1, International Union of Elevator Constructors,*
    684 F. Supp. 80 (S.D.N.Y. 1988) ...............................................................................15

*PMA v. ILWU,*
    304 F. Supp. 1315 (N.D.Cal. 1969) ......................................................................11, 12

*PMA v. ILWU,* 454 F.2d 262 (9th Cir. 1971)...........................................................................7, 12

PMA v. ILWU Local 10,
    1997 U.S. DIST. LEXIS 6017 (N.D.Cal. 1997) ......................................................7, 12

*Pacific Maritime Association v. International Longshoremen's and*
    *Warehousemen's Union Local 19,*
    517 F.2d 1158 (9th Cir. 1975) ..............................................................1, 7, 8, 9, 12, 17

*Paulsen v. County of Nassau,* 925 F.2d 65 (2nd Cir. 1991) .............................................15

*San Francisco Electric Contractors Association v. International Brotherhood of*
    *Electric Workers,*
    577 F.2d 529 (9th Cir.) ........................................................................................8, 10

*San Francisco-Oakland Newspaper Guild v. Tribune Public Co.,*
    407 F.2d, 1327 ..............................................................................................................6

*Seattle Times Co. v. Seattle Mailers' Union,*
    664 F.2d 1366 (9th Cir. 1982) ...................................................................................16

*Sprewell v. Golden State Warriors,*
    266 F.3d 979 (9th Cir. 2001) ......................................................................................7

*Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173, IAM,*
    886 F.2d 1200 (9th Cir. 1989) ....................................................................................7

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MEMORANDUM OF POINTS AND
AUTHORITIES ()

**Page(s)**

*Textile Workers v. Lincoln Mills,*
    353 U.S. 448, 77 S. Ct. 912, 1 L. Ed. 2d 972 (1957)............................6, 8, 11

*U-Haul International Inc. v. Jartran Inc.,*
    522 F. Supp. 1238 (1981) .......................................................................15

*United States Steel Corp. v. UMW,*
    519 F.2d 1249 (5th Cir. 1975) ...............................................................16

*United Steelworkers of America v. Enterprise Wheel & Car Corp.,*
    363 U.S. 593, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960)........................6, 7, 9

*United Steelworkers of America v. Warrior & Gulf Navigation Co.,*
    363 U.S. 574, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960)............................6

*Vulcan Materials Co. v. United Steelworkers,*
    430 F.2d 446 (5th Cir. 1970) .................................................................16

*Westmoreland Coal Co. v. International Union, United Mineworkers,*
    910 F.2d 130 (4th Cir. 1990) .................................................................13

### DOCKETED CASES

*PMA v. ILWU Local 13, U.S. District Court,*
    Central District of California Case No. CV-00-1641 (2000) ..................9, 12

### FEDERAL STATUTES

29 U.S.C. § 185(b) .....................................................................................16

29 U.S.C. § 185(e) .....................................................................................16

LMRA § 301(b) .........................................................................................16

LMRA § 301(e) .........................................................................................16

Norris-LaGuardia Act, 29 U.S.C. Section 101 et seq........................................12

Section 7(e), Norris-LaGuardia Act of 1932, 29 U.S.C. § 107(e).....................13

Section 301 of the Labor Management Relations Act, 29 U.S.C. Section 185 ..........1, 6, 8

1-LA/956046.1

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MEMORANDUM OF POINTS AND
AUTHORITIES ()

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Without immediate emergency relief from this Court, Defendants International Longshore and Warehouse Union ("ILWU"), and its San Francisco/Oakland local, ILWU Local 10 ("Local 10") will continue to engage in an illegal work stoppage at the Port of Oakland in violation of several arbitration awards, causing serious and irreparable harm to Plaintiffs Pacific Maritime Association ("PMA") and APM Terminals Pacific, Ltd. ("APMT"), a PMA member.  Plaintiffs seek simply to enforce the arbitration awards of the Area and Coast Arbitrators, who have resolved a dispute between PMA and Local 10 about whether Local 10 may engage in a concerted work slowdown in order to pressure APMT and other PMA members to grant additional pay guarantee benefits.  The Arbitrators held that Local 10 may not engage in these activities under the collective bargaining agreement and ordered Local 10 to take specific steps to prevent the work-stoppage from continuing.  It is undisputed that Local 10 and its members have not complied with these awards.

There is overwhelming authority supporting this Court entering an order confirming the arbitration awards, granting a temporary restraining order enforcing the award, and then granting a preliminary injunction for compliance with the award; the same parties had essentially the same issues in previous federal court litigation, and the relief requested here was granted there. See Pacific Maritime Association v. International Longshoremen's and Warehousemen's Union, 517 F.2d 1158 (9th Cir. 1975) (Arbitrator issued a decision, concluding that Local Union had engaged in slowdown in breach of PMA/ILWU collective bargaining agreement; federal district court issued an Order confirming the arbitration award and granting a TRO directing the Local Union and its members to cease and desist from engaging in, inducing, encouraging, or causing a slowdown; then, after a further hearing, granted a preliminary injunction; Ninth Circuit affirmed on all points). See also Alyeska Pipeline Serv. Co. v. Int'l Bhd. of Teamsters, 557 F.2d 1263, 1266-67 (9th Cir. 1979) (similar).

Plaintiffs bring this action pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), as amended, 29 U.S.C. Section 185, for violation of the collective bargaining

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

MEMORANDUM OF POINTS AND
AUTHORITIES

1  agreement between PMA and the Defendants (International Longshore and Warehouse Union

2  ("ILWU"), and International Longshore and Warehouse Union, Local 10 ("Local 10")).  As in

3  PMA v. ILWU and in Alyeska, Plaintiffs here seek an Order confirming the arbitration awards, a

4  temporary restraining order enforcing the award, and a preliminary and then permanent injunction

5  restraining Local 10 and its officers, members, agents and employees, from failing to comply with

6  Area Arbitration Awards NCAA-034-2007 and NCAA-036-2007 and Coast Arbitration Award

7  C-06-2007.

8  **II.    STATEMENT OF FACTS**

9      **A.    The Parties**

10      PMA is a multi-employer association of shipping, stevedoring and terminal companies

11  (the "Employers") which operate out of the Port of Oakland, as well as other ports in California,

12  Oregon and Washington.  There are more than 80 PMA member company Employers.  PMA is

13  the bargaining representative for the Employers, and handles their labor relations issues with

14  respect to longshoremen and marine clerks.

15      APMT is one of the largest operators of container terminals in the world, operating more

16  than 40 terminals in 24 countries.  APMT operates at a terminal in the Port of Oakland.  APMT is

17  a member of the PMA and is represented by PMA for collective bargaining purposes.

18      Local 10 is a labor union comprised of longshore workers employed by PMA member

19  companies at ports in the San Francisco and Oakland Ports.

20      **B.    The Collective Bargaining Agreement**

21      PMA, ILWU, and ILWU Local 10 are parties to a collective bargaining agreement (CBA),

22  which is printed in two documents.  The Pacific Coast Longshore Contract Document

23  ("PCLCD") covers longshore workers.  Pertinent parts are attached as Exhibit A to the

24  Complaint.  The PCLCD provides in Section 11 as follows:

25          11.1    There shall be no strike, lockout or work stoppage for the

26          life of this Agreement.

27          11.2    The Union or the Employers, as the case may be, shall be

28          required to secure observance of this Agreement.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

MEMORANDUM OF POINTS AND
AUTHORITIES

\*\*\*

> 11.31  In the event grievances or disputes arise on the job, all men
> and gangs shall continue to work as directed by the employer in
> accordance with the specific provisions of the Agreement or if the
> matter is not covered by the Agreement work shall be continued as
> directed by the employer.

Exh. A, PCLCD § 11.

Section 18.1 of the PCLCD contains a promise by both parties that they will observe the Agreement in good faith, "without resort to gimmicks and subterfuge." Id. § 18.1.

Section 17 of the PCLCD sets out a multi-step grievance procedure. Disputes are initially presented to the Joint Port Labor Relations Committee ("JPLRC"), which is comprised of an equal number of PMA and Union representatives having equal votes. Disputes not resolved by the JPLRC may be referred to an Area Arbitrator. Decisions of the Area Arbitrator may be appealed to the Joint Coast Labor Relations Committee ("JCLRC"), and, if not resolved at that step, then to the Coast Arbitrator, who "shall have the power and duty . . . to finally and conclusively determine the dispute." PCLCD § 17.261. During the grievance process, work "shall continue and be performed as provided in Section 11." PCLCD § 17.16. Further, Section 17.57 requires that "[a]ll decisions of arbitrators shall be observed and/or implemented. No decision of an Area Arbitrator, interim or formal, can be appealed unless it is observed and/or implemented."

## C.     The Illegal Work Stoppage and Delays

For many years, the employers at the Oakland Port have agreed to pay certain foremen a generous pay guarantee, pursuant to the maximum allowable under the PCWBFA. Under that agreement, those foremen have received pay for a certain minimum number of hours regardless of how many hours the foreman actually worked during the payroll period. This has given those foremen the benefit of pay for up to 84 hours per week without the obligation to work anywhere near 84 hours. Several foreman received an 84 hour work pay guarantee yet worked only 48 – 70 hours of work.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

MEMORANDUM OF POINTS AND
AUTHORITIES

1    On August 9, 2007, APMT informed its steady foremen that, going forward, pay

2    guarantee calculations would be based on pay for hours worked and an individual's availability to

3    work when APMT so requested. For example, a foreman who normally worked on a vessel

4    would be required to cover yard/gate operations when the regular yard foremen took a day off,

5    and if the vessel foremen refused to cover the yard shift, those hours would be deducted from the

6    weekly pay guarantee. Prior to this change, APMT would allow the vessel foreman to go home,

7    with no loss in pay, and an extra foreman from the dispatch hall would be ordered to cover the

8    yard foreman's shift.

9    On August 18, 2007, crane operators and other longshore workers at APMT's Oakland

10    facility engaged in a work slowdown to protest the changes in the foremen guarantee. APMT's

11    production reports showed a dramatic decrease in production for the first shift on the vessel

12    *Maersk Dublin* on August 18, compared to a five-week average for similar vessel service.

13    That same day, PMA referred this issue to the Northern California Area Arbitrator, Terry

14    Lane. The Arbitrator took testimony and evidence from both sides, including APMT's

15    production reports that showed a 43% decrease in productivity on the first shift of August 18,

16    2007, as compared to a five-week average for similar vessel service. On August 20, 2007,

17    Arbitrator Lane issued a written decision (NCAA-034-2007), ruling that "ILWU Local 10

18    officials and members are in violation of Section 11.1 by engaging in a slowdown tantamount to a

19    work stoppage" and that "Local 10, its officials and members, shall cease the slowdown and the

20    Union shall advise its members to work as directed in accordance with Section 11.31."

21    On August 22, 2007, PMA sought another ruling from Arbitrator Lane that Local 10 was

22    continuing its work slowdown in violation of Section 11.1. At the arbitration hearing, APMT

23    presented evidence that productivity during the first shift on the vessel *Sealand Enterprise* was

24    down 23.9% on August 22 as compared to a five-week average for similar vessel service. On

25    August 23, 2007, Arbitrator Lane issued another written decision (NCAA-036-2007), ruling that

26    "ILWU Local 10 longshoremen at the APM Terminals did engage in a slowdown tantamount to a

27    work stoppage in violation of Section 11.1 on August 22, 2007 on the Sealand Enterprise." The

28    Arbitrator's ruling further stated that "ILWU Local 10 has not implemented Decision NCAA-

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

MEMORANDUM OF POINTS AND
AUTHORITIES

1    034-2007. ILWU Local 10 officials shall instruct the longshoremen at the APM Terminals to

2    cease and desist from violating Section 11.1 and to implement Arbitration Decisions in

3    accordance with Section 17.57." The ruling concluded that, because the local grievance

4    machinery had failed to end the work slowdown, the matter was referred to the Coast Labor

5    Relations Committee ("CLRC"), the next step in the contractual grievance-arbitration process.

6        On September 1, 2007, the CLRC reached disagreement on NCAA-036-2007 and the

7    matter was automatically referred to Coast Arbitrator John Kagel, the final step in the grievance-

8    arbitration process. The Coast Arbitrator conducted a telephonic hearing on September 4, 2007,

9    in which representatives from PMA, APMT, and the ILWU participated. The Coast Arbitrator

10   issued a written decision the same day confirming NCAA-036-2007 and stating that "ILWU

11   Local 10 longshoremen at the APM Terminals shall forthwith cease and desist from engaging in

12   slowdowns at that location" and "ILWU Local 10 officials shall continue to instruct the

13   longshoremen at the APM Terminal to cease and desist from violating Section 11.1 and to

14   implement arbitration decisions in accordance with Section 17.57."

15       Local 10 has not complied with the Area Arbitrator's awards or with the Coast

16   Arbitrator's award. These awards confirm that Local 10's work slowdown is tantamount to a

17   "work stoppage" in violation of the PCLCD.

18       The illegal work stoppage described above has occurred and will continue to occur at the

19   instigation and with the encouragement of defendant Local 10 and its officers. Such conduct on

20   the part of defendant Local 10 has been carried on with the deliberate purpose and design of

21   damaging and disrupting the businesses of APMT, a PMA member, in full recognition and

22   disregard of the fact that it violates the no-strike and grievance and arbitration provisions of the

23   PCLCD and arbitration awards rendered thereunder.

24       As a result of the above-described work stoppage, APMT will be unable, and reasonably

25   believes that it will continue to be unable, to load or unload cargo in accordance with the PCLCD

26   at the usual rate of productivity. These disruptive activities of Local 10 and its officers and

27   members will result in delays and additional expenses with respect to the cargo operations and

28   movement of APMT vessels and in losses to the APMT, the shipowners, and the shipping public.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

MEMORANDUM OF POINTS AND
AUTHORITIES

1   APMT estimates that it loses between $15,000 and $200,000 for each eight-hour shift that a

2   vessel is delayed.

**III.    ANALYSIS: THE ARBITRATION AWARDS SHOULD BE CONFIRMED AT**

**ONCE, AND AN INJUNCTION SHOULD ISSUE TO ENFORCE THE AWARD**

**A.    The Arbitrators' Awards Are Final and Binding Interpretations of the CBA**
**and Are Entitled to Confirmation.**

7           It is well-settled that a federal district court has jurisdiction under Section 301 of the

8   Labor Management Relations Act, 29 U.S.C. Section 185, to review an award of a labor

9   arbitrator.  See United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574,

10   580, 80 S. Ct. 1347, 1352, 4 L. Ed. 2d 1409, 1416-17 (1960); Textile Workers v. Lincoln Mills,

11   353 U.S. 448, 457-59, 77 S. Ct. 912, 918-20, 1 L. Ed. 2d 972, 981-83 (1957).  The federal courts

12   are highly deferential to the decision of the labor arbitrator: if the award is not in manifest

13   disregard of the CBA and draws its essence from the CBA, the federal courts are to confirm and

14   enforce it.  See United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593,

15   596, 80 S. Ct. 1358, 1361, 4 L. Ed. 2d 1424, 1428 (1960).  Interpretation of the CBA is what the

16   parties to the CBA bargained for, and the courts "have no business overruling [the arbitrator]

17   because their interpretation of the contract is different from the arbitrator's."  Enterprise Wheel &

18   Car Corp., 363 U.S. at 599; 80 S. Ct. at 1362, 4 L. Ed. 2d at 1429.  The broad deference standard

19   established forty years ago by the U.S. Supreme Court has been repeatedly reaffirmed and applied

20   by the Supreme Court and the Ninth Circuit Court of Appeals:

21           It is not the function of the courts to review the merits of arbitration

22           awards.  The interpretation of a collective bargaining agreement is a

23           question for the arbitrator.  It is the arbitrator's construction that was

24           bargained for; and so far as the arbitrator's decision concerns

25           construction of the contract, the courts have no business overruling

26           him, because their interpretation of the contract is different than his.

27   San Francisco-Oakland Newspaper Guild v. Tribune Pub. Co., 407 F.2d, 1327, 1327 (9th Cir.

28   1969 (per curiam) (quoted with approval in Alyeska Pipeline Service Co. v. Int'l Bro. of

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

6

MEMORANDUM OF POINTS AND
AUTHORITIES

1  Teamsters, Chauffeurs, Warehousemen and Helpers of America, 557 F.2d 1263, 1267 (9th Cir.

2  1977) and Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173, IAM, 886

3  F.2d 1200, 1206 (9th Cir. 1989).  In short, "[d]eference is the rule; rare is the exception." Stead

4  Motors, 886 F.2d at 1209.  See also Sprewell v. Golden State Warriors, 266 F.3d 979, 986 (9th

5  Cir. 2001) ("Judicial scrutiny of an arbitrator's decision in a labor dispute is 'extremely

6  limited.'")

7       This principle of deference to the labor arbitrator's award has extended specifically to

8  decisions of the arbitrator in disputes between the precise parties in this matter: the federal district

9  courts in PMA v. ILWU, ILWU Local 19, 517 F.2d 1158, 1163 (9th Cir. 1975) and in PMA v.

10  ILWU, 304 F.Supp. 1315, 1318 (N.D.Cal. 1969) confirmed arbitration awards of the PMA/ILWU

11  Arbitrator, upon application by PMA.  The Ninth Circuit affirmed the actions of each of the

12  district courts.  See PMA w. ILWU, ILWU Local 19, 517 F.2d at 1163 and PMA v. ILWU, 454

13  F.2d 262, 264 (9th Cir. 1971).  See also PMA v. ILWU Local 10, 1997 U.S. DIST. LEXIS 6017

14  (N.D.Cal. 1997) (granting PMA's motion to confirm Area Arbitrator's award).

15      Given the nature of labor arbitration proceedings, and the manner in which arbitration

16  awards are issued, the written decision of the arbitrator is entitled to confirmation by the federal

17  district court even where that decision is not as detailed or precise as a district court's own

18  findings of facts and conclusions of law might be in a full trial.  As noted by the Ninth Circuit in

19  enforcing a labor arbitration award which was "somewhat cursory" and "nearly opaque," the

20  federal courts:

21           do not require labor arbitrators to make the sorts of explicit or

22           exhaustive 'findings of fact' we demand of district courts; likewise,

23           the reasons for arbitral rulings need not be spelled out in detail.

24           Indeed, 'arbitrators have no obligation . . . to give their reasons for

25           an award' at all.

26  Stead Motors, 886 F.2d at 1203 n.3, 1206 (quoting Enterprise Wheel & Car Co., 363 U.S. at 598,

27  80 S. Ct. at 1361, 4 L. Ed. 2d at 1428).  A "mere ambiguity in the opinion accompanying an

28  award" is not a basis for refusing to enforce the award.  Enterprise Wheel & Car Corp., 363 U.S.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

MEMORANDUM OF POINTS AND
AUTHORITIES

1    at 598, 80 S. Ct. at 1361, 4 L. Ed. 2d at 1428.

2    **B.    Enforcement of the Area Arbitrator's Awards Requires Issuance of a TRO Mandating Compliance.**

3

4    Federal labor policy promotes the issuance of court injunctions to stop and prevent work

5    stoppages and work delays that contravene a no-strike clause in a collective bargaining

6    agreement. Section 301, Labor Management Relations Act, 29 U.S.C. § 185; Boys Markets, Inc.

7    v. Retail Clerks Union, Local 770, 398 U.S. 235, 90 S. Ct. 1583, 26 L. Ed. 2d 199 (1970); Textile

8    Workers Union v. Lincoln Mills, 353 U.S. at 448, 77 S. Ct. at 912, 1 L. Ed. 2d at 972 (1957).

9    Where a binding arbitration award has been rendered finding that a work stoppage or delay

10   breaches the collective bargaining agreement, federal law supports the issuance of an Order

11   confirming that arbitration award, and an injunction enforcing the arbitral decision, provided that

12   the other prerequisites for such relief are met. Buffalo Forge Co. v. United Steelworkers, 428

13   U.S. 397, 405, 96 S. Ct. 3141, 3146-47, 49 L. Ed. 2d 1022, 1029 (1976); Alyeska Pipeline Serv.

14   Co. v. International Bhd. of Teamsters, 557 F.2d 1263,1266-67 (9th Cir. 1979); San Francisco

15   Elec. Contractors Ass'n v. International Bhd. of Elec. Workers, 577 F.2d 529, 532 (9th Cir.);

16   PMA v. ILWU, 517 F.2d at 1162-63 (9th Cir. 1975); International Longshoremen's &

17   Warehousemen's Union, Local 34 v. Cargill, Inc., 357 F. Supp. 608, 609-10 (N.D. Cal. 1973).

18   In Buffalo Forge, the United States Supreme Court considered whether to enjoin a union

19   that had gone on strike, not because of its own members' dispute with the employer, but in

20   support of other local unions of the same international organization that were negotiating a

21   contract with the employer. 428 U.S. at 404-05, 96 S. Ct. at 3146-47, 49 L. Ed. 2d at 1029. The

22   Court pointed out that the union and the employer were bound by a collective bargaining

23   agreement containing a no-strike clause. The union, however, claimed that the no-strike clause

24   did not forbid "sympathy strikes." Id. at 405, 96 S. Ct. at 3146, 49 L. Ed. 2d at 1029. The Court

25   held that the employer was entitled to invoke the arbitration process to determine the legality of

26   the sympathy strike and to obtain a court order requiring the union to arbitrate if it refused to do

27   so. Id., 96 S. Ct. at 3147, 49 L. Ed. 2d at 1029. "Furthermore," the Court stated, "were the issue

28   arbitrated and the strike found illegal, the relevant federal statutes as construed in our cases would

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

MEMORANDUM OF POINTS AND
AUTHORITIES

1  permit an injunction to enforce the arbitral decision." Id., 96 S. Ct. at 3147, 96 L. Ed. 2d at 1029

2  (emphasis added) (citing Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S. Ct. 1358, 4 L. Ed.

3  2d 1424 (1960).

4       In Alyeska Pipeline, Alyeska, a consortium of eight oil company-employers had a

5  collective bargaining agreement with the Unions building the Alaska pipeline. After a dispute

6  arose over picketing by one of the Unions, Alyeska took the matter to arbitration under the

7  contract. The arbitrator ruled in favor or Alyeska, and Alyeksa then requested that the federal

8  court issue a TRO enforcing the arbitrator's award. 557 F.2d at 265-66. The district court issued

9  the TRO, and later issued a preliminary injunction and then a permanent injunction, enforcing the

10  arbitrator's award. Despite the Union's insistence that a federal court could not and should not

11  issue an injunction requiring enforcing an arbitrator's award, especially where that award

12  prohibited certain concerted activity by the members of the Union (picketing), the Ninth Circuit

13  affirmed. Id. at 1266-67.

14       As noted at the outset of this Memorandum, the procedural order of (1) issuance by the

15  labor arbitrator of an arbitration award, (2) federal court confirmation of the award, (3) TRO

16  enforcing the award, and (4) preliminary injunction enforcing the award was followed by the

17  federal court in PMA v. ILWU, 517 F.2d. 1158 (9th Cir. 1975). There, the same collective

18  bargaining agreement language, and the same parties, had a labor dispute which was presented to

19  the Arbitrator as the final and binding word on the issue. The Arbitrator rendered his decision,

20  and the prevailing party (PMA) requested and received federal district court confirmation of the

21  award, issuance of a TRO enforcing the award, and issuance of a preliminary injunction enforcing

22  the award. The Ninth Circuit carefully considered the Union's procedural and substantive

23  challenges to that result, rejected each of them, and affirmed the district court's decision.

24  Similarly, when a group of ILWU Local 13 crane operators in February 2000 engaged in a work

25  slowdown, and PMA took the issue to the Arbitrator, and the Arbitrator ruled in PMA's favor,

26  PMA then filed a motion to confirm the arbitration award and for injunctive relief. PMA v.

27  ILWU Local 13, U.S. District Court, Central District of California Case No. 00-01641. The

28  Honorable Nora M. Manella three days later issued a Temporary Restraining Order against ILWU

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

MEMORANDUM OF POINTS AND
AUTHORITIES

1    Local 13 and its officers and members restraining them pending the hearing on the Order to Show

2    Cause re Preliminary Injunction from "participating in or permitting any work stoppage,

3    slowdown, walkout or other conduct in violation of the Kagel Arbitration Award, C-01-00." The

4    Court then set the matter for a preliminary Injunction Hearing and, after that hearing, issued an

5    Order Granting Preliminary Injunction.

6        Similarly, in San Francisco Electric Contractors Ass'n, the Ninth Circuit considered a

7    district court's decision to issue a preliminary injunction to prevent a union from engaging in a

8    work stoppage.  577 F.2d at 530.  The union appealed the district court's decision, arguing that

9    the injunction violated the Norris-LaGuardia Act.  Id.  The employers/appellees responded that the

10   injunction merely served to enforce an arbitrator's award, which was issued following binding

11   arbitration pursuant to a collective bargaining agreement.  Id.  Thus, the employers claimed, the

12   injunction acted as an "implementation of the arbitration process" and fell within an exception to

13   Norris-LaGuardia.  Id.  The Ninth Circuit agreed, noting that "it had, since 1960, been recognized

14   that an arbitrator's decision that a strike was in violation of a contract and his order to cease and

15   desist were subject to judicial enforcement by injunction."  Id. at 532.  The court continued,

16   "Most recently the proposition was recognized in Buffalo Forge ..."  Id.  The court further

17   determined "In our judgment Boys Markets cannot sensibly be construed not to cover the union's

18   obligation to abide by the arbitrator's decision.  If the process can be frustrated by such refusal,

19   submission to arbitration would be meaningless."  Id. at 533.  Therefore, the court concluded,

20   "the preliminary injunction was properly issued by the district court in order to enforce the

21   arbitrator's award."  Id. at 534.

22       As a further example, in Cargill, the district court considered the union's claim that the

23   court did not have jurisdiction to grant preliminary relief.  357 F. Supp. at 609.  The court noted

24   that the "precise question of whether an arbitration award may be enforced by preliminary

25   injunction was before the court" in a case pending before the district court in Nebraska.  The

26   court there held that "it had the power to issue a mandatory injunction 'as a means to compel

27   defendants to honor the decision of the Joint Board, thereby specifically enforcing the agreement

28   entered into by the parties to so abide by said decision.'"  Id. at 609-10 (quoting Bricklayers,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

MEMORANDUM OF POINTS AND
AUTHORITIES

1    Masons, Marble and Tile Setters, Protective and Benevolent Union No. 7 v. Lueder Construction

2    Co., 346 F. Supp. 558, 563 (D. Neb. 1972)). The Cargill court agreed, holding that it had

3    "jurisdiction under § 301 of the LMRA to grant preliminary relief in a suit to enforce an

4    arbitration award." Id. at 610. Similarly, where employees engaged in a concerted refusal to

5    work overtime, the matter was held to be covered by the arbitration clause of the parties' CBA

6    and subject to issuance of an injunction enjoining union from encouraging members to refuse

7    overtime work. Avco Corp. v. Local Union #787, UAW, 459 F.2d 968, 973-74 (3d Cir. 1972).

8         Thus, federal labor law favors enforcement of arbitration awards, and it is wholly

9    appropriate for this Court to issue an Order not only confirming the arbitration award, but also

10   issuing a TRO and then a preliminary injunction enforcing that arbitration award. The duty of the

11   court in which an action under Section 301 has been commenced is to apply the substantive

12   federal common law that has developed under Section 301 in order to effectuate the policies of

13   the federal labor laws. Textile Workers Union v. Lincoln Mills, 353 U.S. at 450-51, 455-57, 77

14   S. Ct. at 914-15, 917-18, 1 L. Ed. 2d at 977-78, 980-81 (1957). A primary object of the United

15   States labor laws is to secure peaceful settlements of labor disputes by resort to the collective

16   bargaining process. The existence of a "no strike" provision in a collective bargaining agreement,

17   when joined with contract grievance machinery, materially furthers this policy and in fact

18   constitutes the central instrument in the maintenance of labor relations under the collective

19   bargaining agreement. Enforcement of such provisions was a primary purpose of Congress in

20   enacting Section 301. Boys Markets Inc., 398 U.S. at 242-43, 248, 90 S. Ct. at 1588-1591, 26 L.

21   Ed. 2d at 205-06, 209 (1970); Cargill, 357 F. Supp. at 610. An injunction thus is appropriate to

22   prevent the violation of an arbitration award.

23        As but one more example, in another case involving these same parties under the same

24   collective bargaining agreement arbitration procedure, PMA v. ILWU, the Arbitrator rendered a

25   decision resolving a dispute over whether certain strike activity was in breach of the contract.

26   304 F. Supp. at 1322. The Arbitrator found that it was, and PMA moved in federal district court

27   to enforce the arbitration award. That request was granted. Id. at 1326. PMA also requested that

28   the federal district court issue an injunction ordering that the arbitration award be enforced; that

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

MEMORANDUM OF POINTS AND
AUTHORITIES

1   request was also granted. Id. PMA also requested that a permanent injunction issue, enforcing

2   the award. The district court also granted that request. Id. On appeal, the Ninth Circuit held that

3   the district court had jurisdiction to enter its permanent injunction (the Ninth Circuit affirmed as

4   to that order, and remanded as to certain other issues which had been before the district court).

5   PMA v. ILWU, 454 F.2d. at 264.[1]

6   **IV.    AN INJUNCTION IS APPROPRIATE BECAUSE AN ILLEGAL WORK**

7   **STOPPAGE IS PROBABLE AND THE BALANCE OF EQUITIES STRONGLY**

8   **FAVORS PMA AND THE EMPLOYERS**

9         The arbitration awards now before the Court can and should be confirmed on their own,

10   and an injunction enforcing the awards is wholly appropriate, as detailed above. Separate from

11   the analysis above, the Court can decide to look at the basic injunction factors and determine that

12   the equities here strongly favor issuance of an injunction to stop the defendant Unions from

13   continuing to engage in work stoppages and delays. The Ninth Circuit has held that an injunction

14   may issue where there is a clear showing of either (1) probable success on the merits and possible

15   irreparable injury, or (2) sufficiently serious questions going to the merits to make them fair

16   ground for litigation and the balance of hardships leans decidedly toward the party requesting the

17   preliminary relief. Arcamuzi v. Continental Airlines, Inc., 819 F.2d 935, 937 (9th Cir. 1987); see

---

[1]   It is anticipated that the defendants may argue that the Norris-LaGuardia Act, 29 U.S.C. Section
101 et seq., prevents the issuance of an injunction enforcing the arbitration award, or requires a
full evidentiary hearing prior to issuing a TRO on the award. It does not. The Act, passed in 1932,
has been analyzed at length in numerous fact patterns identical to this: the labor arbitrator to a
collective bargaining agreement has issued a decision, the decision impacts the ability of
employees to engage in concerted activity such as striking, picketing, or refusing to report to work
on time, and the employer who prevailed at the arbitration is requesting the federal district court to
confirm the award, issue a TRO enforcing it, and grant a preliminary injunction enforcing it. The
Ninth Circuit in numerous cases, including Alyeska, 557 F.2d at 1266-67, PMA, 454 F.2d at 264,
and PMA, 517 F.2d at 1163, refused to find that the Norris-LaGuardia Act imposed such
restrictions, and affirmed district courts which issued Orders confirming the arbitration awards,
issuing TROs, and granting preliminary injunctions. Several federal district courts in cases
involving the instant parties have issued such Orders without a full-scale hearing, especially where
the Union defendants have an opportunity to provide written opposition to the Application. See
PMA v. ILWU Local 10, 1997 U.S. DIST. LEXIS 6017 (N.D.Cal. 1997); Order Granting TRO,
and Preliminary Injunction Order in PMA v. ILWU Local 13, U.S. District Court Central District
of California Case No. CV-00-1641 (2000); PMA v. ILWU and ILWU Local 19, 517 F.2d 1158
(9th Cir. 1975); PMA v. ILWU, 304 F. Supp. 1315 (N.D.Cal. 1969).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

MEMORANDUM OF POINTS AND
AUTHORITIES

1    also Aguirre v. Chula Vista Sanitary Service, 542 F.2d 779, 781 (9th Cir. 1976) (quoting

2    Gresham v. Chambers, 501 F.2d 687, 691 (2d Cir. 1974)).

3        The Supreme Court made clear in Boys Markets that when frustration of the public

4    interest by violation of a no strike provision and contract grievance machinery is coupled with

5    financial loss to management, irreparable injury has occurred and injunctive relief is appropriate.

6    398 U.S. at 248 & n.17, 90 S. Ct. at 1591 & n.17, 26 L. Ed. 2d at 209 & n.17; accord Campbell

7    "66" Express, Inc. v. Rundel, 597 F.2d 125, 128 (8th Cir. 1977); New York Telephone Co. v.

8    Communications Workers, 445 F.2d 39, 42-43 (2d Cir. 1971); General Building Contractors

9    Ass'n v. Local Union 642, International Union of Operating Engineers, 371 F. Supp. 1130, 1136

10   (E.D. Pa. 1974).  A temporary restraining order should issue ex parte, without oral testimony,

11   when a person aggrieved by a probable breach of a collective bargaining agreement is exposed

12   thereby to substantial and irreparable damage.  Section 7(e), Norris-LaGuardia Act of 1932, 29

13   U.S.C. § 107(e); Boys Markets, Inc., 398 U.S. at 252-53, 90 S. Ct. at 1593-94, 26 L. Ed. 2d at

14   211-12; Celotex Corp. v. Oil, Chemical & Atomic Workers Int'l Union, 516 F.2d 242, 247-48 (3d

15   Cir. 1975); Chief Freight Lines Co. v. Local Union No. 886, 514 F.2d 572, 575 (10th Cir. 1975);

16   New York Telephone Co. v. Communications Workers, 445 F.2d 39, 42-43 (2d Cir. 1971).

17       It is also well-settled that injunctive relief is proper when the behavior of the Union

18   indicates that further noncompliance with the arbitration provisions of the collective bargaining

19   agreement is likely.  Westmoreland Coal Co. v. International Union, United Mineworkers, 910

20   F.2d 130, 137 (4th Cir. 1990).  Previous conduct by the Union indicating a flagrant disregard for

21   its arbitration obligations may be relied upon to show that the Union is likely to commit future

22   breaches.  Id. at 138.  Simply because the Union has ceased the improper conduct, or has not yet

23   actually engaged in it, does not make a request for injunctive relief moot or premature:  "If there

24   is a reasonable apprehension that the misconduct will recur, a hearing to determine the

25   appropriateness of future injunctive relief is proper."  Donovan Constr. Co. v. Constr. Prod. &

26   Maint. Laborers Union, 533 F.2d 481, 484 (9th Cir. 1976).

27       Moreover, the Ninth Circuit has recognized the propriety of injunctive relief in response

28   to threats of imminent labor disputes:

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13                                    MEMORANDUM OF POINTS AND
                                     AUTHORITIES

It is true that one requirement for the issuance of a *Boys Market* injunction is a careful inquiry into whether it is sanctioned under ordinary principles of equity. The difficulties of such an inquiry are naturally compounded when the court is faced with anticipated troubles rather than a present controversy. However, the complexity of this task will not deny a party access to this remedy if he can adduce convincing evidence that the anticipated labor dispute is sufficiently likely to occur, and that the harm threatened thereby is of such magnitude as to bring his situation within the *Boys Market* guidelines.

Donovan Const. Co., 533 F.2d at 484 (citations omitted) (emphasis added).

Here, the Union's egregious conduct over the past week – **repeatedly ignoring the arbitrator's unambiguous awards** – illustrates that Local 10 is ignoring its contractual obligations (i.e. the no-strike and no-work stoppage clause), and that it is willing to engage in and continue a work stoppage and delay if such conduct will advance their monetary and other goals. Local 10's illegal work stoppage must be enjoined so that Plaintiffs can enjoy the benefit of the bargain they struck when Defendants agreed to the no-strike and arbitration provisions.

Several other factors demonstrate that injunctive relief is warranted. First, Local 10's conduct is knowingly improper. Local 10 knows its obligations under the PCLCD to not engage in work stoppages and to observe all arbitration awards, yet Local 10 is blatantly ignoring those obligations. Second, Local 10's work stoppage continued even **after the Arbitrators** specifically found Local 10's conduct to be in violation of the PCLCD, and ordered Local 10 to cease its unlawful conduct and to take affirmative steps to remedy its violation.

Third, due to the unique nature of the ports and the industry, a work stoppage causes real havoc and damage to the Employers, the Employers' customers, and numerous other parties who depend on the timely flow of goods in and out of the ports. The monetary damages to the Employers, although difficult to measure, are estimated to be between $15,000 and $200,000 per vessel for each additional 8-hour shift the vessel is delayed. Additionally, the Employers' good

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

MEMORANDUM OF POINTS AND
AUTHORITIES

1    will, public relations, and competitive position in the industry are severely impacted by delays

2    and the inability to meet promised deadlines for shipments. See Otis Elevator v. Local 1, Int'l

3    Union of Elevator Constructors, 684 F.Supp. 80, 83 (S.D.N.Y. 1988) (when work stoppage is

4    likely to lead to loss of goodwill and a permanent loss of business, irreparable harm justifying

5    injunction is shown).

6         Much of the damage suffered by the Employers (such as loss of goodwill and the various

7    harms caused by delay) is not readily capable of monetary computation. Irreparable injury is

8    found where the damages are difficult or impossible to quantify. See U-Haul Int'l Inc. v. Jartran

9    Inc., 522 F. Supp. 1238 (1981), aff'd, 681 F.2d 1159 (9th Cir. 1982) (irreparable injury found

10   when it is impossible to measure the exact amount of the party's damages); Paulsen v. County of

11   Nassau, 925 F.2d 65, 68 (2nd Cir. 1991) ("[I]mproper conduct for which monetary remedies

12   cannot provide adequate compensation suffices to establish irreparable harm."); Allied Marketing

13   Group, Inc. v. CDL Marketing, Inc., 878 F.2d 806, 810 n.1 (5th Cir. 1989) ("[A] finding of

14   irreparable harm is appropriate even where economic rights are involved when the nature of those

15   rights makes 'establishment of the dollar value of the loss . . . especially difficult or

16   speculative.'").

17        Finally, the balance of the equities in this case clearly favors Plaintiffs. Greater injury will

18   be inflicted on Plaintiffs by the denial of relief than will be inflicted upon Defendants by the

19   granting of relief since they are only being requested to abide by the collective bargaining

20   agreement and the arbitration awards issued pursuant to that agreement. A work stoppage and

21   delay will result in irreparable harm to APMT by jeopardizing its relations with its customers,

22   causing it to lose potential business, and causing tremendous monetary damages which are

23   difficult if not impossible to quantify. The public will also be harmed by the delay in the

24   shipment of goods. See Chalk v. U.S. Dist. Court, 840 F.2d 701, 711 (9th Cir. 1988) (public

25   interest is one of the traditional criteria a court should consider in granting injunctive relief).

26   Conversely, the issuance of injunctive relief would work no harm at all on Defendants. They

27   simply would have to abide by the no-strike clause to which they agreed and the binding

28   arbitration awards. See Otis Elevator, 684 F.Supp. at 83 (balance tips decidedly in plaintiff's

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

1   favor because "[a]ll the court is requiring the Union to do is execute its contractual obligation not

2   to strike, and to arbitrate the disputes").

3   **V.    THE DEFENDANTS ARE RESPONSIBLE FOR THE ILLEGAL WORK**

4   **STOPPAGE BECAUSE THEY HAVE CONDONED AND ENCOURAGED SUCH**

5   **ACTION**

6          A union is bound by the acts of its members not only where it expressly authorizes or

7   ratifies those acts but also where it encourages or condones them, directly or indirectly.  LMRA

8   §§ 301(b), 301(e), 29 U.S.C. §§ 185(b), 185(e); United States Steel Corp. v. UMW, 519 F.2d

9   1249, 1253 (5th Cir. 1975); Vulcan Materials Co. v. United Steelworkers, 430 F.2d 446, 457 (5th

10  Cir. 1970).  Encouragement need not be explicit to result in union liability:

11             Strike encouragement sometimes is explicit, but more often is

12             cryptic.  A union may employ subtle signals to convey the message

13             to strike.  One court noted that unions sometimes employed "a nod

14             or a wink or a code . . . in place of the word 'strike'."

15  Complete Auto Transit, Inc. v. Reis, 451 U.S. 401, 418 n.1, 101 S. Ct. 1836, 1846 n.1, 68 L. Ed.

16  2d 248 n.1 (1981) (Powell, J. concurring in part and dissenting in part); Seattle Times Co. v.

17  Seattle Mailers' Union, 664 F.2d 1366, 1369 (9th Cir. 1982).  A union is responsible for unlawful

18  strike activity that, contrary to its contract obligations, it does not take effective steps to stop and

19  prevent.  Consolidation Coal Co. v. Local 1702 UMW, 709 F.2d 882, 885-86 (4th Cir. 1983).

20  This is particularly so when there has been a pattern of strike activity that is plainly unlawful

21  under the contract.  United States Steel Corp. v. UMW, 519 F.2d at 1256.

22         Here, the Area Arbitrator and Coast Arbitrator found, after full hearings, that Local 10

23  violated several provisions of the PCLCD and that it would continue to violate those provisions

24  unless it immediately undertook the specific actions ordered by the Arbitrator.  Local 10 must do

25  more than just assert that it is up to its members to decide whether they will comply.  It is

26  disingenuous for Local 10 to claim that they cannot, or need not, do more: the following language

27  from the PMA v. ILWU decision of the Ninth Circuit is directly on point:

28             Appellants [the International Union and one of the Locals] next

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16                                  MEMORANDUM OF POINTS AND
                                                    AUTHORITIES

1  contend that the Kagel decision is too vague to be susceptible of

2  enforcement in that it does not tell the unions what they must do or

3  must not do. . . . We agree with PMA that . . . the unions do not

4  need to be told by anyone how to go about the business of securing

5  observance from their members. . . .

6  . . .

7  The unions by contract have assumed the responsibility for securing

8  necessary action by their members and . . . need no instruction

9  from the court on such matters.

10  517 F.2d at 1161, 1162. Local 10 has the full ability to obtain compliance with the awards at

11  issue; it just needs an Order from this Court directing it to do so.

12  **VI.    CONCLUSION**

13  For all of the foregoing reasons, PMA respectfully requests that this Court (1) grant its

14  request that the Area Arbitrator's and Coast Arbitrator's decisions be confirmed, (2) issue a TRO

15  enforcing the awards and ordering Local 10 to take the actions specified in the awards, and (3) set

16  a preliminary injunction hearing.

17

18  Dated:  September 6, 2007

19

MORGAN, LEWIS & BOCKIUS LLP
BRENDAN DOLAN
CLIFFORD D. SETHNESS

20

21  By _____

22  Brendan Dolan
Clifford D. Sethness

23  Attorneys for Plaintiffs
PACIFIC MARITIME ASSOCIATION

24  and APM TERMINALS PACIFIC, LTD.

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17    MEMORANDUM OF POINTS AND.
AUTHORITIES