1  BRENDAN DOLAN, State Bar No. 126732
   MORGAN, LEWIS & BOCKIUS LLP
2  One Market Street
   San Francisco, CA  94105
3  Tel:  415.442.1000
   Fax:  415.442.1001
4
   CLIFFORD D. SETHNESS, State Bar No. 212975
5  MORGAN, LEWIS & BOCKIUS LLP
   300 South Grand Avenue
6  Twenty-Second Floor
   Los Angeles, CA  90071-3132
7  Telephone:    213.612.2500
   Fax:          213.612.2554
8
   *Attorneys for Plaintiffs*
9  PACIFIC MARITIME ASSOCIATION and
   APM TERMINALS PACIFIC, LTD.
10
                    UNITED STATES DISTRICT COURT
11
                 NORTHERN DISTRICT OF CALIFORNIA
12

13
   PACIFIC MARITIME ASSOCIATION, a          Case No.  C-07-04618 CRB
14 California corporation; APM
   TERMINALS PACIFIC, LTD., a               **MEMORANDUM OF POINTS AND**
15 California corporation,                   **AUTHORITIES IN SUPPORT OF**
                                             **PLAINTIFFS' APPLICATION FOR**
16                Plaintiffs,                **TEMPORARY RESTRAINING ORDER**
                                             **AND ORDER TO SHOW CAUSE RE**
17                v.                         **PRELIMINARY INJUNCTION**

18 INTERNATIONAL LONGSHORE AND
   WAREHOUSE UNION, an
19 unincorporated labor organization;
   INTERNATIONAL LONGSHORE AND
20 WAREHOUSE UNION, LOCAL 10, an
   unincorporated labor organization,
21
                  Defendants.
22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ...................................................................................................1

II.     STATEMENT OF FACTS ......................................................................................2

        A.      The Parties .................................................................................................2

        B.      The Collective Bargaining Agreement .....................................................2

        C.      The Illegal Work Stoppage and Delays .....................................................3

III.    ANALYSIS: THE ARBITRATION AWARDS SHOULD BE CONFIRMED AT
        ONCE, AND AN INJUNCTION SHOULD ISSUE TO ENFORCE THE AWARD ........6

        A.      The Arbitrators' Awards Are Final and Binding Interpretations of the CBA
                and Are Entitled to Confirmation ...............................................................6

        B.      Enforcement of the Area Arbitrator's Awards Requires Issuance of a TRO
                Mandating Compliance ...............................................................................8

IV.     AN INJUNCTION IS APPROPRIATE BECAUSE AN ILLEGAL WORK
        STOPPAGE IS PROBABLE AND THE BALANCE OF EQUITIES STRONGLY
        FAVORS PMA AND THE EMPLOYERS ...............................................................12

V.      THE DEFENDANTS ARE RESPONSIBLE FOR THE ILLEGAL WORK
        STOPPAGE BECAUSE THEY HAVE CONDONED AND ENCOURAGED
        SUCH ACTION ......................................................................................................16

VI.     CONCLUSION .....................................................................................................17

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

1
2
3

# TABLE OF AUTHORITIES

4

## FEDERAL CASES

5

**Page(s)**

6
*Aguirre v. Chula Vista Sanitary Service,*
   542 F.2d 779 (9th Cir. 1976) ................................................................13
7

*Allied Marketing Group, Inc. v. CDL Marketing, Inc.,*
8
   878 F.2d 806 (5th Cir. 1989) ................................................................15

9
*Alyeska Pipeline Serv. Co. v. International Brotherhood of Teamsters, Chauffeurs,*
   *Warehousemen and Helpers of America,*
10
   557 F.2d 1263 (9th Cir. 1979) ...............................................1, 6, 8, 9, 12

11
*Arcamuzi v. Continental Airlines, Inc.,*
   819 F.2d 935 (9th Cir. 1987) ................................................................12
12

13
*Avco Corp. v. Local Union #787,*
   *UAW,* 459 F.2d 968 (3d Cir. 1972) .......................................................11

14
*Boys Markets, Inc. v. Retail Clerks Union, Local 770,*
   398 U.S. 235, 90 S. Ct. 1583, 26 L. Ed. 2d 199 (1970) ....................8, 11, 14
15

16
*Bricklayers, Masons, Marble and Tile Setters, Protective and Benevolent Union*
   *No. 7 v. Lueder Construction Co.,*
   346 F. Supp. 558 (D. Neb. 1972) ......................................................10, 11
17

18
*Buffalo Forge Co. v. United Steelworkers,*
   428 U.S. 397, 96 S. Ct. 3141, 49 L. Ed. 2d 1022 (1976) ........................8, 9

19
*Campbell "66" Express, Inc. v. Rundel,*
   597 F.2d 125 (8th Cir. 1977) ................................................................13
20

21
*Celotex Corp. v. Oil, Chemical & Atomic Workers International Union,*
   516 F.2d 242 (3d Cir. 1975) .................................................................13

22
*Chalk v. U.S. District Court,*
   840 F.2d 701 (9th Cir. 1988) ................................................................15
23

24
*Chief Freight Lines Co. v. Local Union No. 886,*
   514 F.2d 572 (10th Cir. 1975) ..............................................................13

25
*Complete Automobile Transit, Inc. v. Reis,*
   451 U.S. 401, 101 S. Ct. 1836, 68 L. Ed. 2d 248 (1981) .........................16
26

27
*Consolidation Coal Co. v. Local 1702 UMW,*
   709 F.2d 882 (4th Cir. 1983) ...............................................................16

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

1

2                                                                              **Page(s)**

3   *Donovan Construction Co. v. Construction Prod. & Maintenance Laborers Union,*
        533 F.2d 481 (9th Cir. 1976) ...................................................................13, 14
4

5   *General Building Contractors Association v. Local Union 642, International*
        *Union of Operating Engineers,*
        371 F. Supp. 1130 (E.D. Pa. 1974) ...........................................................13
6

7   *Gresham v. Chambers,*
        501 F.2d 687 (2d Cir. 1974) ......................................................................13

8   *International Longshoremen's & Warehousemen's Union, Local 34 v. Cargill,*
        *Inc.,*
9       357 F. Supp. 608 (N.D. Cal. 1973) ...................................................8, 10, 11

10  *New York Telephone Co. v. Communications Workers,*
        445 F.2d 39 (2d Cir. 1971) ........................................................................13
11

12  *Otis Elevator v. Local 1, International Union of Elevator Constructors,*
        684 F. Supp. 80 (S.D.N.Y. 1988) ..............................................................15

13  *PMA v. ILWU,*
        304 F. Supp. 1315 (N.D.Cal. 1969) .......................................................11, 12
14

15  *PMA v. ILWU,* 454 F.2d 262 (9th Cir. 1971)............................................7, 12

16  PMA v. ILWU Local 10,
        1997 U.S. DIST. LEXIS 6017 (N.D.Cal. 1997) ...................................7, 12

17  *Pacific Maritime Association v. International Longshoremen's and*
        *Warehousemen's Union Local 19,*
18      517 F.2d 1158 (9th Cir. 1975) ..................................1, 7, 8, 9, 12, 17

19  *Paulsen v. County of Nassau,* 925 F.2d 65 (2nd Cir. 1991) ............................15

20  *San Francisco Electric Contractors Association v. International Brotherhood of*
        *Electric Workers,*
21      577 F.2d 529 (9th Cir.) ..........................................................................8, 10

22  *San Francisco-Oakland Newspaper Guild v. Tribune Public Co.,*
        407 F.2d, 1327 ............................................................................................6
23

24  *Seattle Times Co. v. Seattle Mailers' Union,*
        664 F.2d 1366 (9th Cir. 1982) ...................................................................16

25  *Sprewell v. Golden State Warriors,*
        266 F.3d 979 (9th Cir. 2001) .......................................................................7
26

27  *Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173, IAM,*
        886 F.2d 1200 (9th Cir. 1989) .....................................................................7

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**Page(s)**

*Textile Workers v. Lincoln Mills,*
    353 U.S. 448, 77 S. Ct. 912, 1 L. Ed. 2d 972 (1957)..........................................6, 8, 11

*U-Haul International Inc. v. Jartran Inc.,*
    522 F. Supp. 1238 (1981) ...........................................................................15

*United States Steel Corp. v. UMW,*
    519 F.2d 1249 (5th Cir. 1975) .....................................................................16

*United Steelworkers of America v. Enterprise Wheel & Car Corp.,*
    363 U.S. 593, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960)......................................6, 7, 9

*United Steelworkers of America v. Warrior & Gulf Navigation Co.,*
    363 U.S. 574, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960)..............................................6

*Vulcan Materials Co. v. United Steelworkers,*
    430 F.2d 446 (5th Cir. 1970) ......................................................................16

*Westmoreland Coal Co. v. International Union, United Mineworkers,*
    910 F.2d 130 (4th Cir. 1990) ......................................................................13

## DOCKETED CASES

*PMA v. ILWU Local 13, U.S. District Court,*
    Central District of California Case No. CV-00-1641 (2000) ....................................9, 12

## FEDERAL STATUTES

29 U.S.C. § 185(b) ................................................................................16

29 U.S.C. § 185(e) ................................................................................16

LMRA § 301(b) ....................................................................................16

LMRA § 301(e) ....................................................................................16

Norris-LaGuardia Act, 29 U.S.C. Section 101 et seq. ...............................................12

Section 7(e), Norris-LaGuardia Act of 1932, 29 U.S.C. § 107(e)....................................13

Section 301 of the Labor Management Relations Act, 29 U.S.C. Section 185 ..........1, 6, 8

1-LA/956046.1

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

MEMORANDUM OF POINTS AND
AUTHORITIES ()

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3        Without immediate emergency relief from this Court, Defendants International Longshore

4   and Warehouse Union ("ILWU"), and its San Francisco/Oakland local, ILWU Local 10 ("Local

5   10") will continue to engage in an illegal work stoppage at the Port of Oakland in violation of

6   several arbitration awards **and this Court's order confirming and enforcing those awards**,

7   causing serious and irreparable harm to Plaintiffs Pacific Maritime Association ("PMA") and

8   APM Terminals Pacific, Ltd. ("APMT"), a PMA member.  Plaintiffs seek simply to enforce the

9   arbitration awards of the Area and Coast Arbitrators, who have resolved a dispute between PMA

10  and Local 10 about whether Local 10 may engage in a concerted work slowdown in order to

11  pressure APMT and other PMA members to grant additional pay guarantee benefits.  The

12  Arbitrators held that Local 10 may not engage in these activities under the collective bargaining

13  agreement and ordered Local 10 to take specific steps to prevent the work-stoppage from

14  continuing.  <u>It is undisputed that Local 10 and its members have not complied with these awards.</u>

15       **This Court entered a stipulated order on Friday, September 7, confirming and**

16  **enforcing the Coast Arbitrator's Award that Local 10 immediately cease its work**

17  **slowdown.  <u>The very next day,</u> Local 10's members openly flaunted this Court's order and**

18  **continued the work stoppage and slowdown.  <u>Local 10 has made it very clear that, without a</u>**

19  **<u>temporary restraining order from this Court, it will not comply with the Coast Award or</u>**

20  **<u>with this Court's enforcement order.</u>**

21       There is overwhelming authority supporting this Court entering an order confirming the

22  arbitration awards, granting a temporary restraining order enforcing the award, and then granting

23  a preliminary injunction for compliance with the award; the same parties had essentially the same

24  issues in previous federal court litigation, and the relief requested here was granted there.  <u>See</u>

25  <u>Pacific Maritime Association v. International Longshoremen's and Warehousemen's Union</u>, 517

26  F.2d 1158 (9th Cir. 1975) (Arbitrator issued a decision, concluding that Local Union had engaged

27  in slowdown in breach of PMA/ILWU collective bargaining agreement; federal district court

28  issued an Order confirming the arbitration award and granting a TRO directing the Local Union

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

MEMORANDUM OF POINTS AND
AUTHORITIES

1   and its members to cease and desist from engaging in, inducing, encouraging, or causing a

2   slowdown; then, after a further hearing, granted a preliminary injunction; Ninth Circuit affirmed

3   on all points).  See also Alyeska Pipeline Serv. Co. v. Int'l Bhd. of Teamsters, 557 F.2d 1263,

4   1266-67 (9th Cir. 1979) (similar).

5        Plaintiffs bring this action pursuant to Section 301 of the Labor Management Relations

6   Act ("LMRA"), as amended, 29 U.S.C. Section 185, for violation of the collective bargaining

7   agreement between PMA and the Defendants (International Longshore and Warehouse Union

8   ("ILWU"), and International Longshore and Warehouse Union, Local 10 ("Local 10)).  As in

9   PMA v. ILWU and in Alyeska, Plaintiffs here seek an Order confirming the arbitration awards, a

10   temporary restraining order enforcing the award, and a preliminary and then permanent injunction

11   restraining Local 10 and its officers, members, agents and employees, from failing to comply with

12   Area Arbitration Awards NCAA-034-2007 and NCAA-036-2007 and Coast Arbitration Award

13   C-06-2007, and **this Court's order confirming and enforcing those awards.**

14   **II.**     **STATEMENT OF FACTS**

15       **A.**     **The Parties**

16       PMA is a multi-employer association of shipping, stevedoring and terminal companies

17   (the "Employers") which operate out of the Port of Oakland, as well as other ports in California,

18   Oregon and Washington.  There are more than 80 PMA member company Employers.  PMA is

19   the bargaining representative for the Employers, and handles their labor relations issues with

20   respect to longshoremen and marine clerks.

21       APMT is an operator of container terminals in several locations including a terminal in the

22   Port of Oakland.  APMT is a member of the PMA and is represented by PMA for collective

23   bargaining purposes.

24       Local 10 is a labor union comprised of longshore workers employed by PMA member

25   companies at ports in the San Francisco and Oakland Ports.

26       **B.**     **The Collective Bargaining Agreement**

27       PMA, ILWU, and ILWU Local 10 are parties to a collective bargaining agreement (CBA),

28   which is printed in two documents.   The Pacific Coast Longshore Contract Document

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MEMORANDUM OF POINTS AND
AUTHORITIES

("PCLCD") covers longshore workers.  Pertinent parts are attached as Exhibit A to the Complaint.  The PCLCD provides in Section 11 as follows:

> 11.1    There shall be no strike, lockout or work stoppage for the life of this Agreement.
>
> 11.2    The Union or the Employers, as the case may be, shall be required to secure observance of this Agreement.
>
> ***
>
> 11.31   In the event grievances or disputes arise on the job, all men and gangs shall continue to work as directed by the employer in accordance with the specific provisions of the Agreement or if the matter is not covered by the Agreement work shall be continued as directed by the employer.

Exh. A, PCLCD § 11.

Section 18.1 of the PCLCD contains a promise by both parties that they will observe the Agreement in good faith, "without resort to gimmicks and subterfuge."  Id. § 18.1.

Section 17 of the PCLCD sets out a multi-step grievance procedure.  Disputes are initially presented to the Joint Port Labor Relations Committee ("JPLRC"), which is comprised of an equal number of PMA and Union representatives having equal votes.  Disputes not resolved by the JPLRC may be referred to an Area Arbitrator.  Decisions of the Area Arbitrator may be appealed to the Joint Coast Labor Relations Committee ("JCLRC"), and, if not resolved at that step, then to the Coast Arbitrator, who "shall have the power and duty . . . to finally and conclusively determine the dispute."  PCLCD § 17.261.  During the grievance process, work "shall continue and be performed as provided in Section 11."  PCLCD § 17.16.  Further, Section 17.57 requires that "[a]ll decisions of arbitrators shall be observed and/or implemented. No decision of an Area Arbitrator, interim or formal, can be appealed unless it is observed and/or implemented."

## C.    The Illegal Work Stoppage and Delays

For many years, the employers at the Oakland Port have agreed to pay foremen a generous

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

MEMORANDUM OF POINTS AND
AUTHORITIES

1   pay guarantee, under which each foreman receives pay for a certain minimum number of hours

2   regardless of how many hours he actually worked during the payroll period. This has given the

3   foremen the benefit of a full-time salary without the obligation to work full-time hours. The

4   terms of the pay guarantee for foremen, including the number of guaranteed hours, has varied

5   from employer to employer.

6        On August 9, 2007, APMT informed its steady foremen that, going forward, pay

7   guarantee calculations would be based on pay for hours worked and an individual's availability to

8   work when APMT so requested. For example, a foreman who normally worked on a vessel

9   would be required to cover yard/gate operations when the regular yard foreman took a day off,

10   and if the vessel foreman refused to cover the yard shift, those hours would be deducted from the

11   weekly pay guarantee. Prior to this change, APMT would allow the vessel foreman to stay home,

12   with no loss in pay, and an extra foreman form the dispatch hall would be ordered to cover the

13   yard foreman's shift.

14        On August 18, 2007, crane operators and other longshore workers at APMT's Oakland

15   facility engaged in a work stoppage/slowdown to protest the changes in the foremen guarantee.

16   APMT's production reports showed a dramatic decrease in production for the first shift on the

17   vessel *Maersk Dublin* on August 18, compared to a five-week average for similar vessel service.

18        That same day, PMA referred this issue to the Northern California Area Arbitrator, Terry

19   Lane. The Arbitrator took testimony and evidence from both sides, including APMT's

20   production reports that showed a 43% decrease in productivity on the first shift of August 18,

21   2007, as compared to a five-week average for similar vessel service. On August 20, 2007,

22   Arbitrator Lane issued a written decision (NCAA-034-2007), ruling that "ILWU Local 10

23   officials and members are in violation of Section 11.1 by engaging in a slowdown tantamount to a

24   work stoppage" and that "Local 10, its officials and members, shall cease the slowdown and the

25   Union shall advise its members to work as directed in accordance with Section 11.31."

26        On August 22, 2007, PMA sought another ruling from Arbitrator Lane that Local 10 was

27   continuing its work slowdown in violation of Section 11.1 because the union had failed to

28   observe the August 20 award. At the arbitration hearing, APMT presented evidence that

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

MEMORANDUM OF POINTS AND
AUTHORITIES

productivity during the first shift on the vessel *Sealand Enterprise* was down 23.9% on August 22 as compared to a five-week average for similar vessel service.  On August 23, 2007, Arbitrator Lane issued another written decision (NCAA-036-2007), ruling that "ILWU Local 10 longshoremen at the APM Terminals did engage in a slowdown tantamount to a work stoppage in violation of Section 11.1 on August 22, 2007 on the Sealand Enterprise."  The Arbitrator's ruling further stated that "ILWU Local 10 has not implemented Decision NCAA-034-2007.  ILWU Local 10 officials shall instruct the longshoremen at the APM Terminals to cease and desist from violating Section 11.1 and to implement Arbitration Decisions in accordance with Section 17.57."  The ruling concluded that, because the local grievance machinery had failed to end the work slowdown, the matter was referred to the Coast Labor Relations Committee ("CLRC"), the next step in the contractual grievance-arbitration process.

On September 1, 2007, the CLRC reached disagreement on NCAA-036-2007 and the matter was automatically referred to Coast Arbitrator John Kagel, the final step in the grievance-arbitration process.  The Coast Arbitrator conducted a telephonic hearing on September 4, 2007, in which representatives from PMA, APMT, and the ILWU participated.  The Coast Arbitrator issued a written decision the same day confirming NCAA-036-2007 and stating that "ILWU Local 10 longshoremen at the APM Terminals shall forthwith cease and desist from engaging in slowdowns at that location" and "ILWU Local 10 officials shall continue to instruct the longshoremen at the APM Terminal to cease and desist from violating Section 11.1 and to implement arbitration decisions in accordance with Section 17.57."

**The plaintiffs filed their complaint in this matter, along with an application for temporary restraining order, on Thursday, September 6, 2007.  Counsel for the parties negotiated through the day on Friday, September 7 in an effort to resolve the dispute.  Ultimately they reached a resolution reflected in a stipulation requesting that the Court "confirm and enforce" the September 4, 2007 decision and award by the Coast Arbitrator.**

**On Friday, at approximately 2:10 p.m. the Court entered an order confirming and enforcing Coast Award C-06-2007, pursuant to stipulation of the parties.**

**Unfortunately, the Court's order was flaunted.  On Saturday, September 8, Local 10**

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

MEMORANDUM OF POINTS AND
AUTHORITIES

1  **continued its work stoppage/slowdown in violation of the PCLCD, resulting in a 34% drop**

2  **in production at APMT's Oakland terminal.  If there was any doubt before, Local 10 now**

3  **has made it abundantly clear that it will not comply with the Coast Award.  The only way to**

4  **force Local 10 to comply is to issue an immediate temporary restraining order.**

5      The arbitrator found that the illegal work stoppage and slowdown described above began

6  at the instigation and with the encouragement of defendant Local 10 and its officers to protest the

7  pay for hours worked change.  The work stoppage/slowdown has continued in the same vien and

8  to the extent the union seeks to deny it, defendants are engaging in "gimmicks and subterfuge"

9  The conduct on the part of defendant Local 10 has been carried on with the deliberate purpose

10  and design of damaging and disrupting the businesses of APMT, a PMA member, in full

11  recognition and disregard of the fact that it violates the no-strike and grievance and arbitration

12  provisions of the PCLCD and arbitration awards rendered thereunder.

13      As a result of the above-described work stoppage, APMT will be unable, and reasonably

14  believes that it will continue to be unable, to load or unload cargo in accordance with the PCLCD

15  at the usual rate of productivity.  These disruptive activities of Local 10 and its officers and

16  members will result in delays and additional expenses with respect to the cargo operations and

17  movement of APMT vessels and in losses to the APMT, the shipowners, and the shipping public.

18  APMT estimates that it loses between $15,000 and $200,000 for each eight-hour shift that a

19  vessel is delayed.  These loses are not recoverable, nor is the harm to goodwill resulting from

20  these intentional breaches of the CBA.

21  **III.    ANALYSIS: THE ARBITRATION AWARDS SHOULD BE CONFIRMED AT**

22  **ONCE, AND AN INJUNCTION SHOULD ISSUE TO ENFORCE THE AWARD**

23  **A.    The Arbitrators' Awards Are Final and Binding Interpretations of the CBA**
       **and Are Entitled to Confirmation.**

24

25      It is well-settled that a federal district court has jurisdiction under Section 301 of the

    Labor Management Relations Act, 29 U.S.C. Section 185, to review an award of a labor

26

27  arbitrator.  See <u>United Steelworkers of America v. Warrior & Gulf Navigation Co.</u>, 363 U.S. 574,

    580, 80 S. Ct. 1347, 1352, 4 L. Ed. 2d 1409, 1416-17 (1960); <u>Textile Workers v. Lincoln Mills,</u>

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

MEMORANDUM OF POINTS AND
AUTHORITIES

1   353 U.S. 448, 457-59, 77 S. Ct. 912, 918-20, 1 L. Ed. 2d 972, 981-83 (1957). The federal courts

2   are highly deferential to the decision of the labor arbitrator: if the award is not in manifest

3   disregard of the CBA and draws its essence from the CBA, the federal courts are to confirm and

4   enforce it. See United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593,

5   596, 80 S. Ct. 1358, 1361, 4 L. Ed. 2d 1424, 1428 (1960). Interpretation of the CBA is what the

6   parties to the CBA bargained for, and the courts "have no business overruling [the arbitrator]

7   because their interpretation of the contract is different from the arbitrator's." Enterprise Wheel &

8   Car Corp., 363 U.S. at 599; 80 S. Ct. at 1362, 4 L. Ed. 2d at 1429. The broad deference standard

9   established forty years ago by the U.S. Supreme Court has been repeatedly reaffirmed and applied

10  by the Supreme Court and the Ninth Circuit Court of Appeals:

11          It is not the function of the courts to review the merits of arbitration

12          awards. The interpretation of a collective bargaining agreement is a

13          question for the arbitrator. It is the arbitrator's construction that was

14          bargained for; and so far as the arbitrator's decision concerns

15          construction of the contract, the courts have no business overruling

16          him, because their interpretation of the contract is different than his.

17  San Francisco-Oakland Newspaper Guild v. Tribune Pub. Co., 407 F.2d, 1327, 1327 (9th Cir.

18  1969 (per curiam) (quoted with approval in Alyeska Pipeline Service Co. v. Int'l Bro. of

19  Teamsters, Chauffeurs, Warehousemen and Helpers of America, 557 F.2d 1263, 1267 (9th Cir.

20  1977) and Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173, IAM, 886

21  F.2d 1200, 1206 (9th Cir. 1989). In short, "[d]eference is the rule; rare is the exception." Stead

22  Motors, 886 F.2d at 1209. See also Sprewell v. Golden State Warriors, 266 F.3d 979, 986 (9th

23  Cir. 2001) ("Judicial scrutiny of an arbitrator's decision in a labor dispute is 'extremely

24  limited.'")

25          This principle of deference to the labor arbitrator's award has extended specifically to

26  decisions of the arbitrator in disputes between the precise parties in this matter: the federal district

27  courts in PMA v. ILWU, ILWU Local 19, 517 F.2d 1158, 1163 (9th Cir. 1975) and in PMA v.

28  ILWU, 304 F.Supp. 1315, 1318 (N.D.Cal. 1969) confirmed arbitration awards of the PMA/ILWU

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7                           MEMORANDUM OF POINTS AND
                                              AUTHORITIES

Arbitrator, upon application by PMA. The Ninth Circuit affirmed the actions of each of the district courts. See PMA w. ILWU, ILWU Local 19, 517 F.2d at 1163 and PMA v. ILWU, 454 F.2d 262, 264 (9th Cir. 1971). See also PMA v. ILWU Local 10, 1997 U.S. DIST. LEXIS 6017 (N.D.Cal. 1997) (granting PMA's motion to confirm Area Arbitrator's award).

Given the nature of labor arbitration proceedings, and the manner in which arbitration awards are issued, the written decision of the arbitrator is entitled to confirmation by the federal district court even where that decision is not as detailed or precise as a district court's own findings of facts and conclusions of law might be in a full trial. As noted by the Ninth Circuit in enforcing a labor arbitration award which was "somewhat cursory" and "nearly opaque," the federal courts:

> do not require labor arbitrators to make the sorts of explicit or exhaustive 'findings of fact' we demand of district courts; likewise, the reasons for arbitral rulings need not be spelled out in detail. Indeed, 'arbitrators have no obligation . . . to give their reasons for an award' at all.

Stead Motors, 886 F.2d at 1203 n.3, 1206 (quoting Enterprise Wheel & Car Co., 363 U.S. at 598, 80 S. Ct. at 1361, 4 L. Ed. 2d at 1428). A "mere ambiguity in the opinion accompanying an award" is not a basis for refusing to enforce the award. Enterprise Wheel & Car Corp., 363 U.S. at 598, 80 S. Ct. at 1361, 4 L. Ed. 2d at 1428.

**B.    Enforcement of the Area Arbitrator's Awards Requires Issuance of a TRO Mandating Compliance.**

Federal labor policy promotes the issuance of court injunctions to stop and prevent work stoppages and work delays that contravene a no-strike clause in a collective bargaining agreement. Section 301, Labor Management Relations Act, 29 U.S.C. § 185; Boys Markets, Inc. v. Retail Clerks Union, Local 770, 398 U.S. 235, 90 S. Ct. 1583, 26 L. Ed. 2d 199 (1970); Textile Workers Union v. Lincoln Mills, 353 U.S. at 448, 77 S. Ct. at 912, 1 L. Ed. 2d at 972 (1957). Where a binding arbitration award has been rendered finding that a work stoppage or delay

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

MEMORANDUM OF POINTS AND
AUTHORITIES

1    breaches the collective bargaining agreement, federal law supports the issuance of an Order

2    confirming that arbitration award, and an injunction enforcing the arbitral decision, provided that

3    the other prerequisites for such relief are met. Buffalo Forge Co. v. United Steelworkers, 428

4    U.S. 397, 405, 96 S. Ct. 3141, 3146-47, 49 L. Ed. 2d 1022, 1029 (1976); Alyeska Pipeline Serv.

5    Co. v. International Bhd. of Teamsters, 557 F.2d 1263,1266-67 (9th Cir. 1979); San Francisco

6    Elec. Contractors Ass'n v. International Bhd. of Elec. Workers, 577 F.2d 529, 532 (9th Cir.);

7    PMA v. ILWU, 517 F.2d at 1162-63 (9th Cir. 1975); International Longshoremen's &

8    Warehousemen's Union, Local 34 v. Cargill, Inc., 357 F. Supp. 608, 609-10 (N.D. Cal. 1973).

9        In Buffalo Forge, the United States Supreme Court considered whether to enjoin a union

10    that had gone on strike, not because of its own members' dispute with the employer, but in

11    support of other local unions of the same international organization that were negotiating a

12    contract with the employer.  428 U.S. at 404-05, 96 S. Ct. at 3146-47, 49 L. Ed. 2d at 1029.  The

13    Court pointed out that the union and the employer were bound by a collective bargaining

14    agreement containing a no-strike clause.  The union, however, claimed that the no-strike clause

15    did not forbid "sympathy strikes."  Id. at 405, 96 S. Ct. at 3146, 49 L. Ed. 2d at 1029.  The Court

16    held that the employer was entitled to invoke the arbitration process to determine the legality of

17    the sympathy strike and to obtain a court order requiring the union to arbitrate if it refused to do

18    so.  Id., 96 S. Ct. at 3147, 49 L. Ed. 2d at 1029. "Furthermore," the Court stated, "were the issue

19    arbitrated and the strike found illegal, the relevant federal statutes as construed in our cases would

20    permit an injunction to enforce the arbitral decision."  Id., 96 S. Ct. at 3147, 96 L. Ed. 2d at 1029

21    (emphasis added) (citing Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S. Ct. 1358, 4 L. Ed.

22    2d 1424 (1960).

23        In Alyeska Pipeline, Alyeska, a consortium of eight oil company-employers had a

24    collective bargaining agreement with the Unions building the Alaska pipeline.  After a dispute

25    arose over picketing by one of the Unions, Alyeska took the matter to arbitration under the

26    contract.  The arbitrator ruled in favor or Alyeska, and Alyeksa then requested that the federal

27    court issue a TRO enforcing the arbitrator's award.  557 F.2d at 265-66.  The district court issued

28    the TRO, and later issued a preliminary injunction and then a permanent injunction, enforcing the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MEMORANDUM OF POINTS AND
                                                                                    AUTHORITIES

arbitrator's award. Despite the Union's insistence that a federal court could not and should not issue an injunction requiring enforcing an arbitrator's award, especially where that award prohibited certain concerted activity by the members of the Union (picketing), the Ninth Circuit affirmed. Id. at 1266-67.

As noted at the outset of this Memorandum, the procedural order of (1) issuance by the labor arbitrator of an arbitration award, (2) federal court confirmation of the award, (3) TRO enforcing the award, and (4) preliminary injunction enforcing the award was followed by the federal court in PMA v. ILWU, 517 F.2d. 1158 (9th Cir. 1975). There, the same collective bargaining agreement language, and the same parties, had a labor dispute which was presented to the Arbitrator as the final and binding word on the issue. The Arbitrator rendered his decision, and the prevailing party (PMA) requested and received federal district court confirmation of the award, issuance of a TRO enforcing the award, and issuance of a preliminary injunction enforcing the award. The Ninth Circuit carefully considered the Union's procedural and substantive challenges to that result, rejected each of them, and affirmed the district court's decision. Similarly, when a group of ILWU Local 13 crane operators in February 2000 engaged in a work slowdown, and PMA took the issue to the Arbitrator, and the Arbitrator ruled in PMA's favor, PMA then filed a motion to confirm the arbitration award and for injunctive relief. PMA v. ILWU Local 13, U.S. District Court, Central District of California Case No. 00-01641. The Honorable Nora M. Manella three days later issued a Temporary Restraining Order against ILWU Local 13 and its officers and members restraining them pending the hearing on the Order to Show Cause re Preliminary Injunction from "participating in or permitting any work stoppage, slowdown, walkout or other conduct in violation of the Kagel Arbitration Award, C-01-00." The Court then set the matter for a preliminary Injunction Hearing and, after that hearing, issued an Order Granting Preliminary Injunction.

Similarly, in San Francisco Electric Contractors Ass'n, the Ninth Circuit considered a district court's decision to issue a preliminary injunction to prevent a union from engaging in a work stoppage. 577 F.2d at 530. The union appealed the district court's decision, arguing that the injunction violated the Norris-LaGuardia Act. Id. The employers/appellees responded that the

MEMORANDUM OF POINTS AND
AUTHORITIES

1   injunction merely served to enforce an arbitrator's award, which was issued following binding

2   arbitration pursuant to a collective bargaining agreement. Id. Thus, the employers claimed, the

3   injunction acted as an "implementation of the arbitration process" and fell within an exception to

4   Norris-LaGuardia. Id. The Ninth Circuit agreed, noting that "it had, since 1960, been recognized

5   that an arbitrator's decision that a strike was in violation of a contract and his order to cease and

6   desist were subject to judicial enforcement by injunction." Id. at 532. The court continued,

7   "Most recently the proposition was recognized in Buffalo Forge ..." Id. The court further

8   determined "In our judgment Boys Markets cannot sensibly be construed not to cover the union's

9   obligation to abide by the arbitrator's decision. If the process can be frustrated by such refusal,

10  submission to arbitration would be meaningless." Id. at 533. Therefore, the court concluded,

11  "the preliminary injunction was properly issued by the district court in order to enforce the

12  arbitrator's award." Id. at 534.

13          As a further example, in Cargill, the district court considered the union's claim that the

14  court did not have jurisdiction to grant preliminary relief. 357 F. Supp. at 609. The court noted

15  that the "precise question of whether an arbitration award may be enforced by preliminary

16  injunction was before the court" in a case pending before the district court in Nebraska. The

17  court there held that "it had the power to issue a mandatory injunction 'as a means to compel

18  defendants to honor the decision of the Joint Board, thereby specifically enforcing the agreement

19  entered into by the parties to so abide by said decision.'" Id. at 609-10 (quoting Bricklayers,

20  Masons, Marble and Tile Setters, Protective and Benevolent Union No. 7 v. Lueder Construction

21  Co., 346 F. Supp. 558, 563 (D. Neb. 1972)). The Cargill court agreed, holding that it had

22  "jurisdiction under § 301 of the LMRA to grant preliminary relief in a suit to enforce an

23  arbitration award." Id. at 610. Similarly, where employees engaged in a concerted refusal to

24  work overtime, the matter was held to be covered by the arbitration clause of the parties' CBA

25  and subject to issuance of an injunction enjoining union from encouraging members to refuse

26  overtime work. Avco Corp. v. Local Union #787, UAW, 459 F.2d 968, 973-74 (3d Cir. 1972).

27          Thus, federal labor law favors enforcement of arbitration awards, and it is wholly

28  appropriate for this Court to issue an Order not only confirming the arbitration award, but also

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

MEMORANDUM OF POINTS AND
AUTHORITIES

1    issuing a TRO and then a preliminary injunction enforcing that arbitration award. The duty of the

2    court in which an action under Section 301 has been commenced is to apply the substantive

3    federal common law that has developed under Section 301 in order to effectuate the policies of

4    the federal labor laws. <u>Textile Workers Union v. Lincoln Mills</u>, 353 U.S. at 450-51, 455-57, 77

5    S. Ct. at 914-15, 917-18, 1 L. Ed. 2d at 977-78, 980-81 (1957). A primary object of the United

6    States labor laws is to secure peaceful settlements of labor disputes by resort to the collective

7    bargaining process. The existence of a "no strike" provision in a collective bargaining agreement,

8    when joined with contract grievance machinery, materially furthers this policy and in fact

9    constitutes the central instrument in the maintenance of labor relations under the collective

10   bargaining agreement. Enforcement of such provisions was a primary purpose of Congress in

11   enacting Section 301. <u>Boys Markets Inc.</u>, 398 U.S. at 242-43, 248, 90 S. Ct. at 1588-1591, 26 L.

12   Ed. 2d at 205-06, 209 (1970); <u>Cargill</u>, 357 F. Supp. at 610. An injunction thus is appropriate to

13   prevent the violation of an arbitration award.

14          As but one more example, in another case involving these same parties under the same

15   collective bargaining agreement arbitration procedure, <u>PMA v. ILWU</u>, the Arbitrator rendered a

16   decision resolving a dispute over whether certain strike activity was in breach of the contract.

17   304 F. Supp. at 1322. The Arbitrator found that it was, and PMA moved in federal district court

18   to enforce the arbitration award. That request was granted. <u>Id.</u> at 1326. PMA also requested that

19   the federal district court issue an injunction ordering that the arbitration award be enforced; that

20   request was also granted. <u>Id.</u> PMA also requested that a permanent injunction issue, enforcing

21   the award. The district court also granted that request. <u>Id.</u> On appeal, the Ninth Circuit held that

22   the district court had jurisdiction to enter its permanent injunction (the Ninth Circuit affirmed as

23   to that order, and remanded as to certain other issues which had been before the district court).

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MEMORANDUM OF POINTS AND
AUTHORITIES

1  PMA v. ILWU, 454 F.2d. at 264.[1]

2  **IV.    AN INJUNCTION IS APPROPRIATE BECAUSE AN ILLEGAL WORK**

3  **STOPPAGE/SLOWDOWN IS PROBABLE AND THE BALANCE OF EQUITIES**

4  **STRONGLY FAVORS PMA AND THE EMPLOYERS**

5          The arbitration awards now before the Court have been confirmed, and an injunction

6  enforcing them is wholly appropriate, as detailed above.  Separate from the analysis above, the

7  Court can decide to look at the basic injunction factors and determine that the equities here

8  strongly favor issuance of an injunction to stop the defendant Unions from continuing to engage

9  in work stoppages and delays.  The Ninth Circuit has held that an injunction may issue where

10 there is a clear showing of either (1) probable success on the merits and possible irreparable

11 injury, or (2) sufficiently serious questions going to the merits to make them fair ground for

12 litigation and the balance of hardships leans decidedly toward the party requesting the preliminary

13 relief.  Arcamuzi v. Continental Airlines, Inc., 819 F.2d 935, 937 (9th Cir. 1987); see also Aguirre

14

---

15  [1]    The Defendants will argue that, pursuant to Northern Stevedoring & Handling Corp. v. ILWU,
685 F.2d 344 (9th Cir. 1982), the Norris-LaGuardia Act, 29 U.S.C. Section 101 et seq., prevents
16  the issuance of an injunction enforcing the arbitration award, or requires a full evidentiary hearing
prior to issuing a TRO on the award.  The Norris-LaGuardia Act's prohibition on labor injunctions
17  do not apply to injunctions to enforce arbitration agreements pursuant to LMRA § 301.  The
Norris-LaGuardia Act, passed in 1932 (15 years before the LMRA), has been analyzed at length in
18  numerous fact patterns identical to this: the labor arbitrator to a collective bargaining agreement
has issued a decision, the decision impacts the ability of employees to engage in concerted activity
19  such as striking, picketing, or refusing to report to work on time, and the employer who prevailed
at the arbitration is requesting the federal district court to confirm the award, issue a TRO
20  enforcing it, and grant a preliminary injunction enforcing it.  The Ninth Circuit in numerous cases,
including Alyeska, 557 F.2d at 1266-67, PMA, 454 F.2d at 264, and PMA, 517 F.2d at 1163,
21  refused to find that the Norris-LaGuardia Act imposed such restrictions, and affirmed district
courts which issued Orders confirming the arbitration awards, issuing TROs, and granting
22  preliminary injunctions.  Several federal district courts in cases involving the instant parties have
issued such Orders without a full-scale hearing, especially where the Union defendants have an
23  opportunity to provide written opposition to the Application.  See PMA v. ILWU Local 10, 1997
U.S. DIST. LEXIS 6017 (N.D.Cal. 1997); Order Granting TRO, and Preliminary Injunction Order
24  in PMA v. ILWU Local 13, U.S. District Court Central District of California Case No. CV-00-
1641 (2000); PMA v. ILWU and ILWU Local 19, 517 F.2d 1158 (9th Cir. 1975); PMA v. ILWU,
25  304 F. Supp. 1315 (N.D.Cal. 1969).  In the event this Court nevertheless feels that an evidentiary
hearing is required under the Norris-LaGuardia Act, any hearing should be conducted immediately
26  to prevent further harm to the plaintiffs.  Plaintiffs are prepared to examine their witnesses
immediately.  Plaintiffs see no reason why Local 10, which has known about the request for a
27  TRO for five days now, could not produce its witnesses immediately, as well.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13                                          MEMORANDUM OF POINTS AND
AUTHORITIES

1  v. Chula Vista Sanitary Service, 542 F.2d 779, 781 (9th Cir. 1976) (quoting Gresham v.

2  Chambers, 501 F.2d 687, 691 (2d Cir. 1974)).

3          The Supreme Court made clear in Boys Markets that when frustration of the public

4  interest by violation of a no strike provision and contract grievance machinery is coupled with

5  financial loss to management, irreparable injury has occurred and injunctive relief is appropriate.

6  398 U.S. at 248 & n.17, 90 S. Ct. at 1591 & n.17, 26 L. Ed. 2d at 209 & n.17; accord Campbell

7  "66" Express, Inc. v. Rundel, 597 F.2d 125, 128 (8th Cir. 1977); New York Telephone Co. v.

8  Communications Workers, 445 F.2d 39, 42-43 (2d Cir. 1971); General Building Contractors

9  Ass'n v. Local Union 642, International Union of Operating Engineers, 371 F. Supp. 1130, 1136

10  (E.D. Pa. 1974).  A temporary restraining order should issue ex parte, without oral testimony,

11  when a person aggrieved by a probable breach of a collective bargaining agreement is exposed

12  thereby to substantial and irreparable damage.  Section 7(e), Norris-LaGuardia Act of 1932, 29

13  U.S.C. § 107(e); Boys Markets, Inc., 398 U.S. at 252-53, 90 S. Ct. at 1593-94, 26 L. Ed. 2d at

14  211-12; Celotex Corp. v. Oil, Chemical & Atomic Workers Int'l Union, 516 F.2d 242, 247-48 (3d

15  Cir. 1975); Chief Freight Lines Co. v. Local Union No. 886, 514 F.2d 572, 575 (10th Cir. 1975);

16  New York Telephone Co. v. Communications Workers, 445 F.2d 39, 42-43 (2d Cir. 1971).

17          It is also well-settled that injunctive relief is proper when the behavior of the Union

18  indicates that further noncompliance with the arbitration provisions of the collective bargaining

19  agreement is likely.  Westmoreland Coal Co. v. International Union, United Mineworkers, 910

20  F.2d 130, 137 (4th Cir. 1990).  Previous conduct by the Union indicating a flagrant disregard for

21  its arbitration obligations may be relied upon to show that the Union is likely to commit future

22  breaches.  Id. at 138.  Simply because the Union has ceased the improper conduct, or has not yet

23  actually engaged in it, does not make a request for injunctive relief moot or premature:  "If there

24  is a reasonable apprehension that the misconduct will recur, a hearing to determine the

25  appropriateness of future injunctive relief is proper."  Donovan Constr. Co. v. Constr. Prod. &

26  Maint. Laborers Union, 533 F.2d 481, 484 (9th Cir. 1976).

27          Moreover, the Ninth Circuit has recognized the propriety of injunctive relief in response

28  to threats of imminent labor disputes:

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

MEMORANDUM OF POINTS AND
AUTHORITIES

1          It is true that one requirement for the issuance of a *Boys Market*

2    injunction is a careful inquiry into whether it is sanctioned under

3    ordinary principles of equity.  The difficulties of such an inquiry are

4    naturally compounded when the court is faced with anticipated

5    troubles rather than a present controversy.  However, the

6    complexity of this task will not deny a party access to this remedy if

7    he can adduce convincing evidence that the anticipated labor

8    dispute is sufficiently likely to occur, and that the harm threatened

9    thereby is of such magnitude as to bring his situation within the

10    *Boys Market* guidelines.

11    Donovan Const. Co., 533 F.2d at 484 (citations omitted) (emphasis added).

12          Here, the Union's egregious conduct over the past week – **repeatedly ignoring the**

13    **arbitrator's unambiguous awards <u>and this Court's enforcement order</u>** – illustrates that Local

14    10 is openly flaunting its contractual obligations (i.e. the no-strike and no-work stoppage clause),

15    and that it is willing to engage in and continue a work stoppage and delay if such conduct will

16    advance their monetary and other goals.  Local 10's illegal work stoppage must be enjoined so

17    that Plaintiffs can enjoy the benefit of the bargain they struck when Local 10 agreed to the no-

18    strike and arbitration provisions.

19          Several other factors demonstrate that injunctive relief is warranted.  First, Local 10's

20    conduct is knowingly improper.  Local 10 knows its obligations under the PCLCD to not engage

21    in work stoppages and to observe all arbitration awards, yet Local 10 is blatantly ignoring those

22    obligations.  Second, Local 10's work stoppage continued even **after the Arbitrators** specifically

23    found Local 10's conduct to be in violation of the PCLCD, and ordered Local 10 to cease its

24    unlawful conduct and to take affirmative steps to remedy its violation, **and even after this Court**

25    **specifically ordered enforcement of the Coast Award.**

26          Third, due to the unique nature of the ports and the industry, a work stoppage causes real

27    havoc and damage to the Employers, the Employers' customers, and numerous other parties who

28    depend on the timely flow of goods in and out of the ports.  The monetary damages to the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

MEMORANDUM OF POINTS AND
AUTHORITIES

1    Employers, although difficult to measure, are estimated to be between $15,000 and $200,000 per

2    vessel for each additional 8-hour shift the vessel is delayed. Additionally, the Employers' good

3    will, public relations, and competitive position in the industry are severely impacted by delays

4    and the inability to meet promised deadlines for shipments. See Otis Elevator v. Local 1, Int'l

5    Union of Elevator Constructors, 684 F.Supp. 80, 83 (S.D.N.Y. 1988) (when work stoppage is

6    likely to lead to loss of goodwill and a permanent loss of business, irreparable harm justifying

7    injunction is shown).

8         Much of the damage suffered by the Employers (such as loss of goodwill and the various

9    harms caused by delay) is not readily capable of monetary computation. Irreparable injury is

10   found where the damages are difficult or impossible to quantify. See U-Haul Int'l Inc. v. Jartran

11   Inc., 522 F. Supp. 1238 (1981), aff'd, 681 F.2d 1159 (9th Cir. 1982) (irreparable injury found

12   when it is impossible to measure the exact amount of the party's damages); Paulsen v. County of

13   Nassau, 925 F.2d 65, 68 (2nd Cir. 1991) ("[I]mproper conduct for which monetary remedies

14   cannot provide adequate compensation suffices to establish irreparable harm."); Allied Marketing

15   Group, Inc. v. CDL Marketing, Inc., 878 F.2d 806, 810 n.1 (5th Cir. 1989) ("[A] finding of

16   irreparable harm is appropriate even where economic rights are involved when the nature of those

17   rights makes 'establishment of the dollar value of the loss . . . especially difficult or

18   speculative.'").

19        Finally, the balance of the equities in this case clearly favors Plaintiffs. Greater injury will

20   be inflicted on Plaintiffs by the denial of relief than will be inflicted upon Defendants by the

21   granting of relief since they are only being requested to abide by the collective bargaining

22   agreement and the arbitration awards issued pursuant to that agreement. A work stoppage and

23   delay will result in irreparable harm to APMT by jeopardizing its relations with its customers,

24   causing it to lose potential business, and causing tremendous monetary damages which are

25   difficult if not impossible to quantify. The public will also be harmed by the delay in the

26   shipment of goods. See Chalk v. U.S. Dist. Court, 840 F.2d 701, 711 (9th Cir. 1988) (public

27   interest is one of the traditional criteria a court should consider in granting injunctive relief).

28   Conversely, the issuance of injunctive relief would work no harm at all on Defendants. They

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16                                MEMORANDUM OF POINTS AND
                                                    AUTHORITIES

1  simply would have to abide by the no-strike clause to which they agreed and the binding

2  arbitration awards. See Otis Elevator, 684 F.Supp. at 83 (balance tips decidedly in plaintiff's

3  favor because "[a]ll the court is requiring the Union to do is execute its contractual obligation not

4  to strike, and to arbitrate the disputes").

5  **V.      THE DEFENDANTS ARE RESPONSIBLE FOR THE ILLEGAL WORK**

6  **STOPPAGE BECAUSE THEY HAVE CONDONED AND ENCOURAGED SUCH**

7  **ACTION**

8          A union is bound by the acts of its members not only where it expressly authorizes or

9  ratifies those acts but also where it encourages or condones them, directly or indirectly.  LMRA

10  §§ 301(b), 301(e), 29 U.S.C. §§ 185(b), 185(e); United States Steel Corp. v. UMW, 519 F.2d

11  1249, 1253 (5th Cir. 1975); Vulcan Materials Co. v. United Steelworkers, 430 F.2d 446, 457 (5th

12  Cir. 1970).  Encouragement need not be explicit to result in union liability:

13              Strike encouragement sometimes is explicit, but more often is

14              cryptic.  A union may employ subtle signals to convey the message

15              to strike.  One court noted that unions sometimes employed "a nod

16              or a wink or a code . . . in place of the word 'strike'."

17  Complete Auto Transit, Inc. v. Reis, 451 U.S. 401, 418 n.1, 101 S. Ct. 1836, 1846 n.1, 68 L. Ed.

18  2d 248 n.1 (1981) (Powell, J. concurring in part and dissenting in part); Seattle Times Co. v.

19  Seattle Mailers' Union, 664 F.2d 1366, 1369 (9th Cir. 1982).  A union is responsible for unlawful

20  strike activity that, contrary to its contract obligations, it does not take effective steps to stop and

21  prevent.  Consolidation Coal Co. v. Local 1702 UMW, 709 F.2d 882, 885-86 (4th Cir. 1983).

22  This is particularly so when there has been a pattern of strike activity that is plainly unlawful

23  under the contract.  United States Steel Corp. v. UMW, 519 F.2d at 1256.

24          Here, the Area Arbitrator and Coast Arbitrator found, after full hearings, that Local 10

25  violated several provisions of the PCLCD and that it would continue to violate those provisions

26  unless it immediately undertook the specific actions ordered by the Arbitrator.  Local 10 must do

27  more than just assert that it is up to its members to decide whether they will comply.  It is

28  disingenuous for Local 10 to claim that they cannot, or need not, do more: the following language

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

.17                                    MEMORANDUM OF POINTS AND
                                              AUTHORITIES

1  from the <u>PMA v. ILWU</u> decision of the Ninth Circuit is directly on point:

2              Appellants [the International Union and one of the Locals] next

3              contend that the Kagel decision is too vague to be susceptible of

4              enforcement in that it does not tell the unions what they must do or

5              must not do. . . . We agree with PMA that  . . . the unions do not

6              need to be told by anyone how to go about the business of securing

7              observance from their members. . . .

8                                                  . . .

9              The unions by contract have assumed the responsibility for securing

10             necessary action by their members and  . . . need no instruction

11             from the court on such matters.

12  517 F.2d at 1161, 1162.  Local 10 has the full ability to obtain compliance with the awards at

13  issue; it just needs an Order from this Court directing it to do so.

14  **VI.     CONCLUSION**

15       For all of the foregoing reasons, PMA respectfully requests that this Court issue a TRO

16  ordering Local 10 to take the actions specified in the awards and set a preliminary injunction

17  hearing.

18

19  Dated:  September 10, 2007                  MORGAN, LEWIS & BOCKIUS LLP
                                                BRENDAN DOLAN
20                                              CLIFFORD D. SETHNESS

21

22

23                                          By _____
                                                Brendan Dolan
24                                              Clifford D.  Sethness
                                                Attorneys for Plaintiffs
25                                              PACIFIC MARITIME ASSOCIATION
                                                and APM TERMINALS PACIFIC, LTD.

26

27

28

MORGAN, LEWIS &
  BOCKIUS LLP
 ATTORNEYS AT LAW
  SAN FRANCISCO

MEMORANDUM OF POINTS AND
AUTHORITIES