APM TERMINALS            Fax:5102711060            Sep 10 2007  11:03      P.02

BRENDAN DOLAN, State Bar No. 126732
MORGAN, LEWIS & BOCKIUS LLP
One Market Street
San Francisco, CA 94105
Tel: 415.442.1000
Fax: 415.442.1001

CLIFFORD D. SETHNESS, State Bar No. 212975
MORGAN, LEWIS & BOCKIUS LLP
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Telephone: 213.612.2500
Fax:       213.612.2554

*Attorneys for Plaintiffs*
PACIFIC MARITIME ASSOCIATION and
APM TERMINALS PACIFIC, LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC MARITIME ASSOCIATION, a California corporation; APM TERMINALS PACIFIC, LTD., a California corporation. <br><br> Plaintiff, <br><br> vs. <br><br> INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, an unincorporated labor organization; INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCAL 10, an unincorporated labor organization. <br><br> Defendants. | Case No. C-07-04618 CRB <br><br> **SUPPLEMENTAL DECLARATION OF MARK SIMPSON IN SUPPORT OF PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER** |

I, Mark Simpson, declare as follows:

1. I am the General Manager of Port Operations for APM Terminals, Ltd. ("APMT") at the Oakland, California Terminal. I have personal knowledge of the facts set forth in this declaration, and would testify competently as to those facts if called as a witness.

2. On September 6, 2007, I executed a Declaration in support of the plaintiffs'

1. application for temporary restraining order, which was filed the same day with the Court. A true and correct copy of my Declaration is attached hereto as Exhibit A.

    3.   On Saturday, September 8, 2007, the day after the Court confirmed and enforced the Coast Arbitrator's Award, Local 10 refused to cease its work slowdown at the APMT terminal. On the first shift on September 8, Local 10's members were working against the vessel *Dirch Maersk*. Production for the first shift was down 34% compared to normal. There were no operational abnormalities during that shift that would explain any part of this decrease in production. This decrease is a direct result of Local 10's continuing work slowdown.

    4.   Without immediate relief from this Court, Local 10's work slowdown will result in irreparable continuing harm to APMT's Oakland operation in the form of significant revenue loss, production delays, and loss of customer goodwill. APMT estimates that it has lost and will continue to lose between $15,000 and $100,000 per each eight-hour shift that a vessel is delayed as a result of Local 10's work slowdown.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

    Executed this ___ day of September, 2007, at Oakland, California.

                                                          /s/ Mark Simpson
                                                          ─────────────────
                                                          Mark Simpson

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

                                    2                SUPPLEMENTAL DECLARATION OF MARK
                                                                                SIMPSON

1  BRENDAN DOLAN, State Bar No. 126732
   MORGAN, LEWIS & BOCKIUS LLP
2  One Market Street
   San Francisco, CA 94105
3  Tel: 415.442.1000
   Fax: 415.442.1001
4

5  CLIFFORD D. SETHNESS, State Bar No. 212975
   MORGAN, LEWIS & BOCKIUS LLP
6  300 South Grand Avenue
   Twenty-Second Floor
7  Los Angeles, CA 90071-3132
   Telephone:   213.612.2500
8  Fax:         213.612.2554

   *Attorneys for Plaintiffs*
9  PACIFIC MARITIME ASSOCIATION and
   APM TERMINALS PACIFIC, LTD.
10

11                UNITED STATES DISTRICT COURT

12                NORTHERN DISTRICT OF CALIFORNIA

13

14 PACIFIC MARITIME ASSOCIATION, a     Case No. C07-04618
   California corporation; APM
15 TERMINALS PACIFIC, LTD., a          DECLARATION OF MARK SIMPSON IN
   California corporation.             SUPPORT OF PLAINTIFFS'
16                                     APPLICATION FOR TEMPORARY
              Plaintiff,                RESTRAINING ORDER
17
        vs.
18
   INTERNATIONAL LONGSHORE AND
19 WAREHOUSE UNION, an
   unincorporated labor organization;
20 INTERNATIONAL LONGSHORE AND
   WAREHOUSE UNION, LOCAL 10, an
21 unincorporated labor organization,

22            Defendants.

23
        I, Mark Simpson, declare as follows:
24
        1.    I am the General Manager of Port Operations for APM Terminals, Ltd. ("APMT")
25
   at the Oakland, California Terminal. I have personal knowledge of the facts set forth in this
26
   declaration, and would testify competently as to those facts if called as a witness.
27
        2.    For many years, APMT at its Oakland terminal has agreed to pay certain foremen
28

MORGAN, LEWIS &
 BOCKIUS LLP
ATTORNEYS AT LAW
 SAN FRANCISCO                                              DECLARATION OF MARK SIMPSON

EX. A
Page 1 of 3

1  a generous pay guarantee, pursuant to the maximum allowable under the PCWBFA. Under that
2  agreement, those foremen have received pay for a certain minimum number of hours regardless of
3  how many hours the foreman actually worked during the payroll period.

4      3.    On August 9, 2007, APMT informed its steady foremen that, going forward, pay
5  guarantee calculations would be based on pay for hours worked and an individual's availability to
6  work when APMT so requested. For example, a foreman who normally worked on a vessel
7  would be required to cover yard/gate operations when the regular yard foreman took a day off,
8  and if the vessel foreman refused to cover the yard shift, those hours would be deducted from the
9  weekly pay guarantee. Prior to this change, APMT would allow the vessel foreman to stay home,
10 with no loss in pay, and an extra foreman from the dispatch hall would be ordered to cover the
11 yard foreman's shift.

12     4.    On Saturday, August 18, 2007, I and other managers at APMT-Oakland observed
13 a dramatic reduction in productivity by Local 10 longshoremen, which is measured in terms of
14 container moves per hour. Specifically, during the first four hours of the first shift, production on
15 the *Maersk Dublin* was down 43% compared to a five-week average for similar vessel service. I
16 personally testified to this data at a hearing before the Area Arbitrator, resulting in Award
17 NCAA-034-2007.

18     5.    On Wednesday, August 22, 2007, I and other managers at APMT-Oakland
19 observed that production on the *Sealand Enterprise* was down approximately 24% compared to a
20 five-week average for similar vessel service. I again testified at a hearing before the Area
21 Arbitrator, which resulted in Award NCAA-036-2007. I testified that, in addition to the raw
22 production data, I personally observed Local 10 members engaging in a concerted work
23 slowdown. Specifically, I observed crane operators waiting for the chassis to be pulled out from
24 under the crane before hoisting to the vessel, slowing the descent of the bridle 10 to 15 feet
25 excessively high before landing on the container, moving the crane in a square pattern instead of a
26 curved arc, and generally operating much more slowly than usual.

27     6.    The recent decrease in productivity is far outside the normal range. As the
28 Arbitrators have concluded, the only explanation for this decrease is a deliberate work slowdown

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2   DECLARATION OF MARK SIMPSON

EX. _A_
Page _2_ of _3_

APM TERMINALS        Fax:5102711060              Sep  6 20..  15:39     P.04

1  by Local 10's members. The purpose and effect of these actions by Local 10 members is to
2  reduce APMT-Oakland's productivity as a vehicle to pressure our company to grant a more
3  generous pay guarantee to foremen.
4      7.  Local 10 and its members have refused to comply with the Coast Arbitartor's
5  Award in C-06-2007, which ordered Local 10 to stop its work slowdown. Through the evening
6  of September 5, 2007, Local 10 members continued to operate at a pace far slower than normal,
7  resulting in similar substantial productivity decreases that the Area and Coast Arbitrators found to
8  violate the PCLCD. During the day shift of September 6, 2007, Local 10 members alleged that
9  there was a health and safety issue and walked off the job and production at APMT's Oakland
10  terminal ceased temporarily. As of 1 p.m. on September 6, 2007, APMT is attempting to resume
11  operations with a reduced workforce.
12      8.  Without immediate relief from this Court, Local 10's unlawful work slowdown
13  will result in irreparable continuing harm to APMT's Oakland operation in the form of significant
14  revenue loss, production delays, and loss of customer goodwill. APMT estimates that it has lost
15  and will continue to lose between $15,000 and $100,000 per each eight-hour shift that a vessel is
16  delayed as a result of Local 10's work slowdown.
17
18  I declare under penalty of perjury under the laws of the United States of America that the
19  foregoing is true and correct.
20  Executed this 6 day of September, 2007, at Oakland, California.

*Mark Simpson*

1-LA/955992.1

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3                               DECLARATION OF MARK SIMPSON

EX. A
Page 3 of 3