ROBERT S. REMAR (SBN 100124)
ELEANOR I. MORTON (SBN 220407)
LEONARD CARDER, LLP
1188 Franklin Street, Suite 201
San Francisco, California 94109
Telephone: 415-771-6400
Facsimile: 415-771-7010

Attorneys for Defendants
INTERNATIONAL LONGSHORE
AND WAREHOUSE UNION and
INTERNATIONAL LONGSHORE
AND WAREHOUSE UNION, LOCAL 10

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC MARITIME ASSOCIATION, a California corporation; APM TERMINALS PACIFIC, LTD., a California corporation. <br><br> Plaintiffs, <br><br> vs <br><br> INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, an unincorporated labor organization; INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCAL 10, an unincorporated labor organization, <br><br> Defendants. | Case No. 07-04618 CRB <br><br> **OPPOSITION TO EMPLOYER'S MOTION FOR TEMPORARY RESTRAINING ORDER** |

# TABLE OF CONTENTS

EMPLOYERS' REFUSAL TO MEET AND CONFER ................................................................ 1

STATEMENT OF FACTS ........................................................................................................... 2

    I. The PMA-ILWU Collective Bargaining Agreement ................................................... 2

    II. Arbitration Over Alleged Work Slowdown By Certain Longshoremen at APMT. ...... 3

    III. Stipulated Order to Confirm and Enforce Arbitration Award. ..................................... 6

    IV. Genesis of the Alleged Work Slowdowns According to Employers ........................... 6

ARGUMENT ................................................................................................................................ 7

    I. The Norris-LaGuardia Act Deprives this Court of Jurisdiction to Issue the Injunction that the Employers Seek. .................................................................................................. 7

        A. This Court Has Jurisdiction to Issue an Injunction Only to Enforce the Coast Arbitrator's Award as Written. ......................................................................................... 9

        B. No *Boys Markets* Injunction is Permissible Because the Reason for the Work Slowdown is Not Arbitrable by the Parties Before this Court. ....................................... 11

    II. The Norris-LaGuardia Act Requires this Court to Hold an Evidentiary Hearing Before Issuing an Injunction. ...................................................................................................... 13

    III. The Injunctive Relief the Employers Request Would Improperly Circumvent The Requirement that The Parties Exhaust Contractual Remedies Before Seeking the Intervention of the Court. ............................................................................................... 14

    IV. No Injunction May Be Awarded Because There is No Convincing Evidence that the Unions Will Facilitate a Work Slowdown ...................................................................... 15

    V. The Employers Cannot Show That They Will Suffer an Irreparable Injury Because They Have Refused to Take Steps to Prevent the Harm They Complain of Here. ......... 16

CONCLUSION ........................................................................................................................... 17

LEONARD CARDER, LLP
ATTORNEYS
1188 FRANKLIN STREET, SUITE 201
SAN FRANCISCO, CALIFORNIA 94109
TELEPHONE: (415) 771-6400   FAX (415) 771-7010

The instant disputes stems from an alleged work slowdown by certain members of the longshore bargaining unit represented by Defendants International Longshore and Warehouse Union ("ILWU") and International Longshore and Warehouse Union, Local 10 ("Local 10") (collectively, "Unions") in the Port of Oakland. According to the arbitrator chosen by the parties, while the individual workers violated the collective bargaining agreement between the ILWU and Plaintiff Pacific Maritime Association ("PMA"), Local 10 officers did not engage in the slowdown and used "their best efforts to resolve the dispute." The Unions agree that this arbitration award instructing, *inter alia*, the individual longshoremen to cease and desist from engaging in work slowdowns is final and binding on the parties and, on September 7, 2007, stipulated to confirmation and judicial enforcement of this award. ***PMA and Plaintiff APM Terminals Pacific, Ltd. ("APMT") are not entitled to any more relief than that to which the Unions have already agreed.***

Nonetheless, PMA, a multi-employer association of shipping, stevedoring and terminal companies, and APMT, a PMA member company (collectively, "Employers"), have returned to this Court seeking remedies beyond what the arbitrator ordered and despite having agreed to a stipulated order for confirmation and enforcement of the arbitrator's order only three days ago. The Employers' motion must be denied as a matter of law and, in any event, could only be granted after a full evidentiary hearing requiring proof by convincing evidence, as required by the Norris-La Guardia Act. 29 U.S.C. § 101 *et seq.*

## EMPLOYERS' REFUSAL TO MEET AND CONFER

Rather than engage in a good faith effort to meet and confer with the Unions about the Employers' new request for a TRO filed today, the Employers have refused. After obtaining notice on the morning of Monday, September 10, 2007, that the Employers' counsel were returning to court to seek a TRO the same morning due to alleged continued work slowdowns

1

over the preceding weekend, the undersigned called the Employers' counsel and sought to meet and confer regarding the specific relief the Employers intended to seek and the evidence they intended to offer. Specifically, the undersigned asked whether the Employers intended to offer evidence that any Local 10 officers or ILWU officers had any involvement in an alleged work slowdown over the weekend. Employer's counsel Brendan Dolan refused to provide this information, stating that the Unions would have to wait until the Employers filed their papers in Court. The Employers' refusal to meet and confer over this critical issue has left the Unions hamstrung. To the extent the Employers' contend that Local 10 or ILWU officers played any role in an alleged work slowdown over the weekend, the Unions are unable to respond herein and request additional time to do so.

## STATEMENT OF FACTS

### I.   The PMA-ILWU Collective Bargaining Agreement

The Pacific Coast Longshore and Clerks Agreement ("PCLCA") is the collective bargaining agreement between the ILWU International, and its affiliated longshore division locals (including Defendant Local 10), and the PMA and its member companies. The PCLCA covers the terms and conditions of employment for approximately 25,000 registered and casual, longshore workers and marine clerks in the twenty-six (26) commercial ports of the West Coast of the United States.

Under section 17 of the PCLCA – submitted to the Court by the Employers with their opening brief – labor disputes concerning the terms of the PCLCA are resolved through the following exclusive grievance/arbitration procedure. The dispute is first considered by the Joint Port Labor Relations Committee ("JPLRC"), comprised of representatives from the local ILWU affiliate and the local PMA and its member companies in each port. Absent joint agreement by the JPLRC, most matters are submitted to the Area Arbitrator, of which there are

four along the West Coast. Under section 17.261, any decision of the JPLRC or of the Area Arbitrator is subject to appeal before the Joint Coast Labor Relations Committee ("JCLRC"). In the event the JCLRC fails to reach agreement, the matter is then submitted to the Coast Arbitrator, whose determination is final and binding under sections 17.55 and 17.57. (See also, section 17.261, stating that the Coast Arbitrator shall "finally and conclusively determine the dispute.")

## II.    Arbitration Over Alleged Work Slowdown By Certain Longshoremen at APMT.

In accordance with these grievance/arbitration procedures, PMA in the instant matter first presented to the San Francisco JPLRC, and then to the Area Arbitrator, its claims that ILWU Local 10, its officers and members were guilty of work slowdowns at the APM Terminals in Oakland in violation of section 11.1 of the PCLCA. These PMA claims resulted in two Area Arbitration Awards, namely, NCAA-34-2007, dated August 20, 2007 and NCAA-36-2007, dated August 23, 2007. *See* Declaration of Leal Sundet in Opposition to PMA and APMT's Motion for a TRO ("Sundet Dec."), Ex. 1-2.

In the first Area Arbitration Award, NCAA-34-2007, the Area Arbitrator found that Local 10, its officers and members who work as steady crane operators at the APM Terminals facility in Oakland were guilty of conducting or allowing a slowdown of work at that facility. However, in the second Area Arbitration Award, NCAA-36-2007, the Area Arbitrator held that "the Local 10 officials are not engaged in a slowdown and have been using their best efforts to resolve the dispute." (See page 4 thereof).

On September 4, 2007, the PMA Employers submitted both Area Awards, NCAA-34-2007 and NCAA-36-2007 to the JCLRC for confirmation and enforcement. In this regard, the JCLRC meeting minutes for that date, JCLRC No. 38-07 reflect that the PMA Employers made the following three-part motion for relief:

3

1. That the ILWU Local 10, its Officers and members, fully implement Area Award Nos. NCAA-34-2007 and NCAA-36-2007.

2. That ILWU Local 10, its Officers and members, refrain from any and all forms of economic action in violation of the agreement, including work stoppages, slowdowns, mass resignations, denial of qualified labor, refusal to dispatch or accept dispatch or any other form of coercion or concerted action, which violated the Agreement.

3. That ILWU Local 10, its Officers and members, are guilty of failing to abide by the Area Award Nos. NCAA-34-2007 and NCAA-36-2007.

Sundet Dec., Ex. 3 at 1.

The Union members of the JCLRC voted "No" on each of the three PMA motions. In particular, the ILWU members of the JCLRC denied that Local 10, its officers or collective membership were responsible for the alleged concerted activity, and noted that the Area Arbitrator in the most recent Award No. NCAA-36-2007 held that "the Local 10 officials are not engaged in a slowdown and have been using their best efforts to resolve the dispute."

The ILWU members of the JCLRC further pointed out that "attempted intervention by the Union with APMT's steady employees has proved fruitless" and that the Employer "has an obligation to deal directly with its steady workforce under Section 17.81" of PCLCA but chooses not to exercise this option for corrective action. (See page 2 of the CLRC Minutes, Exhibit 3). This reference to Section 17.81 concerns the Employer's right and ability to impose discipline on individual steady employees whom the Employer believed are guilty of work slowdowns. The PMA Employers then and now have refused to exercise their option to discipline employees, even though this would likely end the allegedly intentional slowdown.

Pursuant to motion by the PMA Employers, the JCLRC disagreement was submitted on that same day to the Coast Arbitrator for final and binding resolution. The ILWU and the PMA presented, by oral argument telephonically, to the Coast Arbitrator the same motions and arguments concerning the two Area Arbitration Awards as are set forth in the JCLRC meeting



minutes No. 38-07.

On the afternoon of September 4, 2007, the Coast Arbitrator issued his written award, No. C-6-07, which states as follows:

1. The ILWU Local 10 longshoremen at the APM Terminals shall forthwith cease and desist from engaging in slowdowns at that location.

2. The ILWU Local 10 officials shall *continue* to instruct the longshoremen at the APM Terminal to cease and desist from violating Section 11.1 and to implement arbitration decisions in accordance with Section 17.57.

2. This decision, served by e-mail to the parties, is to the same effect as if signed by the Cast Arbitrator and thereafter hand delivered to the Parties.

Sundet Dec. Ex. 4 (emphasis added).

A comparison of the Employer's motion for relief in the JCLRC minutes (Sudet Dec., Ex. 3) and the actual relief awarded in Coast Arbitration Award C-06-07 (*id.*, Ex. 4) shows that the Coast Arbitrator specifically rejected the PMA Employers' three-part motion for relief. In particular, the Coast Arbitrator rejected the PMA claim that the Local 10 officers or its membership in general were somehow responsible for work slowdowns, and rejected the PMA request for a broad cease and desist order against Local 10, its officers and members.

The Coast Arbitration Award No. C-06-07 further holds that the Local 10 officers have indeed been using their "best efforts" to resolve the dispute, as so found in Area Arbitration Award No. NCAA-36-2007, and accordingly directs that "ILWU Local 10 officials shall *continue* to instruct the longshoremen at the APM Terminal to cease and desist from violating Section 11.1 and to implement arbitration decisions in accordance with Section 17.57." (Emphasis added).

In addition to explicitly modifying and superseding Area Arbitration Award NCAA-36-2007, the Coast Arbitration Award also necessarily modifies and supersedes Area Arbitration Award NCAA-34-2007. In this regard, the Coast Arbitrator chose not to include Area Award

NCAA-34-2007 in his decision, despite it having also been submitted to him for review at the same time.

The next morning after the Coast Arbitrator issued the award, in compliance with his order, Local 10 officials sent every individual longshoremen at APMT who had allegedly engaged in the work slowdown copies of Area Arbitration decision NCAA-36-07 and the Coast Arbitrator's decision with a letter instructing them in no uncertain terms to cease any work slowdown immediately:

> Please review both awards. . . . Arbitrator Kagel ordered that such slowdowns cease. Know that Local 10 has a contractual obligation to enforce both arbitration awards.
>
> To that end, you should work as directed by APMT supervision in keeping with the PCLCD and PCMSC [Pacific Coast Marine Safety Code].
>
> Any activity associated with a concerted slow down should cease immediately.

Declaration of Thomas Clark in Opposition to Motion for TRO, Ex. A-B (emphasis added).

### III.     Stipulated Order to Confirm and Enforce Arbitration Award.

On September 6, 2007, the Employers sought a TRO against the Unions seeking far more relief than was ordered by the Coast Arbitrator. On September 7, 2007, after good faith negotiations, the parties stipulated to an order confirming and enforcing the Coast Arbitrator's award, which the Court signed on the same date.

### IV.     Genesis of the Alleged Work Slowdowns According to Employers

The Employers allege that the source of the underlying dispute in this matter concerns a disagreement between APMT and its "walking bosses" or foremen concerning their proper pay and hours. Such a dispute about foremen pay and hours is covered exclusively by the terms of a collective bargaining agreement, called the "Pacific Coast Walking Bosses and Foremen's Agreement of 2002- 2008" (PCWBFA). Sundet Dec. Exh. 5.

Neither Defendant ILWU International nor Defendant ILWU Local 10 is a party to the



PCWBFA. Defendants ILWU and Local 10 do not serve as the collective bargaining representative of any walking bosses or foremen, including those employed at APM Terminals in Oakland. Nor is either Defendant able to file or process any claims or grievances concerning the pay or hours of walking bosses and foremen, including those at APM Terminals, under the PCWBFA.

In addition, neither Defendant ILWU International nor Defendant ILWU Local 10 is able to file or process any claims or grievances concerning the pay or hours of walking bosses and foremen, including those at APM Terminals in Oakland, under the PCLCA. This is because the PCLCA does not cover terms of employment for walking bosses and foremen, and also defendants ILWU and Local 10 do not represent any walking bosses or foremen under the PCLCA nor any other collective bargaining agreement. Thus, the underlying dispute as asserted by PMA in this matter is not arbitrable by defendants ILWU and Local 10 in any manner or circumstance.

## ARGUMENT

### I. The Norris-LaGuardia Act Deprives this Court of Jurisdiction to Issue the Injunction that the Employers Seek.

The Norris-LaGuardia Act ("NLA" or "Act"), 29 U.S.C. § 101 *et seq.*, deprives this Court of jurisdiction from issuing the injunction the Employers seek. The TRO must be denied by the Court as a mater of law.

In the NLA, "Congress severely restricted the jurisdiction of the federal courts to issue injunctions in 'any labor dispute'." *Camping Construction Co. v. District Council of Iron Workers*, 915 F.2d 1333, 1341 (9th Cir. 1990); *Burlington Northern Santa Fe Railway Company v. Int'l Bhd. Teamsters Local 174*, 203 F.3d 703, 707 (9th Cir. 2000) ("Congress enacted the Norris-LaGuardia Act in 1932 to 'take the federal courts out of the labor injunction

business.'") (quoting *Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Assn.*, 457 U.S. 702, 712 (1982)). Section 4 of the NLA, 29 U.S.C. § 104, provides in pertinent part:

> No Court of the United States shall have jurisdiction to issue <u>any restraining order or temporary or permanent injunction</u> in any labor dispute to prohibit any person or persons participating or interested in such dispute . . . from doing, whether singly or in concert, any of the following acts –
>
> (a) <u>Ceasing or refusing to perform any work</u> or to remain in any relation of employment . . . . (emphasis supplied).

The courts have carved out only four limited exceptions to this anti-injunction provision. *See Camping Construction*, 915 F.2d at 1343-45. The only two even arguably applicable here permit (1) enforcement by injunction of an arbitrator's ruling that conduct is in violation of the no-strike clause in the applicable collective bargaining agreement, *Northern Stevedoring and Handling Corp. v. ILWU, Local 60*, 685 F.2d 344, 347 (9th Cir. 1982); *Alyeska Pipeline Serv. Co. v. IBT*, 557 F.2d 529, 532 (9th Cir. 1979), and (2) enforcement by injunction of a union's duty to honor its contractual commitment to arbitrate rather than strike, under *Boys Markets Inc. v. Retail Clerk's Union, Local 770*, 398 U.S. 235 (1970), and its progeny. *Camping Construction*, 915 F.2d at 1343.[1] The exceptions must be narrowly construed, *id.* at 1346, and, where the court has jurisdiction to issue an injunction at all, the court must "issue the narrowest possible injunction necessary," *Southern Ohio Coal Co. v. United Mine Workers of Am*, 551 F.2d 695, 709 (6th Cir. 1977); *see also Overstreet v. United Bhd of Carptenters*, 409 F.3d 1199 (9th Cir. 2005) (reaffirming the long-standing policy of restricting the courts' ability to issue injunctions in the context of a labor dispute).

---

[1] The other two exceptions, clearly not applicable here, permit a federal court "to compel a recalcitrant employer to honor its agreement to arbitrate" and "to enforce positive duties imposed by other federal labor statutes," such as the duty not to discriminate." *Camping Construction*, 915 F.2d at 1343.

8

## A. This Court Has Jurisdiction to Issue an Injunction <u>Only</u> to Enforce the Coast Arbitrator's Award <u>as Written</u>.

The Unions agree that the Court has jurisdiction to enforce by injunction the Coast Arbitrator's award, which is final and binding on the parties. *See Gen. Drivers, Warehouseman & Helpers, Local Union No. 89 v. Riss & Co., Inc.*, 372 U.S. 517-519-20 (1963); *Northern Stevedoring*, 685 F.2d 344, 347-49. The Unions have stipulated to such relief. However, apparently dissatisfied with what the Coast Arbitrator ordered and what they agreed to only days ago, the Employers have come to Court seeking more. The additional relief the Employers seek is not permitted under the NLA.

The exception to the NLA for injunctions to enforce arbitration awards exists to further the strong federal policy of supporting and enforcing parties' commitments to be bound by the private dispute settlement mechanisms agreed to in a collective bargaining agreement. *See, e.g., United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599 (1960). As the Supreme Court has explained, the parties have "'bargained for' the 'arbitrator's construction of their agreement." *Eastern Associated Coal Corp. v. United Mine Workers of America, Dist.*, 531 U.S. 57, 61 (2000) (quoting *Enterprise Wheel & Car Corp.*, 363 U.S. at 599); *accord Paperworkers v. Misco*, 484 U.S. 29, 37-38 (1987). Thus, "as long as [an honest] arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," the fact that "a court is convinced he committed serious error does not suffice to overturn his decision." *Enterprise Wheel & Car Corp.*, 363 U.S. at 599. A court is, therefore, powerless to grant any relief beyond that awarded by the arbitrator. *See id.*

It follows that in confirming and enforcing the Coast Arbitration award here, this Court is prohibited from awarding any relief that the Coast Arbitrator declined to award. It is a matter of long-standing labor law and policy that the courts are prohibited from usurping the functions properly entrusted to the arbitrator chosen by the parties to resolve their contractual disputes,

including determining what remedies are appropriate when a violation of a collective bargaining agreement is found. *United Steelworkers of American v. American Manufacturing Co.*, 363 U.S. 564, 569 (1960); *Enterprise Wheel & Car Corp.*, 363 U.S. at 596-97, 599 ("the question of interpretation of the collective bargaining agreement is a question for the arbitrator"); *Buffalo Forge Co. v. United Steelworkers of America*, 428 U.S. 397, 412 (1976) ("[i]t is incredible to believe that the courts would always view the facts and the contract as the arbitrator would; and it is difficult to believe that the arbitrator would not be heavily influenced or wholly preempted by judicial views of the facts and the meaning of the contracts if this procedure is to be permitted").

Here, the Employers seek an order from this Court that exceeds and is inconsistent with the Coast Arbitrator's ruling in multiple respects:

First, the Coast Arbitrator rejected PMA's claim that the Local 10 officers or its membership in general were somehow responsible for work slowdowns. The Employer's Proposed Order would require this Court to find otherwise.

Second, the Coast Arbitrator held that Local 10 officers have been using their "best efforts" to resolve the dispute. Once again, the Employer's Proposed Order would require the Court to disregard this finding and reach a different conclusion.

Third, the Coast Arbitrator rejected PMA's request for a broad cease and desist order against Local 10, its officers and members and only required that "*Local 10 officials . . . continue to instruct* the longshoremen . . . to cease and desist . . . and to implement arbitration decisions,*" which Local 10 officers continued to do. Sundet Dec. Ex. 4 at 2 (emphasis added); Declaration of Thomas Clark, Ex. A. The Employers' Proposed Order, by contrast, requires action not only by Local 10 officers, but also all Local 10 and ILWU stewards, employees and members and ILWU officers, among others. In addition, whereas the Coast Arbitrator's award

only requires the Local 10 officers "to instruct the longshoremen," the Proposed Order more broadly provides that the officers and others must refrain from "instigating, directing, encouraging, participating in *or permitting* any work slowdown or work stoppage...." (Emphasis added).

Fourth, the Coast Arbitration Award explicitly modified and superseded Area Arbitration Award NCAA-36-2007, and also necessarily modified and superseded Area Arbitration Award NCAA-34-2007. The Coast Arbitrator chose not to include Area Award NCAA-34-2007 in his decision, despite it having also been submitted to him for review at the same time. However, the Employers would have this Court use its equitable powers to compel compliance with NCAA-36-2007 and NCAA-34-2007, despite the Coast Arbitrator's ruling.

By seeking an injunction that is broader than and even inconsistent with the findings made and remedies ordered by the Coast Arbitrator, the Employers' Motion for a TRO flies in the face of long-standing precedent forbidding federal courts from sitting as the decision maker, in lieu of the parties' agreed-upon arbitrators and must be rejected.

**B.   No *Boys Markets* Injunction is Permissible Because the Reason for the Work Slowdown is Not Arbitrable by the Parties Before this Court.**

The only other arguably applicable exception of the NLA derives from *Boys Markets*, which permits a federal court to enjoin a strike (or work slowdown) in violation of a no-strike clause in a collective bargaining agreement only where (1) "a strike is sought to be enjoined because is over a grievance which both parties are contractually bound to arbitrate," (2) "work stoppages over an arbitrable issue are occurring and will continue, or have been threatened and will be committed," (3) the work stoppages "have caused or will cause irreparable injury to the employer,", and (4) the employer "will suffer more from the denial of the injunction than will the union from its issuance." *Boys Markets*, 398 U.S. at 254; *see also id* at 253 ("Our holding

is a narrow one. We do not undermine the vitality of the Norris LaGuardia Act."); *Buffalo Forge Co. v. Steelworkers*, 428 U.S. 397, 406 (1976). As the Supreme Court later explained,

> The driving force behind *Boys Markets* was to implement the strong congressional preference for private dispute settlement mechanisms agreed upon by the parties... Striking over an arbitrable dispute would interfere with and frustrate the arbitral process by which the parties had chosen to settle a dispute. The Quid pro quo for the employer's promise to arbitrate was the union's obligation not to strike over issues that were subject to the arbitration machinery.

*Buffalo Forge*, 428 U.S. at 407. However, when the dispute is not arbitrable, the rationale for *Boys Market* exception to the NLA disappears. Thus, as the Ninth Circuit has explained, "when a union is merely striking, rather than striking *over something it should be arbitrating*, the NLA applies with full force" and the court lacks jurisdiction to issue an injunction. *Camping Construction*, 915 F.2d t 1346 (emphasis in original); *accord Buffalo Forge*, 428 U.S. at 407.

Here, according to the Employers' own allegations, the Local 10 longshoremen are not "striking over something they should be arbitrating." Rather, the Employers contend that the underlying dispute concerns a reduction of pay for foremem, who work under a separate collective bargaining agreement, under which Local 10 and ILWU have no right to arbitrate disputes. Thus, the core dispute is not arbitrable by the parties before this Court; and the NLA bars this Court from issuing an injunction.

The facts presented in the instant case are strikingly similar to those in *Buffalo Forge*. In that case, one union local of the United Steelworkers of America called a sympathy strike in support of a separate United Steelworkers union local, which was already striking in connection with its contract negotiations with the employer of both locals. *Buffalo Forge*, 428 U.S. at 400. The employer sought to enjoin the sympathy strike, but the Supreme Court held that the NLA barred an injunction. *Id.* at 401, 407-09. As the Court explained, because the parties before it could not arbitrate the dispute, the purpose of the *Boys Markets* exception to the NLA

prohibition would not be served by issuing an injunction. *Id.* at 408-09. The fact that the CBA between the sympathy striking union and the employer contained a no-strike clause did not alter this result. The Court held that "aside from the enforcement of the arbitration provisions of [collective bargaining agreements] within the limits permitted by *Boys Markets*, the Court has never indicated that the courts may enjoin actual or threatened contract violations despite the NLA." *Id.* at 409. This Court must reach the same result here.

## II. The Norris-LaGuardia Act Requires this Court to Hold an Evidentiary Hearing Before Issuing an Injunction.

Even if this Court were to find, as a matter of law, that the Court had jurisdiction to issue an injunction here, the NLA would prohibit the Court from doing so without first conducting a full evidentiary hearing. *Northern Stevedoring*, 685 F.2d 344, 347-49 (reversing injunction where district court enforced arbitration award without conducting an evidentiary hearing); *see also Enterprise Wheel & Car Corp.*, 363 U.S. 593. Section 7 of the NLA states that the Court lacks jurisdiction to enter an injunction except upon a full evidentiary hearing establishing by convincing evidence that unlawful acts have been and will continue unless restrained and that substantial, irreparable injury for which there is no adequate remedy at law will result in the absence of an injunction.[2] For this reason also, the Employers' rush attempt to obtain immediate injunctive relief must be denied.

---

[2] Section 7 of the NLA provides that a court lacks jurisdiction to enter an injunction "except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and... after findings of fact by the court . . .
   (a)    That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained. . .
   (b)    That substantial and irreparable injury to complainant's property will follow;
   (c)    That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief; [and]
   (d)    That complainant has no adequate remedy at law. . . . 29 U.S.C. § 107 (emphasis added).

13

The cases cited by the Employers for the proposition that no hearing is required do not support this conclusion. In *PMA v. ILWU and ILWU Local 19*, 517 F.2d 1158 (9th Cir. 1975) and *PMA v. ILWU*, 304 F. Supp. 1315 (N.D. Cal. 1969), the district court conducted a full evidentiary hearing before issuing an injunction. 517 F.2d at 1161 n.1 (quoting trial court's factual findings based on clear and convincing evidence after taking testimony in court); 304 F. Supp. at 1319 (stating that findings supporting injunction are based on "oral and written evidence"). In *Alyeska Pipeline Servs. v. Int'l Bhd. of Teamsters*, 557 F.2d 1263, 1266-67 (9th Cir. 1977), the district court denied the injunction motion and the Ninth Circuit made no mention of the NLA hearing requirement. *PMA v. ILWU*, 454 F.2d 262 (9th Cir. 1971), likewise makes no mention of the requirement and certainly does not indicate that the district court issued an injunction without conducting a hearing. *PMA v. ILWU*, Case No. C 96-4106 FMS, 1997 WL 229811, 1997 U.S. Dist. LEXIS 6017 (N.D. Cal. May 1, 1997) addressed a motion for confirmation of an arbitration, *not* a motion for injunctive relief and expressly held that the NLA did not apply because no injunction was sought.

### III. The Injunctive Relief the Employers Request Would Improperly Circumvent The Requirement that The Parties Exhaust Contractual Remedies Before Seeking the Intervention of the Court.

In addition to violating both the substantive and procedural requirements of the NLA, the Employers' requested injunction would also permit them to unilaterally circumvent the agreed-upon grievance appeal procedure, in effect confirming interim arbitration awards that have been superseded by the award of Coast Arbitrator. The Employers' motion must be denied on this basis as well.

Judicial confirmation or review of a non-final labor arbitration award is generally impermissible under federal law. *General Drivers Local Union No. 89 v. Riss & Co.*, 372 U.S. 517, 519-20 (1963) (grievance award that is not "final and binding" may not be enforced under

14

Section 301); *Millmen Local 550 v. Wells Exterior Trim*, 828 F.2d 1373, 1375 (9th Cir. 1987). As the U.S. Supreme Court stated, the important policies underlying federal labor law "can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play." *American Manufacturing Co.*, 363 U.S. at 566. PMA's requested injunction puts not only the final Coast Arbitrator's decision, but two Area Arbitrator interim awards before this Court for enforcement. This requested relief is impermissible under federal law and must be denied.

### IV. No Injunction May Be Awarded Because There is No Convincing Evidence that the Unions Will Facilitate a Work Slowdown.

To obtain an injunction, the Employers also must establish by convincing evidence that another work slowdown likely will occur. Where the incident underlying the request for an injunction has concluded and there is not convincing evidence that such conduct will be repeated, the case is moot and no injunction can issue. *Alyeska Pipeline Service Co. v. IBT*, 535 F.2d 1144, 1145 (9th Cir. 1976); *Donovan Const. Co. v. CPMLU, Local 383*, 533 F.2d 481, 484 (9th Cir. 1976) ("the record before [this Court] provides no evidence other than a single work stoppage that future strikes [are] likely, that they would cause irreparable harm, that there was no adequate remedy at law, or that the employer would suffer more from the denial of the injunction than would the union from its issuance."); *Nava v. City of Dublin*, 121 F.3d 453, 459 (9th Cir. 1997)("a plaintiff is entitled to forward-looking relief only if there is a great and immediate threat that without that relief the plaintiff will suffer an injury. Past injury may entitle the victim to relief in the form of damages, but it is simply insufficient to obtain an injunction"); *SEC v. Med. Cmte. For Human Rights*, 404 U.S. 403, 406-07 (1972) (case dismissed as moot where it was "purely a matter of conjecture" whether unlawful conduct would be repeated in the future).

15

In *Alyeska*, the Ninth Circuit was presented with the union's appeal of a preliminary injunction restraining the union from "participating in any strikes, slowdowns, or other economic action" against the employer. *AlyeskaI*, 535 F.2d at 1145. Remanding for dismissal of the injunction, the Ninth Circuit held that, in the absence of convincing evidence that the "acts that culminated the incident in this case were . . . of a nature that suggests any union intent for repetition in the future," the subject of the injunction is moot and the court is without sufficient basis to uphold an injunction that would "extend to all the many and varied disputes, of an entirely different nature, that may arise between the parties in the future." *Id.*

Here, the Unions' case is even stronger. There is no evidence that a future work slowdown is planned or threatened. More importantly for purposes of the parties before this Court, there is no evidence that the Unions are likely to participate in, instigate or encourage a work slowdown; indeed, the evidence indicates that the Unions themselves did not engage in the slowdown and tried to resolve the dispute. Without any evidence that unlawful conduct by the Unions is occurring or will occur, the subject of the Employers' requested injunction has ceased and the request is moot. For this reason also, the motion must be denied.

## V. The Employers Cannot Show That They Will Suffer an Irreparable Injury Because They Have Refused to Take Steps to Prevent the Harm They Complain of Here.

Finally, in addition to meeting the stringent requirements for issuance of an injunction under the NLA, the Employers must show that an injunction is warranted under the generally applicable standards for granting injunctive relief. *See Boys Markets,* 398 U.S. at 254. This means that, among other things, the Employers must show that they will suffer irreparable injury if the injunction is denied. *Id; see also Save Our Sonoran, Inc. v. Flowers,* 408 F.3d 1113, 1120 (9th Cir. 2005). However, no such showing is possible on this set of facts.

As the Employers allege, the work slowdown was committed by certain steady employees of APMT. However, the Employers have refused to use the tools available to them to hold these individual employees accountable and to compel their compliance with workplace standards. As the ILWU advised PMA during the CLRC that preceded the arbitration hearing before the Coast Arbitrator: "APMT has an obligation to deal directly with its steady workforce under Section 17.81, PCLCD. APMT has recourse, but for whatever reason, chooses not to exercise it." Sundet Dec., Ex. 3 at 2. Rather than take advantage of their obvious remedies to correct the alleged misconduct of their own employees, the Employers have rushed to court to try to obtain an injunction against the Unions. No irreparable injury is possible where the plaintiffs themselves could prevent the injury they are allegedly suffering. The Employers' motion must be denied on this basis as well.

## CONCLUSION

For the foregoing reasons, the Employers are not entitled to the temporary restraining order they seek and their motion must be denied in its entirety.

DATED: September 10, 2007

Respectfully submitted,

LEONARD CARDER, LLP

By: _____
Eleanor Morton

Attorneys for Defendants ILWU and
ILWU Local 10