1  ROBERT S. REMAR (SBN 100124)
2  ELEANOR I. MORTON (SBN 220407)
   LEONARD CARDER, LLP
3  1188 Franklin Street, Suite 201
   San Francisco, California 94109
4  Telephone: 415-771-6400
   Facsimile: 415-771-7010
5

6

7  Attorneys for Defendants
   INTERNATIONAL LONGSHORE
8  AND WAREHOUSE UNION and
   INTERNATIONAL LONGSHORE
9  AND WAREHOUSE UNION, LOCAL 10

10

11                 UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13

14  PACIFIC MARITIME ASSOCIATION, a        Case No.   C 07–04618  CRB
    California corporation; APM TERMINALS
15  PACIFIC, LTD., a California corporation.
16                                         DECLARATION OF LEAL SUNDET
                Plaintiffs,
17
18        vs
19  INTERNATIONAL LONGSHORE AND
    WAREHOUSE UNION, an unincorporated
20  labor organization; INTERNATIONAL
    LONGSHORE AND WAREHOUSE
21  UNION, LOCAL 10, an unincorporated
    labor organization,
22
23               Defendants.
24
25
26
27
28

─────────────────────────────────────────
DECLARATION OF LEAL SUNDET

I, Leal Sundet, hereby declare as follows:

1.     I have personal knowledge of the facts set forth in this declaration and would testify competently as to those facts if called as a witness.

2.     Since September, 2006, I have served as an elected ILWU Coast Committeeman on a full time basis. In this capacity I am one of four elected members of the ILWU Coast Pro Rata Committee (also known as the "ILWU Coast Committee"). The ILWU Coast Committee, an intermediate division of the ILWU International, is in charge of administering and negotiating for the Union the terms of the Pacific Coast Longshore and Clerks Agreement (PCLCA), which is the collective bargaining agreement between the ILWU International, and its affiliated longshore division locals (including Defendant Local 10), and the Pacific Maritime Association (PMA) and its member companies. The PCLCA covers the terms and conditions of employment for approximately 25,000 registered and casual, longshore workers and marine clerks in the twenty-six (26) commercial ports of the West Coast of the United States. As a member of the ILWU Coast Committee, I represent the Union on the Joint Coast Labor Relations Committee (JCLRC), which is the highest joint labor relations committee that administers the PCLCA and adjudicates grievances and disputes thereunder.

3.     Under section 17 of the PCLCA, -- (I understand that PMA has submitted to the court a copy of the PCLCA.) -- labor disputes concerning the terms of the PCLCA are resolved through the following exclusive grievance/arbitration procedure. The dispute is first considered by the Joint Port Labor Relations Committee (JPLRC), comprised of representatives from the local ILWU affiliate and the local PMA and its member companies in each port. Absent joint agreement by the JPLRC, most matters are submitted to the Area Arbitrator, of which there are four along the West Coast. Under section 17.261, any decision of the JPLRC or of the Area Arbitrator is subject to appeal before the Joint Coast Labor Relations Committee (JCLRC), of which I am a member. In the event the JCLRC fails to reach agreement, the matter is then

submitted to the Coast Arbitrator, whose determination is final and binding under sections 17.55 and 17.57. (See also, section 17.261, stating that the Coast Arbitrator shall "finally and conclusively determine the dispute.")

4.    In accordance with these grievance/arbitration procedures, PMA in the instant matter first presented to the San Francisco JPLRC, and then to the Area Arbitrator, its claims that ILWU Local 10, its officers and members were guilty of work slowdowns at the APM Terminals in Oakland in violation of section 11.1 of the PCLCA. These PMA claims resulted in two Area Arbitration Awards, namely, NCAA-34-2007, dated August 20, 2007 (a true and correct copy of which is attached hereto as **Exhibit 1**) and NCAA-36-2007, dated August 23, 2007 (a true and correct copy of which is attached hereto as **Exhibit 2**).

5.    In the first Area Arbitration Award, NCAA-34-2007, the Area Arbitrator found that Local 10, its officers and members who work as steady crane operators at the APM Terminals facility in Oakland were guilty of conducting or allowing a slowdown of work at that facility. However, in the second Area Arbitration Award, NCAA-36-2007, the Area Arbitrator held that "the Local 10 officials are not engaged in a slowdown and have been using their best efforts to resolve the dispute." (See page 4 thereof).

6.    On September 4, 2007, the PMA Employers submitted both Area Awards, NCAA-34-2007 and NCAA-36-2007 to the JCLRC for confirmation and enforcement. In this regard, the JCLRC meeting minutes for that date, JCLRC No. 38-07 (a true and correct copy of which is attached hereto as **Exhibit 3**) reflect that the PMA Employers made the following three-part motion for relief:

        1.    That the ILWU Local 10, its Officers and members, fully implement Area Award Nos. NCAA-34-2007 and NCAA-36-2007.

        2.    That ILWU Local 10, its Officers and members, refrain from any and all forms of economic action in violation of the agreement, including work

stoppages, slowdowns, mass resignations, denial of qualified labor,

refusal to dispatch or accept dispatch or any other form of coercion or

concerted action, which violated the Agreement.

3.    That ILWU Local 10, its Officers and members, are guilty of failing to

abide by the Area Award Nos. NCAA-34-2007 and NCAA-36-2007.

The Union members (including me) of the JCLRC voted "No" on each of the three PMA

motions. In particular, the ILWU members of the JCLRC denied that Local 10, its officers or

collective membership were responsible for the alleged concerted activity, and noted that the

Area Arbitrator in the most recent Award No. NCAA-36-2007 held that "the Local 10 officials

are not engaged in a slowdown and have been using their best efforts to resolve the dispute."

7.    The ILWU members of the JCLRC further pointed out that "attempted

intervention by the Union with APMT's steady employees has proved fruitless" and that the

Employer "has an obligation to deal directly with its steady workforce under Section 17.81" of

PCLCA but chooses not to exercise this option for corrective action. (See page 2 of the CLRC

Minutes, Exhibit 3). This reference to Section 17.81 concerns the Employer's right and ability

to impose discipline on individual steady employees whom the Employer believed are guilty of

work slowdowns. The PMA Employers then and now have refused to exercise their option to

discipline employees, even though this would likely end the allegedly intentional slowdown.

8.    Pursuant to motion by the PMA Employers, the JCLRC disagreement was

submitted on that same day to the Coast Arbitrator for final and binding resolution. The ILWU

(represented by me) and the PMA presented, by oral argument telephonically, to the Coast

Arbitrator the same motions and arguments concerning the two Area Arbitration Awards as are

set forth in the JCLRC meeting minutes No. 38-07 (**Exhibit 3** hereto).

9.    On the afternoon of September 4, 2007, the Coast Arbitrator issued his written

award, No. C-6-07, which states as follows:

1.   The ILWU Local 10 longshoremen at the APM Terminals shall forthwith cease and desist from engaging in slowdowns at that location.

2.   The ILWU Local 10 officials shall <u>continue</u> to instruct the longshoremen at the APM Terminal to cease and desist from violating Section 11.1 and to implement arbitration decisions in accordance with Section 17.57.

3.   This decision, served by e-mail to the parties, is to the same effect as if signed by the Cast Arbitrator and thereafter hand delivered to the Parties.

A true and correct copy of Coast Arbitration Award No. C-6-07, dated September 4, 2007, is attached hereto as **Exhibit 4**. (Emphasis added).

10.   A comparison of the Employer's motion for relief in the JCLRC minutes (Exhibit 3 hereto) and the actual relief awarded in Coast Arbitration Award C-06-07 (Exhibit 4 hereto) shows that the Coast Arbitrator specifically rejected the PMA Employers' three-part motion for relief. In particular, the Coast Arbitrator rejected the PMA claim that the Local 10 officers or its membership in general were somehow responsible for work slowdowns, and rejected the PMA request for a broad cease and desist order against Local 10, its officers and members.

11.   The Coast Arbitration Award No. C-06-07 further holds that the Local 10 officers have indeed been using their "best efforts" to resolve the dispute, as so found in Area Arbitration Award No. NCAA-36-2007, and accordingly directs that "ILWU Local 10 officials shall <u>continue</u> to instruct the longshoremen at the APM Terminal to cease and desist from violating Section 11.1 and to implement arbitration decisions in accordance with Section 17.57." (Emphasis added).

12.   In addition to explicitly modifying and superseding Area Arbitration Award NCAA-36-2007 , the Coast Arbitration Award also necessarily modifies and supersedes Area

**DECLARATION OF LEAL SUNDET**

1  Arbitration Award NCAA-34-2007. In this regard, the Coast Arbitrator chose not to include

2  Area Award NCAA-34-2007 in his decision, despite it having also been submitted to him for

3  review at the same time

4

5  13.    Since the Coast Arbitration Award, C-6-07, dated September 4, 2007,

6  constitutes a final and binding resolution of the matters in Area Arbitration Award NCAA-34-

7  2007, Area Arbitration Award NCAA-36-2007, and JCLRC Minutes 38-07, the ILWU has no

8  objection to court confirmation of this but only this Coast Award.

9

10  14.    I understand from review of the PMA pleadings in this matter that PMA alleges

11  that the source of the underlying dispute in this matter concerns a disagreement between APM

12  Terminals and its "walking bosses" or foremen concerning their proper pay and hours. Such a

13  dispute about foremen pay and hours is covered exclusively by the terms of a collective

14  bargaining agreement, called the "Pacific Coast Walking Bosses and Foremen's Agreement of

15  2002- 2008" (PCWBFA), a true and correct copy of which is attached hereto as **Exhibit 5**.)

16

17  15.    Neither Defendant ILWU International nor Defendant ILWU Local 10 is a party

18  to the PCWBFA. Defendants ILWU and Local 10 do not serve as the collective bargaining

19  representative of any walking bosses or foremen, including those employed at APM Terminals

20  in Oakland. Nor is either Defendant able to file or process any claims or grievances concerning

21  the pay or hours of walking bosses and foremen, including those at APM Terminals, under the

22  PCWBFA.

23  16.    In addition, neither Defendant ILWU International nor Defendant ILWU Local

24  10 is able to file or process any claims or grievances concerning the pay or hours of walking

25  bosses and foremen, including those at APM Terminals in Oakland, under the PCLCA. This is

26  because the PCLCA does not cover terms of employment for walking bosses and foremen, and

27  also defendants ILWU and Local 10 do not represent any walking bosses or foremen under the

28  PCLCA nor any other collective bargaining agreement.

1    17.  Thus, the underlying dispute as asserted by PMA in this matter is not arbitrable by

2    defendants ILWU and Local 10 in any manner or circumstance.

3

4    I declare under penalty of perjury of the laws of the United States and the state of

5    California that the foregoing is true and correct to the best of my personal knowledge and/or

6    belief.

7

8

9    ///

10   ///

11   Dated:  9/7/07

12                                                Leal Sundet

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PAGE 6
**DECLARATION OF LEAL SUNDET**

# EXHIBIT 1

| | | |
|---|---|---|
| IN THE MATTER OF CONTROVERSY | ) | NCAA-034-2007 |
| | ) | |
| BETWEEN | ) | INTERIM DECISION |
| | ) | of |
| INTERNATIONAL LONGSHORE | ) | |
| AND WAREHOUSE UNION, LOCAL 10 | ) | Terry N. Lane |
| | ) | |
| AND | ) | Northern California Area Arbitrator |
| | ) | |
| PACIFIC MARITIME ASSOCIATION | ) | Under the Authority of the |
| | ) | Pacific Coast Longshore Contract Document |
| Re: Employer Claim of a Slowdown by | ) | 2002 – 2008 |
| Longshore Workers in Violation of Section 11.1, | ) | |
| Maersk Dublin, APM Terminals, Berth 24, | ) | Oakland, California |
| Oakland | ) | |
| | ) | |

The hearing was held at 5:10 p.m. on Saturday, August 18, 2007, in the dock office at APM Terminal, Berth 24 Oakland. The parties were afforded an opportunity to present evidence and argument. There was no transcript made of the hearing.

APPEARANCES:

FOR THE EMPLOYERS:           Dan Kaney
                             Pacific Maritime Association

                             Kurt Sulzbach
                             Quentin Yang
                             Mark Simpson
                             APM Terminals

FOR THE UNION:               Melvin MacKay
                             Lonnie Francis
                             ILWU Local 10

ISSUE:

Whether ILWU Local 10, its officials and members, were engaged in a slowdown tantamount to a work stoppage on the first shift, August 18, 2007, on the vessel Maersk Dublin.

BACKGROUND:

Work stoppages by marine clerks have been determined by the Area Arbitrator at this facility on the second shift of August 14, 2007 and the first shift on August 15, 2007. A hearing under Section 17.61 was held for the first shift of August 16, 2007 about longshore work on the vessel Maersk Boston. This Arbitrator denied the Employers' motion that there was a slowdown tantamount to a work stoppage by ILWU Local 10 longshore workers based on the testimony and evidence at the hearing. The walking bosses are steady employees at the terminal. The crane operators are steady 9.43 employees at the terminal.

NCAA-034-2007                                                                      Page 2
August 18, 2007

## EMPLOYERS POSITION:

The Employers submitted a Production Log of container moves for the two cranes working the Maersk Dublin on August 18, 2007. From 0800 to 1200 hours, the adjusted gross count for the Maersk Dublin was down 43% compared to a five-week average for similar vessel service. Based on the move count from 1300 to 1500 hours, the shift was projected to be reduced 30% compared to the same five-week average. Employers' witnesses testified about these statistics and were subject to cross-examination. Employers' witness Quentin Yang testified that his observation of the operation was that the crane operators were not performing in the normal, efficient manner and there were delays because tractor drivers were not under the hook.

At 1300 hours, the employer directed the walking bosses to instruct the crane operators and tractor drivers to return to the usual, normal, safe, efficient operation.

The Employers made the following motions:

1.    ILWU Local 10 officials and members are in violation of Section 11.1 by engaging in a slowdown tantamount to a work stoppage.

2.    ILWU Local 10, its officials and members, shall cease the slowdown and the Union shall advise its members to work as directed in accordance with Section 11.31.

3.    ILWU Local 10 shall submit any underlying dispute to the formal grievance machinery.

## UNION POSITION:

The Union maintains that there is not a slowdown. The pace of the operation is documented in detailed notes from each of the walking bosses. The notes were submitted as evidence. Testimony from walking boss Fred Gilliam was provided by conference telephone in support of the notes he prepared. It was testified that difficulties for the crane operators included having to hoist up and over four-high containers, bad pins, and loading twenty-foot containers in forty-foot cells. The Union argued that the numerical log provided by the Employers does not accurately tell the story of what is happening in the actual work being performed on the ship. The Union also argued that the Production Log adjusted gross numbers were improved when the Maersk Dublin is compared to Maersk Boston on August 16, 2007. The Arbitrator ruled there was not a slowdown on the Maersk Boston.

## DISCUSSION:

The Production Log exhibit shows that the reduction in container moves is significant when compared to longshore operations of similar vessel service for the previous five weeks. The walking boss notes list the difficulties that were encountered during the first shift on the Maersk Dublin. The testimony of the Employers' witnesses and the walking boss was that there was not any unusual cause for delay or extenuating circumstances on this shift. The difficulties listed are usual and normal for the comparable vessel operations in previous weeks.

The operation improved during the afternoon after the arrival of Local 10 officials for the LRC meeting requested by the Employers. The ship normally would have finished by 1700 hours. It worked beyond 1800 hour to finish.

It is my opinion that there was a slowdown during the first shift of August 18, 2007 on the Maersk Dublin. The result was that the ship departure was delayed and the payment of extended hours to finish

NCAA-034-2007                                                        Page 3
August 18, 2007

the ship was required. This result created economic pressure on the employer. The slowdown was
tantamount to a work stoppage in violation of Section 11.1.

DECISION:

The Employers' motions are granted:

1.  ILWU Local 10 officials and members are in violation of Section 11.1 by engaging in a slowdown
    tantamount to a work stoppage.

2.  ILWU Local 10, its officials and members, shall cease the slowdown and the Union shall advise its
    members to work as directed in accordance with Section 11.31.

3.  ILWU Local 10 shall submit any underlying dispute to the formal grievance machinery.

_Terry N Lane_

_____
Terry N. Lane
Northern California Area Arbitrator

Dated:  August 20, 2007

# EXHIBIT 2

| | | |
|---|---|---|
| IN THE MATTER OF CONTROVERSY | ) | NCAA-036-2007 |
| | ) | |
| BETWEEN | ) | INTERIM DECISION |
| | ) | of |
| INTERNATIONAL LONGSHORE | ) | |
| AND WAREHOUSE UNION, LOCAL 10 | ) | Terry N. Lane |
| | ) | |
| AND | ) | Northern California Area Arbitrator |
| | ) | |
| PACIFIC MARITIME ASSOCIATION | ) | Under the Authority of the |
| | ) | Pacific Coast Longshore Contract Document |
| Re:  Employer Claim of a Slowdown by | ) | 2002 – 2008 |
| Longshore Workers in Violation of Section 11.1, | ) | |
| Sealand Enterprise, APM Terminals, Berth 24, | ) | Oakland, California |
| Oakland | ) | |
| | ) | |

The hearing was held at 3:15 p.m. on Wednesday, August 22, 2007.  The partiers met on the dock adjacent to the ship and observed the operation and then moved to the dock office at the APM Terminals, Berth 24, Oakland.  The parties were afforded an opportunity to present evidence and argument.  There was no transcript made of the hearing.

## APPEARANCES:

FOR THE EMPLOYERS:

    Dan Kaney
    Kevin Nore
    Pacific Maritime Association

    Kurt Sulzbach
    Quentin Yang
    APM Terminals

FOR THE UNION:

    Thomas Clark
    Frank Gaskin
    James Blackwell
    ILWU Local 10

WITNESSES:

    Mark Simpson, General Manager, APM
    Nick Harnal, Operations Manager, APM
    Warren MacQuarrie, Safety and Security Manager, APM
    Samuel Turnbull, #9297, Crane Operator
    Padrig Fahey, #9283, Crane Operator
    Tom Villeggiante, #8812, Walking Boss

## ISSUE:

Whether ILWU Local 10, its officials and members, were engaged in a slowdown tantamount to a work stoppage on the first shift, August 22, 2007 on the vessel Sealand Enterprise.

BACKGROUND:

Work stoppages by marine clerks have been determined by the Area Arbitrator at this facility on the second shift of August 14, 2007 and the first shift on August 15, 2007. A hearing was held on the first shift of August 16, 2007 about longshore work on the vessel Maersk Boston. This Arbitrator denied the Employers' motion that there was a slowdown tantamount to a work stoppage by ILWU Local 10 longshore workers based on the testimony and evidence at the hearing. A hearing was held on August 18, 2007 about longshore work on the vessel Maersk Dublin. This Arbitrator granted the Employers' motions that there was a slowdown tantamount to a work stoppage by ILWU Local 10, its officials and members.

The walking bosses are steady employees at the terminal. The crane operators are steady 9.43 employees at the terminal.

EMPLOYERS POSITION:

The Production Log of adjusted gross hourly counts from 0800 to 1200 hours showed that container moves are reduced 27.3% when compared to a five-week average for the same vessel service. During the hearing, this exhibit was updated to 1700 hours and showed the container moves continue to be reduced by 23.9%. The term adjusted gross moves means that down time of the cranes or other significant delays have been factored in to the average production numbers.

The Employers also submitted a five-week recap of the same vessel service, identified as PEX Service, showing the total moves per crane on the two ships in this service. The Sealand Enterprise and the Sealand Pacific are the two ships and they are identical as far as stowage and vessel design. One of these ships is worked every Wednesday at the APM terminal. The moves per gang and the ship completion time for the past five weeks was compared to the vessel moves and anticipated completion time for the Sealand Enterprise on this date. This exhibit is evidence of significantly reduced productivity for the same ships when compared to the prior five weeks.

Employers' witnesses Mark Simpson and Nick Harnal testified that their observations of the Sealand Enterprise this date included a slowing of the operation by crane operators and tractor drivers not being under the cranes. Specifically, the crane operators were waiting for the chassis to be pulled out from under the container before hoisting to the ship; slowing the descent of the bridle 10 feet to 15 feet excessively high before landing on a container; the path of the crane load was a square arc rather than a curved arc; and crane gantry and trolley movement was much slower than usual.

The Employers made the following motions:

1.   ILWU Local 10, its officials and members, are in violation of Section 11.1 by engaging in a slowdown tantamount to a work stoppage.

2.   ILWU Local 10 is in violation of Arbitration Decision NCAA-034-2007 and has failed to implement the award in accordance with Section 17.57.

3.   The local grievance machinery is stalled and failing to work and the matter in dispute shall be referred to the next step of the grievance machinery in accordance with Section 17.282.

UNION POSITION:

The Union submitted detailed notes from the walking boss on the dock and a walking boss assigned to the forward crane. The Union maintains that these notes include numerous examples of delays such as bad pins, crane lost power, no tractors under crane, and no crane landing light.

Two steady crane operators testified about PCMSC Rules that require floating the load and a general emphasis on safety by APM Terminals management. It was also testified that the Wednesday ships require cranes to boom up, bumps, to wait for boxes, and the handling of single 20-foot containers.

The walking boss on the dock testified that the operation this date was different because there were three cranes working which adds to congestion. He also testified that there were crane operators waiting for tractors to arrive with chassis and there were stuck pins on chassis. The walking boss also testified that he feels harassed by APM management when he is ordered to instruct longshoremen to work in the usual, normal, efficient production. He feels this is a speedup of the operation.

The steady crane operator witnesses provided a signed question form prepared by Local 10. This form asked questions which included (and are paraphrased herein): did the crane operator create a slowdown on this date?; did the officers of Local 10 make a concerted and deliberate effort to have you slow down today?; and were you coerced by an officer of Local 10 to create a slowdown on this date? The crane operator witnesses answered no to these questions. The Union argued that the officials and membership of the Local have not been involved in a slowdown. The Union maintains that its officials are cooperating fully with the APM management and are participating in the grievance machinery to address the Employers' complaints. There is no slowdown by ILWU Local 10, the Union has implemented-NCAA-034-2007, and there is no concerted action by ILWU Local 10.

DISCUSSION:

The Production Log and PEX Service recap for the August 22, 2007 operation on the Sealand Enterprise show a significant reduction in container moves when compared to the five-week average figures. The employer witnesses' testimony about their observations of slow cranes and no tractors under the hook are consistent with the reduction in container moves.

The Union exhibits of the walking boss logs do not show significant extenuating circumstances that would justify the 23.9% reduction in container moves. The separate difficulties listed are identified by the employer witnesses as the usual and normal difficulties on the comparable operations in the prior five-week average of the Production Log. It was testified that a three-crane operation adds to congestion. It was the testimony of both the employer and crane operator witnesses that one of the problems this date was that there were no tractors and chassis under the cranes. There was no observation by the parties or other evidence that congestion was a problem on this date.

There was extensive testimony about the PCMSC Rules 821, 822, and 823. These rules require the floating of a container by the crane operator before it is landed or hoisted. The Arbitrator observed this procedure while viewing the operation under the cranes. There was no evidence to support a claim that the proper use of these rules caused a slowdown in the operation on this date.

Based on all of the evidence and testimony, it is my opinion that a slowdown tantamount to a work stoppage in violation of Section 11.1 did occur on August 22, 2007 on the Sealand Enterprise. The slowdown was caused by the ILWU Local 10 employees working on the terminal. The ship sailing was delayed and required the payment of extended hours to finish. These factors put economic pressure on the employer.

It is also my opinion that the Local 10 officials are not engaged in a slowdown and have been using their best efforts to resolve the dispute. The Local 10 officials are responsible for securing observance of the Agreement, for advising Local 10 members to cease and desist the slowdown, and to implement arbitration decisions in accordance with Section 17.57.

The Employers requested a ruling in accordance with Section 17.282 that the local grievance machinery has failed to work. This Arbitrator has issued decisions finding ILWU Locals at the APM Terminals guilty of Section 11.1 violations on August 14, 2007, August 15, 2007, August 18, 2007, and this ruling on August 22, 2007. Additionally, the Joint Port Labor Relations Committee has met to resolve Section 11.1 claims during this time period that were not referred to a Section 17.61 hearing.

Section 11.1 is a "No work stoppages" commitment between the ILWU and the PMA that is an essential provision of the Pacific Coast Longshore and Clerks Agreement. It is my opinion that the good-faith efforts to resolve this dispute have failed in the local grievance machinery. The Employers' motion under Section 17.282 is granted.

## DECISION:

1.    The ILWU Local 10 longshoremen at the APM Terminals did engage in a slowdown tantamount to a work stoppage in violation of Section 11.1 on August 22, 2007 on the Sealand Enterprise.

2.    ILWU Local 10 has not implemented Decision NCAA-034-2007. ILWU Local 10 officials shall instruct the longshoremen at the APM Terminals to cease and desist from violating Section 11.1 and to implement Arbitration Decisions in accordance with Section 17.57.

3.    The local grievance machinery has failed to work and the matter in dispute is referred to the next step of the grievance machinery in accordance with Section 17.282.


*Terry N Lane*

_____
Terry N. Lane
Northern California Area Arbitrator


Dated:  August 23, 2007

# EXHIBIT 3

**MINUTES OF THE MEETING OF THE**
**COAST LABOR RELATIONS COMMITTEE**

**Meeting No. 38-07**

Time:        1:00 p.m., Tuesday, September 4, 2007

Places:      Telephone Conference Meeting

Present:     For the Union                    For the Employers
             L. Sundet                        T. Edwards
             R. Ortiz, Jr.

1.    **Employer Motions re Area Arbitrator's Award Nos. NCAA-34-2007 and NCAA-36-2007 – Non-Implementation of Awards by ILWU Local 10**

The parties met to discuss the Employer motions regarding the recent Northern California Area Arbitration Awards, concerning ongoing slowdowns at the APMT Terminals facility. The Employer motions are as follows:

1.   That ILWU Local 10, its Officers and members, fully implement Area Award Nos. NCAA-34-2007 and NCAA-36-2007.

2.   That ILWU Local 10, its Officers and members, refrain from any and all forms of economic action in violation of the agreement, including work stoppages, slowdowns, mass resignations, denial of qualified labor, refusal to dispatch or accept dispatch or any other form of coercion or concerted action, which violates the Agreement.

3.   That ILWU Local 10, its Officers and members, are guilty of failing to abide by the Area Award Nos. NCAA-34-2007 and NCAA-36-2007.

The Committee noted that in JPLRC Meeting No. NCSF-102-2007, held September 1, 2007 to address the continuing slowdowns at APMT, the local parties agreed, recognizing Arbitrator Lane's position in NCAA-36-2007, the grievance machinery had stalled and agreed to refer the matter to the CLRC.

The Union voted "No" on each of the Employer motions. The second motion, in and of itself, was overly broad and not material to the subject dispute.

The Union maintained the action, as described in the Local Arbitration awards, at APMT Terminals, was not a consequence of any concerted activity by Local 10, its officers, or its collective membership. Arbitrator Lane described the action as being orchestrated wholly by steady employees of APMT. Arbitrator Lane confirmed in his award NCAA-36-07, "that

Local 10 officials are not engaged in a slowdown and have been using their best efforts to resolve the dispute."

The Union further maintained that attempted intervention by the Union with APMT's steady employees has proved fruitless. Implementation of the award is not the sole obligation of the Union. In this case, the company APMT, has an obligation to deal directly with its steady workforce under Section 17.81, PCLCD. APMT has recourse, but for whatever reason, chooses not to exercise it. The Union, its officers and collective members are not culpable here. The Union has no direct control over APMT's steady workforce.

Disagreement Reached. The Employers stated they would refer the issue to the Coast Arbitrator for resolution.

Signed: _9/5/07_                              Signed: _9/5/07_

For the Union:                                For the Employers:

_Thomas Edwards_

# EXHIBIT 4



IN ARBITRATION PROCEEDINGS PURSUANT TO THE
PACIFIC COAST LONGSHORE CONTRACT DOCUMENT

INTERNATIONAL LONGSHORE AND
WAREHOUSE UNION,                          ]          OPINION and DECISION
                                         ]
                    Union, ]                              of
            and                          ]
                                         ]          JOHN KAGEL
                                         ]          Coast Arbitrator
PACIFIC MARITIME ASSOCIATION,            ]
                                         ]
                    Employers.  ]               September 4, 2007
                                         ]
                                         ]          Palo Alto, California
Re: Slowdown at APM Terminals Oakland    ]
and breakdown of grievance machinery   ]

APPEARANCES (by telephone):

    For the Union: Leal A. Sundet, Coast Labor Relations Committee Member, San

Francisco, CA

    For the Employer: Richard Marzano, Director, Contract Administration and

Arbitration, San Francisco, CA

DISCUSSION:

    In NCAA-036-2007 Area Arbitrator Lane decided:

> "1. The ILWU Local 10 longshoremen at the APM
> Terminals did engage in a slowdown tantamount to a work
> stoppage in violation of Section 11.1 on August 22, 2007 on the
> Sealand Enterprise.
> 2. ILWU Local 10 has not implemented Decision NCAA-
> 034-2007. ILWU Local 10 officials shall instruct     the
> longshoremen at the APM Terminal to case and desist from

1

> violating Section 11.1 and to implement Arbitration Decisions in accordance with Section 17.57.
>
> 3. The local grievance machinery has failed to work and the matter in dispute is referred to the next step of the grievance machinery in accordance with Section 17.282."

The matter was referred to the JPLRC and the CLRC where disagreement was reached. Pursuant to the Employers' motion the matter was then referred to the Coast Arbitrator in accordance with the PCLCD. After a telephonic hearing the following decision is made:

DECISION:

1. The ILWU Local 10 longshoremen at the APM Terminals shall forthwith cease and desist from engaging in slowdowns at that location.

2. ILWU Local 10 officials shall continue to instruct the longshoremen at the APM Terminal to case and desist from violating Section 11.1 and to implement arbitration decisions in accordance with Section 17.57.

3. This decision, served by e-mail to the Parties, is to the same effect as if signed by the Coast Arbitrator and thereafter hand delivered to the Parties.

s/ John Kagel

Coast Arbitrator

2