1  BRENDAN DOLAN, State Bar No. 126732
   MORGAN, LEWIS & BOCKIUS LLP
2  One Market Street
   San Francisco, CA 94105
3  Tel: 415.442.1000
   Fax: 415.442.1001
4
   CLIFFORD D. SETHNESS, State Bar No. 212975
5  JASON M. STEELE, State Bar No. 223189
   MORGAN, LEWIS & BOCKIUS LLP
6  300 South Grand Avenue
   Twenty-Second Floor
7  Los Angeles, CA 90071-3132
   Telephone:    213.612.2500
8  Fax:          213.612.2501

9  *Attorneys for Plaintiffs*
   PACIFIC MARITIME ASSOCIATION and
10 APM TERMINALS PACIFIC, LTD.

11                     UNITED STATES DISTRICT COURT

12                    NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC MARITIME ASSOCIATION, a California corporation; APM TERMINALS PACIFIC, LTD., a California corporation,<br><br>              Plaintiffs,<br><br>        vs.<br><br>INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, an unincorporated labor organization; INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCAL 10, an unincorporated labor organization,<br><br>              Defendants. | Case No. C-07-04618 CRB<br><br>**FIRST AMENDED COMPLAINT FOR CONFIRMATION OF ARBITRATION AWARDS, BREACH OF CONTRACT, TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTION** |

Plaintiffs PACIFIC MARITIME ASSOCIATION and APM TERMINALS PACIFIC, LTD., for their Complaint against defendants herein, allege as follows:

**JURISDICTION**

1.  This is an action to enjoin breach of a collective bargaining agreement and enforce a final and binding arbitration award issued pursuant to a collectively-bargained grievance and arbitration machinery. This action arises under Section 301 of the Labor Management Relations

1   Act of 1947, as amended (29 U.S.C. § 185).  Jurisdiction is conferred upon this Court by the
2   provisions of that section.

3       2.    Plaintiff PACIFIC MARITIME ASSOCIATION (hereinafter "PMA") is, and at all
4   times mentioned herein was, a non-profit corporation organized and existing under and by virtue
5   of the laws of the State of California.  PMA maintains its principal office at 555 Market Street,
6   San Francisco, California.

7       3.    PMA is a multiemployer collective bargaining association whose members include
8   stevedoring, terminal, and shipping companies that employ dockworkers, such as longshore
9   workers, in the San Francisco Bay Area and throughout the United States Pacific Coast.  PMA
10  represents these employers in their collective bargaining relations with the employee labor
11  organizations representing dockworkers in the negotiation of collective bargaining agreements
12  and the administration and enforcement of the provisions thereof.  PMA and its members are, and
13  at all times mentioned herein were, employers in an industry affecting commerce, as defined in
14  Section 501 of the Labor Management Relations Act of 1947 (29 U.S.C. § 142) and Section 2 of
15  the National Labor Relations Act (29 U.S.C. § 152) and within the meaning of Section 301 of the
16  Labor Management Relations Act (29 U.S.C. § 185).

17      4.    Plaintiff APM TERMINALS PACIFIC, LTD. ("APMT") is an operator of
18  container terminals in several locations including a terminal in the Port of Oakland.  APMT is a
19  member of the PMA and is represented by PMA for collective bargaining purposes.

20      5.    Defendant INTERNATIONAL LONGSHORE AND WAREHOUSE UNION
21  (hereinafter "ILWU") is an unincorporated association commonly known as a labor union and
22  maintains its principal offices in San Francisco, California. ILWU is, and at all times mentioned
23  herein was, the duly certified collective bargaining representative for dockworkers employed by
24  members of PMA on the Pacific Coast. ILWU, on behalf of itself and each of its longshore locals
25  in California, Oregon and Washington, including defendant INTERNATIONAL LONGSHORE
26  AND WAREHOUSE UNION, LOCAL NO. 10 (hereinafter "Local 10"), negotiates and enters
27  into the collective bargaining agreements described below with PMA, covering terms and
28  conditions of employment of dockworkers employed by PMA members on the Pacific Coast.

1  ILWU is, and at all times mentioned herein was, a labor organization representing employees in
2  an industry affecting commerce, as defined in Section 501 of the Labor Management Relations
3  Act (29 U.S.C. § 142) and Section 2 of the National Labor Relations Act (29 U.S.C. § 152) and
4  within the meaning of Section 301 of the Labor Management Relations Act (29 U.S.C. § 185).

5       6.    Defendant Local 10 is an unincorporated association commonly known and
6  referred to as a labor union and maintains its principal offices in San Francisco, California.
7  Defendant Local 10 is a local of ILWU and is, and at all times mentioned herein has been, a
8  representative of longshore workers employed by members of PMA in the San Francisco Bay
9  Area Ports of San Francisco and Oakland. As such, Local 10 is, and at all times mentioned herein
10 was, a labor organization representing employees in an industry affecting commerce, as defined
11 in Section 501 of the Labor Management Relations Act (29 U.S.C. § 142) and Section 2 of the
12 National Labor Relations Act (29 U.S.C. § 152) and within the meaning of Section 301 of the
13 Labor Management Relations Act (29 U.S.C § 185).

14 **FACTUAL BACKGROUND**

15      7.    ILWU and defendant Local 10, acting by and through their respective officers,
16 designated members, and agents, are the sole and exclusive collective bargaining agents for the
17 longshore workers employed by members of PMA in the San Francisco Bay Area, and have held
18 themselves out as possessing, and they do possess, the requisite legal authority to become and
19 remain parties to a binding contract with PMA for and on behalf of these longshore workers,
20 including the longshore workers whose conduct gives rise to the instant action.

21      8.    ILWU, on behalf of its longshore locals in California, Oregon and Washington,
22 including defendant Local 10, and all employees performing work thereunder, and PMA on
23 behalf of its members, entered into the PACIFIC COAST LONGSHORE CONTRACT
24 DOCUMENT 2002-2008, effective as of July 1, 2002 (hereinafter the "PCLCD"). The PCLCD
25 covers longshore workers employed by PMA members in the San Francisco Bay Area.  The
26 PCLCD is, and at all times mentioned herein was, in full force and effect. Defendant Local 10 has
27 copies of the PCLCD.

28      9.    Section 11 of the PCLCD, entitled "NO STRIKES, LOCKOUTS AND WORK

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

FIRST AMENDED COMPLAINT – C 07 04618

STOPPAGES," provides in part as follows:

> "11.1 There shall be no strike, lockout or work stoppage for the life of this Agreement."

> "11.2 The Union or the Employers, as the case may be, shall be required to secure observance of this Agreement."

> "11.43 Application of Contract Grievance Machinery."

> "11.431 The grievance machinery, pending investigation and adjudication of on the job disputes, requires that work shall be performed in accordance with specific provisions of the Agreement, or if the matter is not covered by the Agreement, work shall be continued as directed by the employer."

Exceptions to Section 11.431 (not relevant here) arise only where longshoremen in good faith believe that to continue to work pending resolution of the dispute (1) immediately endangers health and safety or (2) imposes an onerous workload.

10.     Section 17 of the PCLCD, entitled "JOINT LABOR RELATIONS COMMITTEES, ADMINISTRATION OF AGREEMENT AND GRIEVANCE PROCEDURES," provides a mandatory procedure for the presentation, adjustment and settlement of grievances, with binding arbitration as the final step, and states in part as follows:

> "17.15. The grievance procedure of this Agreement shall be the exclusive remedy with respect to any disputes arising between the Union or any person working under this Agreement or both, on the one hand, and the Association or any employer acting under this Agreement or both, on the other hand, and no other remedies shall be utilized by any person with respect to any dispute involving this Agreement until the grievance procedure has been exhausted."

> "17.16. Pending investigation and adjudication of such disputes work shall continue and be performed as provided in Section 11."

> "17.24. In the event that the Employer and Union members of any Joint Port Labor Relations Committee shall fail to agree upon any question before it, such question shall immediately be referred at the request of either party to the Area Arbitrator for hearing and decision, and the decision of the Area Arbitrator shall be final and conclusive except as otherwise provided in Section 17.26 [relating to appeals].

> "17.57. All decisions of Arbitrators shall be observed and/or implemented. No decision of an Area Arbitrator, interim or final, can be appealed unless it is observed and/or implemented."

11.     Defendant Local 10, and its officers and members, and all persons working under the PCLCD, are under a duty to abide by the above-mentioned no strike and grievance and arbitration provisions of the PCLCD.

## COUNT ONE

### (Plaintiffs PMA and APMT against All Defendants)

12. For many years, the employers at the Oakland Port have agreed to pay certain foremen a generous pay guarantee, pursuant to the maximum allowable under the PCWBFA. Under that agreement, those foremen have received pay for a certain minimum number of hours regardless of how many hours the foreman actually worked during the payroll period. This has given those foremen the benefit of pay for up to 84 hours per week without the obligation to work anywhere near 84 hours. Several foreman received an 84 hour work pay guarantee yet worked only 48 – 70 hours of work.

13. On August 9, 2007, APMT informed its steady foremen that, going forward, pay guarantee calculations would be based on pay for hours worked and an individual's availability to work when APMT so requested. For example, a foreman who normally worked on a vessel would be required to cover yard/gate operations when the regular yard foremen took a day off, and if the vessel foremen refused to cover the yard shift, those hours would be deducted from the weekly pay guarantee. Prior to this change, APMT would allow the vessel foreman to go home, with no loss in pay, and an extra foreman from the dispatch hall would be ordered to cover the yard foreman's shift.

14. That same day, PMA referred this issue to the Northern California Area Arbitrator, Terry Lane. The Arbitrator took testimony and evidence from both sides, including APMT's production reports that showed a 43% decrease in productivity on the first shift of August 18, 2007, as compared to a five-week average for similar vessel service. On August 20, 2007, Arbitrator Lane issued a written decision (NCAA-034-2007), ruling that "ILWU Local 10 officials and members are in violation of Section 11.1 by engaging in a slowdown tantamount to a work stoppage" and that "Local 10, its officials and members, shall cease the slowdown and the Union shall advise its members to work as directed in accordance with Section 11.31."

15. On August 22, 2007, PMA sought another ruling from Arbitrator Lane that Local 10 was continuing its work slowdown in violation of Section 11.1. At the arbitration hearing, APMT presented evidence that productivity during the first shift on the vessel *Sealand Enterprise*

on August 22, 2007 was down 23.9% as compared to a five-week average for similar vessel service. On August 23, 2007, Arbitrator Lane issued another written decision (NCAA-036-2007), ruling that "ILWU Local 10 longshoremen at the APM Terminals did engage in a slowdown tantamount to a work stoppage in violation of Section 11.1 on August 22, 2007 on the Sealand Enterprise." The Arbitrator's ruling further stated that "ILWU Local 10 has not implemented Decision NCAA-034-2007. ILWU Local 10 officials shall instruct the longshoremen at the APM Terminals to cease and desist from violating Section 11.1 and to implement Arbitration Decisions in accordance with Section 17.57." The ruling concluded that, because the local grievance machinery had failed to end the work slowdown, the matter was referred to the Coast Labor Relations Committee ("CLRC"), the next step in the contractual grievance-arbitration process.

16. On September 1, 2007, the CLRC reached disagreement on NCAA-036-2007 and the matter was automatically referred to Coast Arbitrator John Kagel, the final step in the grievance-arbitration process. The Coast Arbitrator conducted a telephonic hearing on September 4, 2007, in which representatives from PMA, APMT, and the ILWU participated. The Coast Arbitrator issued a written decision the same day confirming NCAA-036-2007 and stating that "ILWU Local 10 longshoremen at the APM Terminals shall forthwith cease and desist from engaging in slowdowns at that location" and "ILWU Local 10 officials shall continue to instruct the longshoremen at the APM Terminal to cease and desist from violating Section 11.1 and to implement arbitration decisions in accordance with Section 17.57." True and correct copies of Coast Award C-06-2007 and Area Arbitration Awards NCAA-034-2007 and NCAA-036-2007 are attached as Exhibit A to Plaintiffs' original Complaint in this action.

17. Local 10 has not complied with the Area Arbitrator's awards or with the Coast Arbitrator's award. These awards confirm that Local 10's work slowdown is tantamount to a "work stoppage" in violation of the PCLCD.

18. The illegal work stoppage described above has taken place and will take place at the instigation and with the encouragement of defendant Local 10 and its officers. Such conduct on the part of defendant Local 10 has been carried on with the deliberate purpose and design of damaging and disrupting the businesses of APMT, a PMA member, in full recognition and

1  disregard of the fact that it violates the no-strike and grievance and arbitration provisions of the
2  PCLCD and arbitration awards rendered thereunder.

3  19. As a result of the above-described work stoppage, APMT will be unable, and
4  reasonably believes that it will continue to be unable, to load or unload cargo in accordance with
5  the PCLCD at the usual rate of productivity.  These disruptive activities of Local 10 and its
6  officers and members will result in delays and additional expenses with respect to the cargo
7  operations and movement of APMT vessels and in losses to the APMT, the shipowners, and the
8  shipping public.

9  20. The unlawful conduct of defendant Local 10 and the consequences thereof will be
10 repeated and continued unless Local 10, its officers and members, and all persons acting in
11 concert with them are restrained and enjoined from continuing to violate the PCLCD and
12 arbitration awards, from continuing to engage in the illegal work stoppage, and from encouraging,
13 instigating, or assisting employees of PMA members to engage in or continue the work-stoppage,
14 all to the great detriment of and irreparable injury to APMT and other PMA members and the
15 public that such PMA members serve.

16 21. PMA and APMT have no adequate remedy at law because the delays incident to
17 obtaining relief by way of an action for damages would result in serious and irreparable damage
18 to APMT's business before such relief could be obtained, and an attempt to sue defendants in a
19 civil action at law would not prevent a continuation of the illegal acts and conduct. Adequate
20 relief can be afforded by this Court only through this Court's exercise of its equitable jurisdiction.

21 22. The granting of a temporary restraining order and injunction, as prayed for herein,
22 will not work any hardship on the defendants, but denial of the temporary restraining order and
23 preliminary injunction will cause irreparable damage to plaintiffs.

24 23. Unless a temporary restraining order shall be issued immediately, a substantial and
25 irreparable injury to the interests of PMA and APMT will be unavoidable.

26                          **COUNT TWO**
27                  **(Plaintiff PMA Against All Defendants)**
28 24. On September 24, 2007, a longshoreman working for a PMA member company at

the Port of Oakland suffered severe injuries to his head, chest, and ribs. The Oakland Fire Department immediately responded and transported the longshoreman to a hospital. Tragically, the longshoreman was pronounced dead at approximately 4:30 p.m.

25. In response to this fatality, all ILWU Local 10 longshore workers at the Oakland Port walked off the job. All longshore workers at the San Francisco Port also walked off the job. No Local 10 longshore workers reported for work on the second or third shifts on September 24, 2007, or for the first shift on September 25, 2007, which begins at 8:00 a.m. This strike by Local 10 has resulted in a complete shutdown of the Ports of Oakland and San Francisco.

26. On September 25, 2007, PMA referred the dispute to Northern California Area Arbitrator Terry Lane. That same day, Arbitrator Lane conducted a telephonic hearing in which he received evidence and argument from both sides, and issued the following written ruling:

> 1. ILWU Local 10 members and officers are guilty of [violating] Sections 11.1 and 11.2 by creating an illegal work stoppage, refusing to dispatch men to the various terminals and facilities in Bay Area on the 1st shift, Tuesday, September 25, 2007.
>
> 2. ILWU Local 10 shall direct their members to secure observance of the Agreement and accept dispatch to all work as ordered by the Employer(s).
>
> 3. ILWU Local 10 shall place on the joint dispatch tape within 1-hour and make announcement during dispatch to tell its members that jobs are available in the hall and members have the obligation to fill the orders as placed by the Employers.
>
> 4. Local 10 is in violation of Section 17.57 and, pursuant to Section 17.282, the Local grievance machinery has stalled and the issue is hereby remanded to the CLRC for disposition.

27. On the afternoon of September 25, 2007, PMA referred the dispute to Coast Arbitrator John Kagel, the final step in the PCLCD's grievance-arbitration process. After a telephonic hearing, Arbitrator Kagel issued a written ruling, which stated: "The decision of the Area Arbitrator in NCAA-039-2007 is affirmed."

28. Local 10, its officers, agents, and members, have refused to comply with the Coast Arbitrator's award. This illegal work stoppage has taken place and will continue to take place at the instigation and with the encouragement of defendant Local 10 and its officers. Such conduct on the part of defendant Local 10 has been carried on with the deliberate purpose and design of

damaging and disrupting the businesses of PMA's members, in full recognition and disregard of the fact that it violates the no-strike and grievance and arbitration provisions of the PCLCD and arbitration awards rendered thereunder.

29. As a result of this illegal work stoppage, the Ports of Oakland and San Francisco remain completely shut down. PMA's members at the Ports of San Francisco and Oakland will be unable, and reasonably believe that they will continue to be unable, to load or unload cargo in accordance with the PCLCD. These disruptive activities of Local 10 and its officers and members will result in delays and additional expenses with respect to the cargo operations and movement of PMA's members' vessels and in losses to PMA's members, the shipowners, and the shipping public.

30. The unlawful conduct of defendant Local 10 and the consequences thereof will be repeated and continued unless Local 10, its officers and members, and all persons acting in concert with them are restrained and enjoined from continuing to violate the PCLCD and arbitration awards, from continuing to engage in the illegal work stoppage, and from encouraging, instigating, or assisting employees of PMA members to engage in or continue the work-stoppage, all to the great detriment of and irreparable injury to PMA's members and the public that such PMA members serve.

31. PMA has no adequate remedy at law because the delays incident to obtaining relief by way of an action for damages would result in serious and irreparable damage to its members' business before such relief could be obtained, and an attempt to sue defendants in a civil action at law would not prevent a continuation of the illegal acts and conduct. Adequate relief can be afforded by this Court only through this Court's exercise of its equitable jurisdiction.

32. The granting of a temporary restraining order and injunction, as prayed for herein, will not work any hardship on the defendants, but denial of the temporary restraining order and preliminary injunction will cause irreparable damage to plaintiff.

33. Unless a temporary restraining order shall be issued immediately, a substantial and irreparable injury to the interests of PMA and its members will be unavoidable.

////

## PRAYER FOR RELIEF

### Count One

As to Count One, Plaintiffs PMA and APMT pray for judgment as follows:

1. That the Court enter an order confirming and enforcing Area Arbitration Awards NCAA-034-2007 and NCAA-036-2007 and Coast Arbitration Award C-06-2007.

2. That Local 10 and its officers, agents, employees, representatives, and members, and all companies, persons, and associations of persons acting in concert or participation Local 10, be permanently enjoined and restrained:

   (a) From failing to comply with the above-referenced Arbitration Awards;

   (b) From failing to enforce and implement the above-referenced Awards holding Local 10's work stoppage to violate the PCLCD; and

   (c) From directly or indirectly engaging in any combination, agreement, arrangement or conspiracy to do the acts, or any of them, so enjoined.

3. That Local 10 and its officers, agents, employees, representatives, and members, and all companies, persons, and associations of persons acting in concert or participation Local 10, be permanently enjoined and restrained from continuing, doing, or attempting to do, or permitting or causing to be continued or done, directly or indirectly, by any means, method, or device whatsoever, any of the acts or things prohibited by Paragraph 2 above.

4. That Local 10 and its officers, agents, and representatives, shall immediately inform all members of Local 10 that they must immediately cease their work slowdown and that they must work at the normal, safe pace of production.

5. That the Court issue an order directing defendants to show cause, at a time and place specified in such order, why a Preliminary Injunction should not be made and entered herein enjoining and restraining it and others as provided in Paragraphs 2, 3, and 4 above during the pendency of this action.

6. That the Court issue a temporary restraining order restraining defendants and others as provided in Paragraphs 2, 3, and 4 above, pending a hearing on plaintiffs'

1      application for a Preliminary Injunction.

2    7.    That upon the hearing on said order to show cause, a Preliminary Injunction be granted to plaintiffs restraining and enjoining defendants and others as provided in Paragraphs 2, 3, and 4 above during the pendency of this action.

8.    That upon trial of this action, judgment be had against defendants, and that by such judgment it and others be permanently enjoined and restrained as provided in Paragraphs 2, 3, and 4 above.

9.    For all damages sustained by plaintiffs as a result of Local 10's illegal work slowdown.

10.    For plaintiffs' costs of suit incurred herein, including reasonable attorneys' fees; and

11.    For such other relief as the Court may deem just and proper.

### **Count Two**

As to Count Two, PMA prays for judgment as follows:

1.    That the Court enter an order confirming and enforcing Area Arbitration Award NCAA-039-2007 and the Coast Arbitration Award affirming the Area Arbitration Award.

2.    That Local 10 and its officers, agents, employees, representatives, and members, and all companies, persons, and associations of persons acting in concert or participation Local 10, be permanently enjoined and restrained:

    (a)    From failing to comply with the above-referenced Arbitration Awards;

    (b)    From failing to enforce and implement the above-referenced Awards holding Local 10's work stoppage to violate the PCLCD; and

    (c)    From directly or indirectly engaging in any combination, agreement, arrangement or conspiracy to do the acts, or any of them, so enjoined.

3.    That Local 10 and its officers, agents, employees, representatives, and members, and all companies, persons, and associations of persons acting in concert or participation Local 10, be permanently enjoined and restrained from continuing,

        doing, or attempting to do, or permitting or causing to be continued or done, directly or indirectly, by any means, method, or device whatsoever, any of the acts or things prohibited by Paragraph 2 above.

4. That Local 10 and its officers, agents, and representatives, shall immediately inform all members of Local 10 that they must immediately cease their work stoppage and report for work as normal.

5. That the Court issue an order directing defendants to show cause, at a time and place specified in such order, why a Preliminary Injunction should not be made and entered herein enjoining and restraining it and others as provided in Paragraphs 2, 3, and 4 above during the pendency of this action.

6. That the Court issue a temporary restraining order restraining defendants and others as provided in Paragraphs 2, 3, and 4 above, pending a hearing on PMA's application for a Preliminary Injunction.

7. That upon the hearing on said order to show cause, a Preliminary Injunction be granted to PMA restraining and enjoining defendants and others as provided in Paragraphs 2, 3, and 4 above during the pendency of this action.

8. That upon trial of this action, judgment be had against defendants, and that by such judgment it and others be permanently enjoined and restrained as provided in Paragraphs 2, 3, and 4 above.

9. For all damages sustained by PMA and its members as a result of Local 10's illegal work stoppage.

10. For PMA's costs of suit incurred herein, including reasonable attorneys' fees; and

11. For such other relief as the Court may deem just and proper.

Dated: September 25, 2007        MORGAN, LEWIS & BOCKIUS LLP

By _____
Brendan Dolan
Attorneys for Plaintiffs
PACIFIC MARITIME ASSOCIATION
and APM TERMINALS PACIFIC, LTD.